Frank S. Hedin (SBN 291289)
E-mail: fhedin@hedinhall.com
David W. Hall (SBN 274921)
E-mail: dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA  94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HILL, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>              Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Amanda Hill, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.     Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Quicken Loans Inc. in transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular device and the cellular devices of numerous other individuals across the country, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

1
**JURISDICTION AND VENUE**

2          2.        The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

3    and 47 U.S.C. § 227.

4          3.        Personal jurisdiction and venue are proper in this district because Plaintiff resides in

5    this district and Plaintiff's claims arose in substantial part in this district. Defendant directed the text

6    messages received by Plaintiff into this district by transmitting the messages to a telephone number

7    that is assigned an area code (951) corresponding to a location in this district. Plaintiff received

8    Defendant's unsolicited text messages on her cellular device while present in this district.

9
**PARTIES**

10         4.        Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff

11   is, and at all times mentioned herein was, a citizen and resident of Wildomar, California.

12         5.        Defendant Quicken Loans Inc. is a "person" as defined by 47 U.S.C. § 153(39).

13   Defendant maintains, and at all times mentioned herein maintained, its corporate headquarters

14   in Detroit, Michigan.

15
**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

16         6.        To address consumer complaints regarding certain telemarketing practices, Congress

17   enacted the TCPA, 47 U.S.C. § 227, in 1991.  The TCPA prohibits, *inter alia*, the use of automated

18   telephone equipment, or "autodialers," to make any call, including sending a text message, to a

19   wireless number absent an emergency or the "prior express consent" of the party called.  And in the

20   case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by

21   applicable regulations, the TCPA requires the "prior express written consent" of the called party

22   before initiating such calls or texts using an autodialer or prerecorded voice.

23         7.        According to findings by the Federal Communication Commission ("FCC"), which is

24   vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are

25   prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls

26   and they can be costly and inconvenient. The FCC also recognized that wireless customers are

27   charged for such incoming texts whether they pay in advance or after the texts are used.

28
CLASS ACTION COMPLAINT

8.     One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.  Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message.  According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[2]

9.     SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received.  SMS and MMS text messages are received virtually anywhere in the world.

10.     Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

11.     Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12.     Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (951) ***-9785 (the "9785 Number").  The 9785 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).  The 9785 Number is, and at all times mentioned herein was, listed on the National Do Not Call Registry List (the "DNC List"), including more than thirty (30) days prior to receiving Defendant's unsolicited text messages.

---

[2]  Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research, http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

CLASS ACTION COMPLAINT

13.     For over at least the past year, continuing through the present, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS or MMS text messages to the 9785 Number without Plaintiff's prior express written consent, an example of which is depicted in the screenshot below, which was extracted from Plaintiff's cellular device:



14.     Plaintiff has on several occasions attempted to put a stop to Defendant's invasive text messages by responding "STOP," to no avail. For instance, over a week before receiving the text messages depicted in the screenshot above, Plaintiff had texted "STOP" in an attempt to end the onslaught of Defendant's digital junk mail, as shown in the screenshot below, also extracted from Plaintiff's cellular device:



- 4 -
CLASS ACTION COMPLAINT

15.     Despite these clear instructions to STOP, Defendant is nonetheless undeterred.  Its texts to the 9785 Number persist.  The TCPA was enacted to end this sort of contumacious behavior.

16.     The hyperlinked URLs within the above-depicted text messages were leased or owned, and were operated and maintained, by Defendant or an agent or affiliate of Defendant.

17.     When visited, the URLs in the above-depicted text messages re-direct to website(s) owned and operated by Defendant, where Defendant advertises and markets the commercial availability of its mortgage-lending and other lending goods and services, which Defendant sells for profit.

18.     The source of the unsolicited text messages that Defendant transmitted to the 9785 Number was 26293, which is a telephone number leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing program.

19.     Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message, the unsolicited text messages that Defendant transmitted to Plaintiff's cellular device were invasive and intruded upon Plaintiff's seclusion upon receipt. Plaintiff became distracted and aggravated as a result of receiving Defendant's unsolicited text messages.

20.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff's 9785 Number and to the numbers of the members of the Class defined below occurred using an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

21.     Defendant transmitted its text messages to the 9785 Number and to the numbers of the members of the Class defined below using an "automated telephone dialing system" because its text messages were sent from a telephone number used to message consumers *en masse*; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and to then dial such numbers, *en masse*, in an automated fashion and without human intervention.

