# Exhibit 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA- ORLANDO DIVISION

| | |
|---|---|
| Bradley Hackett, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br><br><br><br><br> -v.-<br>Quicken Loans, Inc.<br>John Does 1-25<br><br>        Defendant(s). | Civil Action No: 6:18-cv-02151-PGB-DCI<br><br>**FIRST AMENDED COMPLAINT**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

  Plaintiff Bradley Hackett ("Plaintiff" or "Hackett") a Florida resident, brings this First Amended Class Action Complaint by and through his attorneys, as and for its Complaint against Defendant Quicken Loans, Inc. ("Defendant"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## INTRODUCTION/PRELIMINARY STATEMENT

  1. Plaintiff brings this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant Quicken Loans, Inc. and its related entities, subsidiaries and agents in negligently, knowingly, and/or willfully contacting Plaintiff's on Plaintiff's cellular telephone in violation of Section 227 *et.*

Exhibit 2 -16-

*seq.* of Title 47 of the United States Code, commonly referred to as the Telephone Consumer Protection Act ("TCPA"), thereby invaliding Plaintiffs' privacy.

2. The TCPA was designed to prevent texts and calls like the ones described within this complaint, and to protect the privacy of citizens like the Plaintiff.

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, and are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA Pub. L. 102-243, Section 11.

4. Toward this end, Congress found that "banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion *Id.* at §12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, No. 11-C-5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

5. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13. *See also Mims*, 132 S. Ct. at 744.

6. Case law and the FCC have made clear that a text message is considered a phone call under the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

Exhibit 2 -17-

7.  With the advancement of technology, numerous courts have recognized the TCPA's applicability to unsolicited text messages to persons' cell phones.

8.  Every transmission of a text uses data and the longer the text message the more data is used.

9.  Once an unsolicited text message is received, not only is it a nuisance to the receiver, but just as importantly that receiver is forced to incur unwanted messages and/or data charges from their cell phone carrier.

10. As set forth herein that is exactly what occurred to plaintiff and other members of the putative class.

11. Plaintiff and the members of the proposed class received unsolicited sales text messages and incurred additional message and/or data charges to their cell phone accounts all because Defendant wished to advertise and market its products and services for its own benefit.

12. Defendants also violated the TCPA by failing to provide in every text message advertisement sent an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request.

## PARTIES

13. Plaintiff is a resident of the State of Florida, County of Brevard, residing at 562 N Wickham Road, Melbourne, Florida, 32935.

14. Defendant Quicken Loans, Inc. is a Florida business entity and is a "person" as the term is defined by 47 U.S.C. § 153(39).

Exhibit 2 -18-

15. Defendant Quicken Loans, Inc. conducts business in State of Florida and can be served care of its registered agent CT Corporation System, 1200 South Pine Island Road, Plantation, Florida, 33324.

16. Defendants John Does l-25, are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

**JURISDICTION AND VENUE**

17. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. § 1692 et. seq. and 28 U.S.C. § 2201. If applicable, the Court also has pendant jurisdiction over the State law claims in this action pursuant to 28 U.S.C. § 1367(a).

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

19. To have standing in federal court, Plaintiff must have suffered a particularized and concrete harm.

20. Unwanted texts and/or calls cause both tangible and intangible harms.

21. Plaintiff received unwanted text messages from the Defendant in the state of Florida making this the proper jurisdiction and venue.

22. In the recent Supreme Court decision of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (May 16, 2016), the Court stated that one way to establish that an intangible injury is concrete is to evaluate whether it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American court." *Id* at *7.

23. For example, invasion of privacy is an intangible harm that is recognized by the common law and is recognized as a common law tort.

Exhibit 2 -19-

24. When enacting the TCPA, Congress stressed the purpose of protecting consumers' privacy.

25. As Senator Hollings, the Act's sponsor, stated "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821-30,822 (1991).

26. In a recent decision discussing Plaintiff's Article III standing for a TCPA claim, the Second Circuit stated "*Leyse* concluded that the plaintiff's receipt of an unconsented to voicemail message was sufficient to establish a concrete injury. If an unauthorized voicemail is concrete injury, then this Court fails to see how unauthorized text messages are not also concrete injury. Therefore, this Court concludes—as *Leyse, Zani*, and *Bell* did in similar circumstances—that Plaintiffs have adequately alleged injury in fact sufficient to establish Article III standing. Melito v. Am. Eagle Outfitters, Inc., No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343, at *19 (S.D.N.Y. Sep. 8, 2017).

