EXHIBIT 2

1  BROOKS R. BROWN (SBN 250724)
   *BBrown@goodwinlaw.com*
2  W. KYLE TAYMAN (pro hac vice)
   *KTayman@goodwinlaw.com*
3  **GOODWIN PROCTER LLP**
   901 New York Avenue NW
4  Washington, DC 20001
   Tel.: +1 202 346 4000
5  Fax.: +1 202 346 4444

6  LAURA A. STOLL (SBN 255023)
   *LStoll@goodwinlaw.com*
7  **GOODWIN PROCTER LLP**
   601 S. Figueroa Street, 41st Floor
8  Los Angeles, CA 90017
   Tel.: +1 213 426 2500
9  Fax.: +1 213 623 1673

10 Attorneys for Defendant:
   QUICKEN LOANS INC.

11

12          **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14                **WESTERN DIVISION**

15

16 AMANDA HILL and GAYLE HYDE,          Case No. 5:19-cv-00163-FMO-SP
   Individually and On Behalf of All
17 Others Similarly Situated,           **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT OF**
18          Plaintiffs,                 **QUICKEN LOAN INC.'S MOTION**
                                        **TO COMPEL ARBITRATION**
19      v.
                                        Date:      May 16, 2019
20 QUICKEN LOANS INC.,                  Time:      10:00 a.m.
                                        Courtroom: 6D
21          Defendant.                  Judge:     Hon. Fernando M. Olguin
                                                   350 W. 1st Street, 6th Floor,
22                                                 Los Angeles, CA 90012

23

24

25

26

27

28

Case 5:19-cv-00163-FMO-SP Document 29-3 Filed 04/15/19 Page 2 of 28 Page ID #:195

# **Table of Contents**

**Page**

I.     **INTRODUCTION** ...................................................................1

II.    **BACKGROUND** .................................................................2

    A.    Quicken Loans and LMB Are Affiliated Companies. ...........2

    B.    On October 10, 2018, Hill Agreed to Arbitrate Any Claims Against Quicken Loans. .................................................3

    C.    On November 12, 2018, Hill Again Agreed to Arbitrate Any Claims Against Quicken Loans. ...............................6

    D.    Hill Consented to The Challenged Texts. .............................7

III.   **ARGUMENT** .................................................................7

    A.    Legal Standard. ....................................................................7

    B.    A Valid Arbitration Agreement Exists That Requires Hill to Arbitrate Her Claims Against Quicken Loans. .....................8

    C.    Quicken Loans Is Entitled To Enforce The Arbitration Agreement. ..........................................................................12

        1.    Quicken Loans Is A Third-Party Beneficiary. .........12

        2.    Hill Is Estopped From Denying Application Of The Agreement. ..............................................................14

    D.    Hill's Dispute Is Covered By The Arbitration Agreement. ................15

    E.    Arbitration Should Proceed On An Individual Basis. ........17

    F.    The Court Should Stay This Action. ...................................17

IV.   **CONCLUSION** .............................................................18

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................. 1, 7, 17

*Bennett v. Liberty Nat'l Fire Ins. Co.*,
    968 F.2d 969 (9th Cir. 1992) ............................................................ 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126, 1130 (9th Cir. 2000) ................................................ 16

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) .............................................. 8, 12, 15

*Crawford v. Beachbody, LLC*,
    No. 14-cv-1583-GPC-KSC, 2014 WL 6606563 (S.D. Cal. Nov. 5,
    2014) ..................................................................................... 10, 11

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ........................................................................ 8

*Ege v. Express Messenger Sys. Inc.*,
    745 F. App'x 19 (9th Cir. 2018) ...................................................... 14

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................... 11

*Gilbert v. Bank of Am.*,
    No. C 13-01171 JSW, 2015 WL 12953229 (N.D. Cal. Jan. 12, 2015) ............... 12

*Gomez v. MasTec North Am, Inc.*,
    284 F. App'x 517 (9th Cir. 2008) .................................................... 13

*Graf v. Match.com, LLC*,
    No. 15-cv-3911-PA-MRWx, 2015 WL 4263957 (C.D. Cal. July 10,
    2015) ...................................................................................... 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S Ct. 524 (2019) ..................................................................... 16

ii

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ........................................................................ 8, 9

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ..................................................................... 12, 14

*Labajo v. First Int'l Bank & Trust*,
   No. EDCV-14-00627, 2014 WL 4090527 (C.D. Cal. July 9, 2014) ............... 2, 14