CLASS ACTION COMPLAINT

22. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other unnamed Class members in an automated fashion and without human intervention, with hardware and software that received and stored lists of telephone numbers to be dialed and then dialed such numbers automatically.

23. The complained of SMS and/or MMS text messages sent by Defendant to the 9785 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the messages in order to advertise and market its mortgage-lending and other lending goods and services, for the purpose of ultimately selling such goods and services to Plaintiff and other Class members for commercial profit.

24. Whether or not Defendant's text messages to Plaintiff and others similarly situated were sent via ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant, or any agent or intermediary acting on its behalf, did not comply with, and thus violated, the telemarketing and DNC List restrictions of the TCPA and the telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

25. Neither Plaintiff nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit Defendant to transmit text messages to the 9785 Number or to any of the Class's telephone numbers using an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## **CLASS ALLEGATIONS**

26. <u>"ATDS Class" Definition</u>. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "ATDS Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States to whom, between January 28, 2015 and the present, one or more text message(s) promoting Defendant's goods or services was delivered by Defendant or an affiliate, subsidiary, or agent of Defendant, and who did not provide Defendant prior express written consent to be sent such text message(s).

CLASS ACTION COMPLAINT

27.     <u>"Failure to STOP Class" Definition</u>. Additionally, Plaintiff brings this civil class action pursuant to Fed. R. Civ. P. 23 on behalf of herself individually and as a representative of the following class of persons (the "Failure to STOP Class") entitled to statutory damages under the federal TCPA:

> All persons in the United States who, between January 28, 2015 and the present, received one or more text message(s) promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant, after having previously responded "STOP" to one or more such text message(s).

28.     <u>"DNC List Class" Definition</u>.   Additionally, Plaintiff brings this civil class action pursuant to Fed. R. Civ. P. 23 on behalf of herself individually and as a representative of the following class of persons (the "DNC List Class") entitled to statutory damages under the federal TCPA:

> All persons in the United States who, between January 28, 2015 and the present, received more than one text message, in any 12-month period, promoting the sale of Defendant's goods or services sent by Defendant or an affiliate, subsidiary, or agent of Defendant more than 30 days after registering their telephone number on the National Do-Not-Call Registry.

29.     Defendant, its employees, and agents are excluded from the Classes.

30.     Plaintiff reserves the right to modify the definition of the Classes (or add one or more subclasses) after further discovery.

31.     Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

32.     This Class Action Complaint seeks injunctive relief and monetary damages.

33.     This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

34.     Upon application by Plaintiff's counsel for certification of the Classes, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

35.     <u>Numerosity</u>. The number of persons within the Classes is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical

- 7 -

1    to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value

2    of the claims of the individual members of the Classes renders joinder impractical. Accordingly,

3    utilization of the class action mechanism is the most economically feasible means of determining and

4    adjudicating the merits of this litigation.

5       36.    <u>Typicality</u>. Plaintiff was sent at least one text message from Defendant without

6    providing her "prior express written consent" to be sent such message(s) from Defendant within the

7    meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members

8    of the Classes, and Plaintiff's interests are consistent with and not antagonistic to those of the other

9    Class members she seeks to represent. Plaintiff and all members of the Classes have been impacted

10    by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

11       37.    <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which

12    conflict with, the interests of the absent members of the Classes, and is able to fairly and adequately

13    represent and protect the interests of such a Classes. Plaintiff has raised viable statutory claims of the

14    type reasonably expected to be raised by members of the Classes and will vigorously pursue those

15    claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional

16    Class representatives or assert additional claims.

17       38.    <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by

18    experienced, qualified, and competent counsel committed to prosecuting this action.  Plaintiff's

19    counsel are experienced in handling complex class action claims, in particular claims brought under

20    the TCPA and other consumer protection statutes.

21       39.    <u>Commonality and Predominance</u>. There are well-defined common questions of fact

22    and law that exist as to all members of the Classes defined above and predominate over any questions

23    affecting only individual members of the Classes. These common legal and factual questions, which

24    do not vary from Class member to Class member and may be determined without reference to the

25    individual circumstances of any Class member, include (but are not limited to) the following:

26

27

28

CLASS ACTION COMPLAINT

a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

b) Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted, within a 12-month period, more than one text message to the cellular telephones of Plaintiff and Class members despite such numbers having been registered for more than 30 days on the DNC List;

e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

40.    *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small

CLASS ACTION COMPLAINT

1  because the statutory damages in an individual action for violation of the TCPA are small.