**FACTUAL ALLEGATIONS**

27. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully state herein with the same force and effect as if the same were set forth at length herein.

28. On or around the month of September 2018, despite a lack of consent or prior relationship with the Defendant, Plaintiff began receiving unsolicited text messages to his wireless phone ending in 8000 from Defendant.

Exhibit 2 -20-

29. Specifically, the text message was an unsolicited and unwanted message regarding locking in loan rates. See attached Exhibit A.

30. By texting the Plaintiff, the Plaintiff was harmed in the exact way that Congress sought to protect in enacting the TCPA.

31. These unsolicited text messages placed to Plaintiff's wireless telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff's cellular telephone.

32. The telephone number that Defendant, or its agents, texted was assigned to a cellular telephone service for which Plaintiff incurred monthly charges pursuant to 47 U.S.C. § 227 (b)(1).

33. These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

34. Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A) and revoked any alleged prior express consent, yet still continued to receive text messages.

35. These text messages by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

36. Plaintiffs represent, and are members of, the Class, consisting of:

    a. All persons within the United States:

    b. who received any unsolicited text message from Defendant or its agents ;

    c. On their cellular telephones;

Exhibit 2 -21-

    d. Through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3).;

    e. Which text messages by Defendant or its agents were not made for emergency purposes;

    f. or with the recipients' prior express consent;

    g. within four years prior to the filing of this Complaint through the date of final approval.

37. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class, but identities of all class members are readily ascertainable from the records of Defendants.

38. Plaintiffs and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiffs and the Class members via their cellular telephones thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, by having to retrieve or administer messages left by Defendant during those illegal calls, and invading the privacy of said Plaintiffs and the Class members. Plaintiffs and the Class members were damaged thereby.

39. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether Defendants made any text messages (other than a call made for emergency purposes or made with the prior express consent of the called party) to Class members using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a telephone service;

Exhibit 2 -22-

  b. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

  c. Whether Defendants should be enjoined from engaging in such conduct in the future.

40. As persons who received text messages from an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interest antagonistic to any member of the Class.

41. Plaintiffs and the members of the Class have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few if any Class members could afford to seek legal redress for the wrongs complained of herein.

42. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and law. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

43. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

Exhibit 2 -23-

## FIRST CAUSE OF ACTION
(NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT)
**47 U.S.C. § 227** *ET SEQ.*

44. Plaintiff repeats, reiterates and incorporates the allegations contained in all of the paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

45. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 *et seq.*

46. As a result of Defendants negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

47. Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
(KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT) **47 U.S.C. § 227** *ET SEQ.*

48. Plaintiff repeats, reiterates and incorporates the allegations contained in all of the paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

Exhibit 2 -24-

49. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 *et seq.*

50. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each of the Class are entitled to treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

51. Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## DEMAND FOR TRIAL BY JURY

52. Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bradley Hackett demands judgment from the Defendant Quicken Loans, Inc. as follows:

a) On the First Count for Negligent Violations of the TCPA, 47 U.S.C. §227 *et seq.*, Plaintiff seeks: (i) for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any other relief the Court may deem just and proper; and

Exhibit 2 -25-

b) On the Second Count for Knowing and/or Willful Violation of the TCPA, 47 U.S.C. §227 *et seq.*, Plaintiff seeks: (i) for himself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and any other relief the Court may deem just and proper.

Dated: January 31, 2019

                                        Respectfully Submitted,

                                        **ZEIG LAW FIRM, LLC**

                                        */s/ Justin Zeig*
                                        Justin Zeig, Esq.
                                        3475 Sheridan Street, Ste 310
                                        Hollywood, FL 33021
                                        Phone: (754) 217-3084
                                        Fax: (954) 272-7807
                                        Justin@zeiglawfirm.com
                                        *Attorney for Plaintiff*

Exhibit 2 -26-

# EXHIBIT A

Exhibit 2 -27-



today! Lock your rate now to save. http://m.qloans.co/MLaLX980
 Reply HELP for Help, STOP to Cancel                                   4:19 PM