*Lei v. Amway Corp.*,
   No. CV 14-04022-RGK, 2014 WL 12596787 (C.D. Cal. July 23,
   2014) ............................................................................................................... 13

*Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*,
   586 F.2d 143 (9th Cir. 1978) ............................................................................ 17

*Mohamed v. Uber Techs., Inc.*,
   No. C-14-5200, 2015 WL 3749716 (N.D. Cal. June 9, 2015) ................. 9, 11, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .......................................................................................... 8, 16

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2012) ................................................................ 8, 12, 17

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................................ 8

*Rodriguez v. Experian Servs. Corp.*,
   No. 2:15-cv-03553-R-MRW, ECF No. 43 (C.D. Cal. Oct. 5, 2015) ................. 10

*Sun Moon Star Advanced Power, Inc. v. Chappell*,
   773 F. Supp. 1373 (N.D. Cal. 1990) ................................................................. 13

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
   10 F.3d 753 (11th Cir. 1993) ............................................................................ 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07–1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011) ........................ 2

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995) ............................................................................... 15

*Tompkins v. 23andMe, Inc.*,
No. 5:13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ............................................................................................... 11


**California Cases**

*Nguyen v. Tran*,
157 Cal. App. 4th 1032 (2007) .................................................. 9, 11, 12

*Sanchez v. Valencia Holding Co., LLC*,
190 Cal. Rptr. 3d 812 (2015) ........................................................... 17


**Federal Statutes**

9 U.S.C. § 1 ...................................................................................................... 1

9 U.S.C. § 2 ...................................................................................................... 7

9 U.S.C. § 3 .................................................................................................... 17

47 U.S.C. § 227(b) ................................................................................. *passim*


**Other Authorities**

Affiliate Definition, *Black's Law Dictionary* (10th ed. 2014) ..................... 13

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1

iv

Case 5:19-cv-00663-FMO-SP   Document 36-3   Filed 05/09/19   Page 2 of 24   Page ID #:109

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   __INTRODUCTION__

In her First Amended Complaint ("FAC"), Plaintiff Amanda Hill ("Plaintiff" or "Hill") alleges that Quicken Loans Inc. ("Quicken Loans") violated the cell phone provision of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), by texting her without her consent.  As demonstrated below, Plaintiff's claim should be compelled to arbitration because it is subject to a binding and enforceable arbitration agreement.[1]

Although Plaintiff does not identify the challenged texts by date, time, or content, two screen shots in the Complaint suggest that they were received between October 22, 2018, and November 23, 2018.  The record evidence that Quicken Loans submits with this Motion demonstrates that these texts were sent in response to Hill's multiple requests for and consents to them made through electronic submissions by Hill in October and November 2018 requesting mortgage loan information from Quicken Loans (and others).  As part of these submissions, Hill agreed, among other things, to arbitrate all claims against LMB Mortgage Services, Inc. d/b/a LowerMyBills.com ("LMB") and its affiliates arising out of her submissions.  Hill violated that agreement by filing this putative, nationwide class action lawsuit against Quicken Loans—an LMB affiliate—about text messages sent by it in response to Hill's requests.  Pursuant to well-established Ninth Circuit precedent and the Federal Arbitration Act ("FAA") (9 U.S.C. § 1, *et seq.*), this Court should foreclose that violation, enforce the agreement, and compel Hill's individual claim to arbitration.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 1745–

---

[1] Without prejudice to this Motion, Quicken Loans also has contemporaneously moved to dismiss Hill's (and the other plaintiff's) claims pursuant to Fed. R. Civ. P. 12(b)(6).

46 (2011); *Labajo v. First Int'l Bank & Trust*, No. EDCV-14-00627, 2014 WL 4090527, at *7 (C.D. Cal. July 9, 2014).[2]

## II.     BACKGROUND

### A.     QUICKEN LOANS AND LMB ARE AFFILIATED COMPANIES.

As part of its business in offering clients and potential clients residential mortgage products, Quicken Loans—a fourteen-time J.D. Power award winner for client satisfaction in mortgage origination and servicing—contacts individuals in various ways when those individuals have expressed an interest in and consented to being contacted by Quicken Loans to learn more about its mortgage products and services. While many of these individuals come to Quicken Loans directly (through QuickenLoans.com, or by calling the Company's direct-line), others express their interest and provide their consent to be contacted by Quicken Loans through a variety of channels, including websites run by or associated with LMB. Luthra Decl. ¶ 3. LMB and Quicken Loans are affiliated companies, which share the same parent company, Rock Holdings, Inc. Viner Decl. ¶ 2.