2  Management of these claims is likely to present significantly fewer difficulties than are presented in

3  many class actions because the text messages at issue are all automated and the Class members, by

4  definition, did not provide the prior express written consent required under the statute to authorize

5  such text messages to their cellular telephones.  The Class members can be readily located and notified

6  of this class action through Defendant's records and, if necessary, the records of cellular telephone

7  providers.

8      41.    Additionally, the prosecution of separate actions by individual Class members would

9  create a risk of multiple adjudications with respect to them that would, as a practical matter, be

10  dispositive of the interests of other members of the Classes who are not parties to such adjudications,

11  thereby substantially impairing or impeding the ability of such nonparty Class members to protect

12  their interests. The prosecution of individual actions by Class members could further establish

13  inconsistent results and/or establish incompatible standards of conduct for Defendant.

14      42.    Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds

15  generally applicable to the Classes, thereby making final injunctive relief and corresponding

16  declaratory relief with respect to the Classes as a whole appropriate. Moreover, on information and

17  belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to

18  continue in the future if an injunction is not entered.

19  **FIRST CLAIM FOR RELIEF**
**Violation of the TCPA, 47 U.S.C. § 227(b)(3) & 47 U.S.C. § 227(b)(1)(A)**

20  **(On Behalf of Plaintiff and the ATDS Class and**
**Failure to STOP Class Members Against Defendant)**

21      43.    Plaintiff incorporates by reference the foregoing paragraphs of this Class Action

22  Complaint as if fully stated herein.

23      44.    The foregoing acts and omissions constitute violations of the TCPA by Defendant,

24  including but not limited to violations of 47 U.S.C. § 227(b)(1).

25      45.    As a result of Defendant's violations of the TCPA, Plaintiff and all ATDS Class and

26  Failure to STOP Class members are entitled to, and do seek, injunctive relief prohibiting such conduct

27  violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3).

28

- 10 -

46.   As a result of Defendant's violations of the TCPA, Plaintiff and all ATDS Class and Failure to STOP Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

47.   Plaintiff and the ATDS Class and Failure to STOP Class members also seek an award of attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2)**
**(On Behalf of Plaintiff and the DNC List Class Members Against Defendant)**

48.   Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

49.   Plaintiff and each member of the DNC List Class received, within any 12-month period, more than one text message that promoted the sale of Defendant's goods or services at a time more than 30 days after Plaintiff and each DNC List Class member had registered their respective phone numbers with the national Do-Not-Call Registry. Each such text message constituted a telephone solicitation call within the meaning of the TCPA and its implementing regulations. Neither Plaintiff not any other member of the DNC List Class provided Defendant prior express written consent to receive such text messages.

50.   Defendant's transmission of more than one text message solicitation within any 12-month period to Plaintiff's 9785 Number and to each DNC List Class member's cellular telephone number, as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e).

51.   As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class members are

CLASS ACTION COMPLAINT

entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

52.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class members are also entitled to, and do seek, an award of statutory damages of up to $500.00 (or up to $1,500.00 for any willful or knowing violations) for each such violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

53.     Plaintiff and the DNC List Class members also seek an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Amanda Hill prays for relief and judgment in favor of herself and the Classes as follows:

A.      Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the ATDS Class and Failure to STOP Class for each of Defendant's violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

B.      Statutory damages of $500.00 (or up to $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the DNC List Class for each of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(B);

C.      Injunctive relief prohibiting such violations of the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A);

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and

E.      An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Classes proposed herein and any Subclasses the Court deems

CLASS ACTION COMPLAINT

appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the law firms representing Plaintiff as counsel for the Classes.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Classes, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  January 28, 2019

Respectfully submitted,

**HEDIN HALL LLP**

By: /s/ Frank S. Hedin
     Frank S. Hedin

Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-mail: fhedin@hedinhall.com

**HEDIN HALL LLP**
David W. Hall (SBN 274921)
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
E-mail: dhall@hedinhall.com

*Counsel for Plaintiff and Putative Classes*

CLASS ACTION COMPLAINT