LMB, through its website LowerMyBills.com, as well as associated websites such as YourVASurvey.Info, operates a free online service for consumers seeking home mortgage and refinance loans. *Id.* For consumers who voluntarily navigate to these websites and enter various pieces of information about themselves—such as their property address, phone number, e-mail address, estimated home value, current interest rate, and amount of debt—LMB will match and refer consumers to Quicken

---

[2] While this Motion is directed to Hill's individual claim in this lawsuit, Quicken Loans expressly reserves its rights (i) to compel arbitration of the claims of some or all of the members of any class that may be certified in this action, and (ii) to demonstrate that arbitration agreements and class action waivers operate to preclude putative class members from participating in this lawsuit as class members or otherwise. These and other similar issues are premature at this initial stage of the litigation, where no class has been certified and plaintiff has not filed any motion for class certification. "[P]utative class members are not parties to an action prior to class certification." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011). Therefore, a motion to compel arbitration concerning putative class members' claims is premature at this stage of the litigation. *See id.*

Loans and other mortgage loan providers. *Id.* ¶ 3. To avail themselves of this free referral service, consumers must, among other things, first agree to be bound by LMB's Terms of Use. *Id.* LMB's Terms of Use provide for, among other things, mandatory arbitration of all claims, disputes, and controversies with LMB and its affiliates arising from or relating to the use of LMB's services, including claims alleging violations of federal statutes like the TCPA. *Id*. Ex. 3 at ¶ 2.

> **B.** **ON OCTOBER 10, 2018, HILL AGREED TO ARBITRATE ANY CLAIMS AGAINST QUICKEN LOANS.**

Hill owns a home located at 35312 Frederick Street, Wildomar, California 92595 (the "Property"). Tayman Decl. Ex. 1. When Hill purchased the property in February 2017, she took out a mortgage loan from Quicken Loans in the amount of $349,900. Luthra Decl. ¶ 7. She refinanced that mortgage on October 24, 2017, with a $352,600 loan from IMPAC Mortgage Corp. Tayman Decl. Ex. 1.

On October 10, 2018, at 10:21:49 PM PST, Hill visited YourVASurvey.Info, a website powered by LMB, seeking mortgage loan refinance information for the Property. Viner Decl. ¶ 17. Hill entered her information, including the telephone number (951) 813-9785 and the address 35312 Frederick Street, Wildomar, California 92595. *Id.* The telephone number Hill entered into the website has the same last four digits—9785—as the telephone number that Hill alleges in her Complaint belongs to her. FAC ¶ 13. And the property address that Hill entered is the address for the Property, which public records indicate that Hill owned at the time. Tayman Decl. Ex. 1.

Based on Hill's answers to preliminary questions on YourVASurvey.Info, the website engaged LMB's matching engine, which resulted in LMB's disclosures, Terms of Use, and Privacy Policy being presented to Hill during the information entry process. Viner Decl. ¶ 17. After entering her information into YourVASurvey.Info, Hill clicked a button which said "See my results!" Immediately below that button, which was clearly visible to Hill before she clicked

1   on it, was language affirming that "[b]y clicking the button . . . [Hill] express[ed]
2   [her] understanding and consent, electronically via E-Sign," to the following:

> 1. "To be matched with, and contacted by, up to 5 participants in
>    the **LMB Provider Network**[3] about mortgage and financial
>    services products, and consent (not required as a condition to
>    purchase a good/service) for us and them to contact you
>    (including through automated or prerecorded means) via
>    telephone at the phone number provided above, on mobile
>    devices (including SMS and MMS), and email, even if you are
>    on a corporate, state or national Do Not call Registry.  As an
>    alternative, you may contact us by email at
>    **customercare@coredigital.com**."
>
> 2. "To the LMB Lending **Terms of Use**, **Privacy Policy**, and
>    Consent to Doing Business Electronically."

15  *Id.* ¶ 8.  The words "Terms of Use" and "Privacy Policy" were hyperlinks that were
16  underlined and appeared in blue text.  *Id.* ¶ 11, Ex. 1.  Clicking on the words "Terms
17  of Use" takes the consumer to LMB's full-text Terms of Use, which, if Hill had
18  done, would have allowed her to review the complete LMB Terms of Use before she
19  assented to those terms.  *Id.* ¶ 11.

20      By using LMB's free service and clicking the "See my results!" button, Hill
21  agreed to LMB's Terms of Use, which disclosed in the introductory paragraph:

> [P]lease take a moment to review this Terms of Use Agreement
> ("Agreement").  The Agreement describes the terms and conditions
> applicable to your use of the LMB Website and the products and
> services provided through or in connection with the LMB Website.

26  *Id.* Ex. 3.

---

28  [3] This language was hyperlinked to a list identifying Quicken Loans as one of the
    lenders in the "LMB Provider Network."  Viner Decl. ¶ 9.

4

Case 5:19-cv-00163-MO-SP    Document 29-3    Filed 04/15/19    Page 10 of 23    Page ID #:378

By agreeing to the Terms of Use, Hill again confirmed her written consent "to be contacted by," among others, "<u>Quicken Loans</u> . . . either by telephone (on a recorded line), automated calling, on a mobile device, via email or mail, based on the information [Hill] provided to [LMB], even if [she had] opted into the National Do Not Call List administered by the Federal Trade Commission, any state equivalent Do Not Call List, or the Do Not Call List of an internal company." *Id.* ¶ 22 & Ex. 3 at ¶ 1 (emphasis added).

And, as relevant to this Motion, Hill also agreed to the following arbitration provision in the Terms of Use:

> 2. **ARBITRATION.** YOU UNDERSTAND AND AGREE THAT **ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES**, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, **CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION**, AND THE ISSUE OF ARBITRABILITY, **SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION** AT A LOCATION DETERMINED BY THE ARBITRATOR. **ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT**. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY ANY STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND

ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA").  **NEITHER YOU NOR LMB SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CONSUMERS OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS** OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES **VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL**.

*Id.* ¶ 23 & Ex. 3 at ¶ 2 (emphases added).  These terms were clearly presented in all capital letters to highlight their importance.  In other words, Hill agreed to arbitrate the precise federal statutory claims she purports to assert here against Quicken Loans—LMB's affiliate—arising from her use of LMB's services.  This was not, however, Hill's only agreement to arbitrate such claims.

### C. ON NOVEMBER 12, 2018, HILL AGAIN AGREED TO ARBITRATE ANY CLAIMS AGAINST QUICKEN LOANS.

On November 12, 2018, at 12:12:11 PM PST, Hill once again visited a website owned by or associated with LMB—this time, LowerMyBills.com.  *Id.* ¶ 19.  As she had visited an LMB-associated website less than 60 days earlier, her contact information was still saved in LMB's systems.  *Id.* ¶ 20.  This information was populated into LMB's submission form and Hill was asked to select the "Purpose of Refinance."  *Id.* ¶ 20.  Once she did so, Hill was presented with and selected a button to "Calculate [Her] FREE Results."  *Id.* ¶ 16.  As with her October submission, immediately below that button was language affirming that "[b]y clicking the button above, [Hill] express[ed] [her] understanding and consent" to,

among other things, LMB's Terms of Use, including the same arbitration provision as she had agreed to the previous month.  *Id.* ¶ 15.

### D.   THE CHALLENGED TEXTS.

In each instance following Hill's use of LMB's services and agreement to its Terms of Use, LMB provided Quicken Loans with the information Hill had entered on the websites owned by or associated with LMB.  *Id.* ¶¶ 18, 21.  After receiving this information from LMB, Quicken Loans, in turn, contacted Hill by text.  Luthra Decl. ¶ 10.  Now, Hill purports to sue Quicken Loans about the subject texts arising from her repeated use of LMB's services to request mortgage loan information.

### E.   THE LAWSUIT.

On January 28, 2019, despite having agreed to arbitrate her disputes with Quicken Loans on an individual (non-class) basis, Hill filed a class action complaint in this Court alleging violations of the cellphone provision of the TCPA (47 U.S.C. § 227(b)(1)(A)(iii)).   Thereafter, on April 1, 2019, Hill filed a First Amended Complaint asserting TCPA claims on behalf of herself and a putative, nationwide class.  She claims that, by sending text messages to her purported cell phone in response to her submissions on websites owned by or associated with LMB, Quicken Loans violated the cellphone provision of the TCPA because the texts were purportedly sent using an ATDS without Hill's consent.  FAC ¶¶ 14–19.  Her claim should be compelled to arbitration.

## III.   ARGUMENT

### A.   LEGAL STANDARD.

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   The FAA reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 1745 (2011) (citations

and internal quotation marks omitted).  In passing the FAA, Congress established a strong federal policy in favor of arbitration, "notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Bennett v. Liberty Nat'l Fire Ins. Co.*, 968 F.2d 969, 971 (9th Cir. 1992).  In short, the Supreme Court mandates that federal courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."  *Moses*, 460 U.S. at 24–25.  Enforcement of arbitration provisions under the FAA is not limited to signatories.  Non-signatories may also enforce an arbitration agreement as third-party beneficiaries, or under the principles of equitable estoppel.  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2012); *see Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).  Application of these well-established standards here demonstrates that Hill's individual claim should be compelled to arbitration.

### B.     A VALID ARBITRATION AGREEMENT EXISTS THAT REQUIRES HILL TO ARBITRATE HER CLAIMS AGAINST QUICKEN LOANS.

The record evidence demonstrates that Hill entered (twice) into a valid and enforceable arbitration agreement when she voluntarily used LMB's services to request information about a mortgage loan.  Quicken Loans need only prove "the existence of an agreement to arbitrate by a preponderance of the evidence."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."  *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  "[U]nder California law, mutual assent is a required element of contract formation."  *Knutson*, 771 F.3d at 565.  "Mutual assent may be manifested by written or spoken words, or by conduct, . . . and acceptance of

1    contract terms may be implied through action or inaction." *Id.* (internal citations
2    and quotation marks omitted).

3        Internet agreements, such as the LMB Terms of Use, are enforceable where:
4    (i) "the user is required to affirmatively acknowledge the agreement before
5    proceeding with use of the website," or (ii) "the website puts a reasonably prudent
6    user on inquiry notice of the terms of the contract," which "depends on the design
7    and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at
8    1176–77. Under California law, "it is essentially irrelevant whether a party actually
9    reads [a] contract or not" in determining whether a valid contract exists, "so long as
10   the individual had a legitimate opportunity to review it." *Mohamed v. Uber Techs.,*
11   *Inc.*, No. C-14-5200, 2015 WL 3749716, at *7 (N.D. Cal. June 9, 2015), *rev'd in*
12   *part on other grounds*, 848 F.3d 1201 (9th Cir. 2016) (citations omitted).

13       In this case, Hill twice affirmatively acknowledged her agreement to LMB's
14   Terms of Use, including the mandatory arbitration provision, to use LMB's services.
15   First, on October 10, 2018, at 10:21 PM PST, Hill visited LMB's associated
16   website, YourVASurvey.Info, and selected the "See my results!" button to confirm
17   her agreement to LMB's Terms of Use.  Viner Decl. ¶ 17.  Indeed, the relevant
18   evidence demonstrates that (i) the telephone number entered as part of that
19   submission ((951) 813-9785) has the same last four digits as the telephone number
20   Hill alleges, in the FAC, is her number and the one at which she received the
21   challenged texts from Quicken Loans (*Id.* ¶ 17; FAC ¶ 13); (ii) the address
22   information entered (35312 Frederick Street, Wildomar, California 92595) is the
23   address for the property which publicly-available records confirm Hill owned at the
24   time (Viner Decl. ¶ 17; Tayman Decl. Ex. 1); and (iii) the submission contained a
25   "yes" answer to the question asking whether Hill or her spouse had served in the
26   military, where documents submitted with Hill's prior loan application confirm that
27   she is a veteran of the U.S. Navy (Viner Decl. ¶ 17; Luthra Decl. ¶ 8).  The
28   preponderance of the evidence is thus that, on October 10, 2018, Hill visited an

LMB-associated website, YourVASurvey.Info, entered her information, and clicked the "See my results!" button to confirm, her agreement to, among other things, the mandatory arbitration provision in LMB's Terms of Use.

Second, on November 12, 2018, at 12:12 PM PST, Hill again navigated to a website owned by or associated with LMB, LowerMyBills.com, where she was greeted with a "Welcome Back" message. Viner Decl. ¶¶ 13, 19, 20. At that time, she provided additional information regarding the purpose of her refinance, and clicked on the "Calculate Your FREE Results!" button to affirmatively confirm (again) her agreement to, among other things, the mandatory arbitration provision in LMB's Terms of Use. *Id.* ¶¶ 13, 20.

Courts within the Ninth Circuit consistently have held that acknowledgement on a website of the type that Hill made in each of her visits to websites owned by or associated with LMB results in a valid contract. Indeed, the LMB Terms of Use were upheld and enforced in *Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW, ECF No. 43 (C.D. Cal. Oct. 5, 2015), where this Court compelled arbitration based on this same agreement and the consumer's agreement to it by clicking the "Click to See Your FREE Results" button on LMB's website.

Other courts have reached the same enforceability conclusion when considering similar arbitration agreements and website terms of use. In *Graf v. Match.com, LLC*, No. 15-cv-3911-PA-MRWx, 2015 WL 4263957 (C.D. Cal. July 10, 2015), for example, this Court ruled that website users agreed to an arbitration provision in the Terms of Use "when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review." *Id.* at *4. Likewise, in *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC-KSC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014), the district court reached the same result in finding the plaintiff had agreed to a forum selection clause found in a website's Terms and Conditions.

There, like here, the plaintiff "had to click an orange button that read 'PLACE ORDER,'" above which was the following text: "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions." *Id.* at *3; *see also Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *7–9 (N.D. Cal. June 25, 2014) ("Plaintiffs received adequate notice regarding the" Terms of Service when "each named Plaintiff clicked a box or button that appeared near a hyperlink to the [Terms of Service] to indicate acceptance"), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834–40 (S.D.N.Y. 2012) (user assented to a forum selection clause in the Terms and Services when he clicked "Sign Up," which was followed by the notice that, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," which were hyperlinked).

The same conclusions apply with equal force here. LMB's Terms of Use were hyperlinked and expressly referenced in the acknowledgment at the end of the information entry process on both the YourVASurvey.Info and LowerMyBills.com websites, and the acknowledgment made clear to Hill that by clicking the "See my results!" and "Calculate Your FREE Results!" buttons, she agreed to the Terms of Use. Viner Decl. ¶¶ 10, 15 & Ex. 1–2.

Thus, it is beyond genuine dispute that Hill agreed to the Terms of Use, as she "had the opportunity to review the relevant terms of the hyperlinked agreements, and the existence of the relevant contracts was made conspicuous." *See Mohamed*, 2015 WL 3749716, at *7. She was "required to affirmatively acknowledge the agreement before proceeding with use of" LMB's free online referral service. *Nguyen*, 763 F.3d at 1176–77. She was also "on inquiry notice of the terms of the contract" because "the design and content of the website and the agreement's webpage" expressly disclosed the Terms of Use in advance and made them available to Hill for review by hyperlink before she chose to use LMB's services. *Id.*

1    Therefore, Hill agreed to be bound by the Terms of Use, including the agreement to
2    arbitrate all disputes against LMB and its affiliates arising from or related to her use
3    of LMB's services.

4           **C.**    **QUICKEN LOANS IS ENTITLED TO ENFORCE THE ARBITRATION**
5                 **AGREEMENT.**

6          "The United States Supreme Court has held that a litigant who is not a party
7    to an arbitration agreement may invoke arbitration under the FAA if the relevant
8    state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota*
9    *Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v.*
10   *Carlisle*, 556 U.S. 624, 632 (2009)).  Here, California law applies as the Terms of
11   Use, including the agreement to arbitrate, were entered into in California.  Viner
12   Decl. Ex. 3 at ¶ 2.  California law allows nonsignatories to enforce an arbitration
13   agreement against a signatory as a third-party beneficiary, or pursuant to equitable
14   estoppel principles.  *See Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL
15   12953229, at *4 (N.D. Cal. Jan. 12, 2015); *Nguyen v. Tran*, 157 Cal. App. 4th 1032,
16   1036–37 (2007).  Both of these enforcement grounds apply to Quicken Loans here.
17   First, Quicken Loans—which is an LMB affiliate and was expressly identified in the
18   Terms of Use—is an intended beneficiary of the agreement between LMB and Hill.
19   And, second, Hill should be estopped from bringing her claim in court, as issues
20   regarding her consent to be contacted are fully intertwined with the Terms of Use in
21   which she agreed to arbitrate all such disputes.

22             **1.**    **Quicken Loans Is A Third-Party Beneficiary.**

23         Quicken Loans is entitled to enforce the arbitration agreement against Hill as
24   a third-party beneficiary of the agreement between Hill and LMB.  *See Comer*, 436
25   F.3d at 1101 ("[N]on-signatories can enforce arbitration agreements as third party
26   beneficiaries.").  A nonsignatory may assert rights as a third-party beneficiary "if the
27   parties to the agreement intended the contract to benefit the third party." *Murphy*,
28   724 F.3d at 1234.

Case 5:19-cv-00163-MO-SP    Document 29-13    Filed 04/15/20    Page 18 of 29    Page ID #:211

1    Here, the Terms of Use were expressly intended to benefit Quicken Loans.

2   The arbitration agreement in the LMB Terms of Use requires arbitration of "all

3   claims, disputes or controversies between you and LMB, and its . . . <u>affiliates</u>,

4   subsidiaries, <u>or related companies</u>."   Viner Decl. ¶ 23 & Ex. 3 (emphases added).

5   This language is unambiguous—the parties clearly intended that the arbitration

6   agreement would benefit not only LMB, but all of its affiliates and related

7   companies.  Quicken Loans is such a company because it is an LMB affiliate and

8   shares the same parent company as LMB, Rock Holdings, Inc.  *Id.* ¶ 2.  *See Lei v.*

9   *Amway Corp.*, No. CV 14-04022-RGK (AGRx), 2014 WL 12596787 (C.D. Cal.

10  July 23, 2014) (finding that non-signatories were intended third-party beneficiaries

11  where arbitration provision applied to disputes involving independent business

12  owners and therefore "evinces an intent to include claims against third-party

13  [independent business owners]"); *see also Gomez v. MasTec North Am, Inc.*, 284 F.

14  App'x 517, 519–20 (9th Cir. 2008) (holding that indemnification provision barred

15  claims against affiliate who had the same parent company); *Sun Moon Star*

16  *Advanced Power, Inc. v. Chappell*, 773 F. Supp. 1373, 1376 (N.D. Cal. 1990) ("[A]

17  determination of whether companies are affiliates depends upon finding that the

18  companies are owned by the exact same individuals."); Affiliate Definition, *Black's*

19  *Law Dictionary* (10th ed. 2014) ("A corporation that is related to another

20  corporation by shareholdings or other means of control; a subsidiary, parent, or

21  sibling corporation.").

22    The conclusion that Quicken Loans is an intended third-party beneficiary of

23  the arbitration agreement is bolstered by the fact that Quicken Loans is expressly

24  identified as part of the LMB Provider Network and in the Terms of Use as an entity

25  which may contact Plaintiff with mortgage loan information.  Viner Decl. ¶ 22 &

26  Ex. 3.  Where the Plaintiff's claims arise from her use of LMB's services and

27  LMB's website and Terms of Use expressly disclosed that its affiliate, Quicken

28  Loans, may provide information in connection with the LMB services agreed to and

Case 5:19-cv-00063-FMO-SP  Document 36-3  Filed 05/09/19  Page 20 of 24  Page
ID #:412
Case 5:19-cv-00063-FMO-SP  Document 29  Filed 04/15/19  Page 19 of 23  Page ID #:387

1  requested by Plaintiff, there can be no real dispute that the arbitration provision was

2  intended to (and expressly does) benefit Quicken Loans.  *See, e.g.*, *Ege v. Express*

3  *Messenger Sys. Inc.*, 745 F. App'x 19, 20 (9th Cir. 2018) (district court correctly

4  found defendant to be third-party beneficiary where "[plaintiffs'] performance under

5  the agreements necessarily and directly benefited [defendant]"); *Labajo v First Int'l*

6  *Bank & Trust*, No. EDCV-14-00627, 2014 WL 4090527, at *7 (C.D. Cal. July 9,

7  2014) (where plaintiffs authorized "servicer, agent, or affiliate" to take certain

8  actions, defendant "was a clearly contemplated third-party beneficiary, either as a

9  servicer or an agent").

10      As it is an actual and intended third-party beneficiary of the arbitration

11  agreement between LMB and Hill, Quicken Loans is entitled to enforce that

12  agreement.  *See Ege*, 745 F. App'x at 20.

13  ## 2.   Hill Is Estopped From Denying Application Of The

14  ## Agreement.

15      Quicken Loans is also entitled to enforce the arbitration agreement under the

16  principles of equitable estoppel.   A nonsignatory may enforce an arbitration

17  agreement "when a signatory must rely on the terms of the written agreement in

18  asserting its claims against the nonsignatory <u>or the claims are intimately founded in</u>

19  <u>and intertwined with the underlying contract</u>."  *Kramer v. Toyota Motor Corp.*, 705

20  F.3d 1122, 1128–29 (9th Cir. 2013) (emphasis added).

21      Here, Hill's TCPA claim against Quicken Loans is "intimately founded in and

22  intertwined with" her use of LMB's services, consent to calls from Quicken Loans,

23  and agreement to LMB's Terms of Use.  Hill twice gave her consent to be contacted

24  by Quicken Loans by phone, text, email, or mail.  *See supra* II.B–C.  She now

25  claims that Quicken Loans contacted her "without [her] prior express written

26  consent."  FAC ¶ 14.  Resolution of Hill's claims thus necessarily requires this

27  Court to consider questions that are "intimately . . . intertwined" with Hill's

28  agreements to LMB's TCPA consent disclosures on the LMB-owned or -associated

websites and in LMB's Terms of Use, including the question of whether Hill consented to be contacted.  Hill's TCPA claims, therefore, cannot be separated from the Terms of Use, and the arbitration provision in the Terms of Use must be enforced.  *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) ("The nexus between Sunkist's claims and the license agreement, as well as the integral relationship between SSD and Del Monte, leads us to the conclusion that the claims are 'intimately founded in and intertwined with' the license agreement." (internal citation omitted)); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases where "a signatory was bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were 'intimately founded in and intertwined with the underlying contract obligations.'" (internal citation omitted)).

Further, the arbitration agreement should be enforced as a matter of equity. Hill received the benefits of her agreement with LMB.  After submitting her information, and consistent with LMB's disclosure about its services, Hill was matched with providers of mortgage services and received mortgage loan refinance information.  Viner Decl. ¶¶ 18, 21.  Hill cannot take advantage of the benefits of contracting with LMB, but then seek to avoid the arbitration agreement.  *See Comer*, 436 F.3d at 1101 ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.").

### D.  HILL'S DISPUTE IS COVERED BY THE ARBITRATION AGREEMENT.

Under the express terms of the arbitration agreement, it is not this Court's role to determine the arbitrability of Hill's TCPA claim.  Instead, the Terms of Use require that "ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT

BY THE COURT." Viner Decl. Ex. 3 at ¶ 2. As a matter of law, when the parties have contracted to delegate the arbitrability determination to an arbitrator, courts are not permitted to "short-circuit the process and decide the arbitrability question themselves." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S Ct. 524, 527–28 (2019). Therefore, because there is a valid arbitration agreement that Quicken Loans is entitled to enforce, this Court should compel arbitration and permit the arbitrator to resolve any disputes about arbitrability.

Even assuming, alternatively, that this Court may properly consider the arbitrability question, the arbitration agreement confirms that it "encompasses the dispute at issue." *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). That provision broadly covers "ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION." Viner Decl. Ex. 3 at ¶ 2. Agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching," *Chiron*, 207 F.3d at 1131. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25. Hill's TCPA claim against an LMB affiliate and related entity falls squarely within this broad agreement to arbitrate "ALL CLAIMS," including federal statutory claims against LMB and its affiliates. *See Mohamed*, 2015 WL 3749716, at *12 ("[T]he party opposing arbitration . . . bears the burden of proving any defense."). In fact, Hill's claims arise out of and relate to her use of LMB's services and Quicken Loans' text messages to her purported cell phone as a result of that use. Under these circumstances, there is no question that Hill's claims fall within the scope of her arbitration agreement.

### E.   ARBITRATION SHOULD PROCEED ON AN INDIVIDUAL BASIS.

Hill must be compelled to arbitrate her TCPA claim on an individual basis. The October and November 2018 Terms of Use Hill agreed to explicitly state: "NEITHER YOU NOR LMB SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CONSUMERS OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS."  Viner Decl. Ex. 3.  Such class waivers in arbitration provisions are enforceable.  *See Murphy*, 724 F.3d at 1225–26 ("Importantly, the FAA meant what the [Supreme] Court in *Concepcion* says it means—that the Customer Agreement's class waiver is enforceable . . . ."  (citing *Concepcion*, 563 U.S. at 1748)); *Sanchez v. Valencia Holding Co., LLC*, 190 Cal. Rptr. 3d 812, 820 (2015) (reversing the judgment of the Court of Appeals because "the FAA requires enforcement of class waivers in consumer arbitration agreements and preempts state law to the contrary").  And there is no reason Hill's waivers should not be enforced here.  Accordingly, the Court should compel individual arbitration of Hill's claims.

### F.   THE COURT SHOULD STAY THIS ACTION.

Because Hill's TCPA claim is subject to contractual arbitration, this Court should stay all proceedings that relate to her individual claims, pending arbitration under 9 U.S.C. § 3.  *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147–48 (9th Cir. 1978) ("The [Federal Arbitration] Act provides for a stay pending compliance with a contractual arbitration clause.").

///

///

///

17

## IV.    <u>CONCLUSION</u>

For all of the forgoing reasons, Quicken Loans respectfully requests that this Court grant this Motion to Compel Arbitration and stay all proceedings on Hill's individual claim.

Respectfully submitted,

Dated:   April 15, 2019          By:    */s/ Brooks R. Brown*
BROOKS R. BROWN
*BBrown@goodwinlaw.com*
LAURA A. STOLL
*LStoll@goodwinlaw.com*
W. KYLE TAYMAN (pro hac vice)
*KTayman@goodwinlaw.com*
**GOODWIN PROCTER** **LLP**

Attorneys for Defendant:
QUICKEN LOANS INC.