Frank S. Hedin (SBN 291289)
E-mail: fhedin@hedinhall.com
David W. Hall (SBN 274921)
E-mail: dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HILL; and GAYLE HYDE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>        Defendant. | Case No. 5:19-cv-00163-FMO-SP<br><br>**PLAINTIFF AMANDA HILL'S OPPOSITION TO DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION** |

Plaintiff Amanda Hill submits this response in opposition to the Motion to Compel Arbitration (ECF No. 29 ("Motion")) filed by Defendant Quicken Loans Inc. ("Quicken").

## INTRODUCTION

From the outset of this action, Quicken chose to litigate. But now, apparently dismayed with the fruits of its own litigation strategy – all class claims coordinated before this Court, within the Ninth Circuit – Quicken has reversed course, hoping to avoid federal court altogether with a motion to compel individual arbitration under a purported agreement between Plaintiff and non-party LMB Mortgage Services, Inc. ("LMB"). Quicken's motion fails at every level, for at least five primary reasons.

First, Quicken waived any right it may have had to arbitrate Plaintiff's claims by availing itself of this Court and engaging in months of dilatory litigation with Plaintiff and the putative class. The time to invoke any right to arbitrate was at the outset of the case, not months later after Quicken's own wasteful motion practice forced both named Plaintiffs to incur substantial time and costs coordinating a dismissal and two amended complaints across three different federal dockets.

Second, even if Quicken did not waive any right it has to compel arbitration, the Motion still fails because Quicken has no right to compel Plaintiff to arbitration. Indeed, Quicken has failed to carry its threshold burden of demonstrating the existence of an agreement to arbitrate between Plaintiff and Quicken. While Quicken points to a series of screenshots from two LMB-associated websites, containing an array of form fields, pertaining to a myriad of subjects, culminating in a button for submitting information into those numerous form fields, Quicken has not submitted any evidence demonstrating that Plaintiff pressed the button at the end of that wild goose chase to submit any information that she inputted to LMB. The materials submitted by Quicken in support of the Motion merely reflect that certain information pertaining to Plaintiff was inputted into the form (and/or harvested from other data sources, discussed below in detail) – but these materials plainly do not show that the Plaintiff submitted any information to LMB by pressing the button at the end of the form. Because the Motion hinges on the button having been pressed by Plaintiff (the occurrence of which Quicken has not and cannot establish), the Motion fails to demonstrate Plaintiff's assent to LMB's Terms of Service (or the arbitration clause therein). Mutual assent is an essential element to contract formation

1

under California law, and without the formation of a contract between Plaintiff and LMB there is no possible basis for Quicken to compel arbitration in this case.

The reality is that Plaintiff never pressed the button. Together with this brief, Plaintiff submits evidence, including a sworn declaration and various materials concerning LMB's and Quicken's technology employed on the LMB website, which collectively demonstrates that Plaintiff never pressed the button on the final page of the LMB site to submit the information she had inputted to LMB. Rather, LMB and/or Quicken collected (or harvested from other sources) Plaintiff's data in real time, as Plaintiff navigated through and inputted certain non-personal information into LMB's website, even though she never actually submitted that inputted data by pressing the button. LMB and/or Quicken then used that surreptitiously-extracted data to identify Plaintiff as the person who inputted it and to locate Plaintiff's cellular telephone number, and thereafter began bombarding Plaintiff with unsolicited text messages to that telephone number. This is corroborated by the experiences of numerous other similarly-situated persons who likewise received unsolicited text messages from LMB and/or Quicken, who likewise visited LMB's website, navigated through the same form fields, declined to press the button on the final page, and nonetheless began receiving unsolicited text messages from Quicken and/or LMB.

Because Quicken has not demonstrated (and cannot demonstrate) that Plaintiff pressed the button, Quicken has failed to (and cannot) establish that Plaintiff assented to the Terms of Use – a necessary element to the formation of a contract.

Third, even if Quicken could somehow establish that Plaintiff clicked the button (and it cannot), the Motion still fails because Quicken cannot demonstrate that Plaintiff assented to the Terms of Use containing the arbitration provision on the LMB website. The LMB website relied upon by Quicken in the Motion is configured in such a deceptive manner, with such inconspicuous disclosures, that it could not have, as a matter of law, adequately put Plaintiff on notice of the Terms of Use, even if she had clicked the button (which she did not).

Fourth, even if Plaintiff had assented to the agreement to arbitrate in LMB's Terms of Use, only Plaintiff and LMB would be parties to that agreement, Quicken would be a non-signatory to the agreement, and Quicken would accordingly not be entitled to compel

2

Plaintiff to arbitrate her claims pursuant to the agreement. Generally speaking, only signatories to an agreement can enforce an agreement. The two exceptions to the rule that Quicken relies upon – that Plaintiff is equitably estopped from denying Quicken's ability to enforce the agreement to arbitrate, and that Quicken is an intended third-party beneficiary to the agreement to arbitrate – are both plainly inapplicable here. For one thing, the plain language of the Terms of Use does not identify Quicken as a party to the Terms of Use or the incorporated agreement to arbitrate. Moreover, Plaintiff's statutory claims for violation of the TCPA do not arise out of the Terms of Use or the agreement to arbitrate, Plaintiff is not attempting to invoke the Terms of Use or the agreement to arbitrate in any way (nor could she, having never entered into either agreement), and Plaintiff does not allege any claims arising from any interdependent misconduct between Quicken and LMB arising from LMB's Terms of Use or the arbitration clause incorporated therein. Nor is Quicken an intended third-party beneficiary to the agreement to arbitrate: Quicken fails to demonstrate that the signatories to the agreement intended for Quicken to so benefit, and in fact LMB's Terms of Use state the exact opposite: that no rights or obligations of third-party mortgage lenders like Quicken arise from the agreement.

Finally, even if Quicken could somehow demonstrate that Plaintiff entered into the Terms of Use with LMB (and it cannot), and even if Quicken then could somehow enforce those Terms of Use against Plaintiff as a non-signatory to them (and it cannot do that either), the Motion would nonetheless fail because the arbitration provision is permeated with procedural and substantive unconscionability and is thus not enforceable by Quicken.

Quicken cannot compel Plaintiff to arbitrate, and the Motion should be denied.

## BACKGROUND

Quicken is a subprime mortgage lender. LMB is a subprime mortgage lead generator. Collectively, LMB and Quicken generate leads and aggressively market to those leads in an effort to lure consumers into refinancing homes, taking out other bad loans, and otherwise unnecessarily borrowing money at high interest rates – essentially the same sort of conduct that got the country embroiled in the housing crisis of the mid-2000s. *See, e.g.,* Angela Koch, "Another Mortgage Crisis — and This One Could 'Quicken' a Downturn," Medium, Oct. 4, 2018, *available at*

3

https://medium.com/@US_moneyreserve/another-mortgage-crisis-and-this-one-could-quicken-a-downturn-dcf8f8793e95 (last accessed May 9, 2019) (referring to Quicken and LMB as "shadow banks" and "multi-lender sites" that were "unnamed co-conspirator in the financial crisis"); Julie Creswell, "Quicken Loans, the New Mortgage Machine," The New York Times, Jan. 21, 2017, *available at* https://www.nytimes.com/2017/01/21/business/dealbook/quicken-loans-dan-gilbert-mortgage-lender.html (last accessed May 9, 2019) ("In the years since the crisis, many of the nation's largest banks pulled back their mortgage-lending activities. Quicken Loans pushed in.").

When Quicken receives these "leads" from LMB, it begins bombarding them with e-mails, phone calls, and, as relevant here, highly-invasive text messages – without any of their prior express written consent and in clear violation of the Telephone Consumer Protection Act ("TCPA"). *See id.* ("Former executives describe Quicken Loans as a technology company that sells mortgages. But the heart that keeps Quicken's blood moving is the 3,500 mortgage bankers who work its phones.").

This is precisely what occurred to Plaintiff Hill and countless other financially-distressed homeowners. Plaintiff brings this action on their behalf to redress Quicken's widespread violations of the TCPA.

## I. Procedural History

On January 28, 2019, Plaintiff initiated this action to redress Quicken's violations of the TCPA on a class-wide basis. (*See* ECF No. 1.)

On March 18, 2019, after waiving service pursuant to Rule 4 (ECF No. 10), Quicken responded to the Complaint by (1) filing a motion to dismiss for failure to adequately allege the use of an ATDS, failure to adequately allege a DNC-Registry claim, and failure to otherwise allege a plausible claim for violation of the TCPA (the ATDS portion of which was premised on stale authority overruled by the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018)); (2) requesting that the Court take judicial notice of various documents; and (3) moving to stay the case in favor of two other federal actions being litigated against Quicken outside the Ninth Circuit (in Minnesota and Florida), in a transparent attempt to avoid the Ninth Circuit's controlling

decision in *Marks*. (*See* ECF Nos. 14, 14-1 14-2, 14-3, 14-4, 14-5, 15, 15-1, 15-2, 15-3, 15-4, 1-5, 15-6.)

As a consequence of Quicken's litigation strategy, Plaintiff and her counsel expended substantial time and resources to simultaneously prepare oppositions to the merits and venue motions that Quicken had filed, and to also attempt to coordinate with the plaintiffs and their counsel in the two out-of-circuit actions, with an eye towards finding the most efficient path forward in the litigation on behalf of the putative class. Plaintiff's efforts were successful: the Minnesota action was voluntarily dismissed; the Florida action was amended to proceed on an individual basis; and an amended complaint was prepared, with Plaintiffs Hill and Hyde as named plaintiffs, to enable the most efficient prosecution of the class claims in a single forum. (*See* ECF Nos. 20, 21.)

Thus, on April 1, 2019, Plaintiffs Hill and Hyde filed the operative First Amended Complaint. (ECF No. 20.) Later that same day, Plaintiff opposed Quicken's motion to stay on first-filed doctrine grounds, arguing that the motion to stay had been mooted by the coordination of the litigation in this district (including by the dismissal of the *Hyde* action in Minnesota and the Florida plaintiff's request to amend his complaint to remove the class allegations from his complaint).

On April 11, 2019, after Plaintiffs Hill and Hyde filed their First Amended Complaint, Quicken continued to brief its baseless motion to stay Plaintiff Hill's claims (ECF No. 27). That same day, Quicken also filed a joint stipulation to extend the deadline for Plaintiffs to move for class certification pursuant to Local Rule 23-3. (ECF No. 26.)

On April 15, 2019, Quicken moved to dismiss both Plaintiffs' claims for failure to state a claim pursuant to Rule 12(b)(6), and additionally moved to dismiss Plaintiff Hyde's claims for lack of personal jurisdiction. (ECF No. 30.) That same day, recognizing that it would no longer be able to keep these class-wide proceedings concentrated in Florida (with a relatively-inexperienced plaintiff's counsel at the helm and thus the best chance of prevailing on the merits), Quicken pulled a complete 180 by filing the Motion, requesting <u>for the first time</u> that Plaintiff Hill be compelled to arbitrate her claims on an individual basis. (ECF No. 29.) And on April 17, 2019, Quicken stipulated to extend the briefing schedule on Quicken's motions to dismiss and to compel arbitration. (ECF No. 31.)

In support of the Motion – nothing more than a belated, transparent attempt to duck class-wide liability – Quicken points to a series of screenshots from two LMB-associated websites, culminating in a button that Quicken contends Plaintiff pressed, thereby manifesting her assent to LMB's Terms of Service (and the arbitration clause therein). But the materials submitted by Quicken in support of the Motion, including a declaration of an LMB employee, fall far short of establishing that Plaintiff actually clicked that button. In fact, as explained below, the LMB declaration submitted by Quicken is wholly conclusory in nature, is not corroborated by any business records or other documentary evidence, and is in fact controverted by sworn declarations submitted by Plaintiff and three other similarly-situated consumers attesting to the fact that they never pressed the button on LMB's website but were nonetheless inundated with LMB's and Quicken's text messages. As explained below, the reality is that Plaintiff never pressed the button, never assented to LMB's Terms of Use, and thus cannot be compelled to arbitrate her claims.

## II.     Background Facts

To generate leads for Quicken, LMB employs invasive, highly-sophisticated technology on its websites to collect personal information from visitors, including visitors who attempt to use the mortgage calculator tools available on such websites by inputting information pertaining to their homes and existing mortgages. LMB extracts, collects, and analyzes this visitor-inputted information in real time, even where the visitor declines to submit to LMB the information he or she has inputted (by pressing a form-submission button at the bottom of such a page). LMB uses the data it collects from such visitors to identify their cellular telephone numbers (or to identify numbers that it believes belongs to them for those who did not input their numbers into the form), which it sells to Quicken. Quicken then blasts text messages advertising its lending services to these so-called "leads," even though it plainly lacks the prior express consent necessary to do so – precisely as experienced by Plaintiff here.

According to Quicken, Plaintiff visited the LMB website YourVASurvey.com in October 2018. Plaintiff does not dispute visiting the website. (Declaration of Amanda Hill ("Hill Decl."), ¶ 2).) However, set forth in Plaintiff's declaration submitted together herewith, when Plaintiff arrived at the final screen in the array of webpages on LMB's website, screenshots of which are attached to LMB's declaration, Plaintiff realized that

6

she would be required to input highly-personal contact information to complete the form; rather than doing so, Plaintiff closed out of the page, without inputting this sensitive information and without pressing the button. (*See id.* ¶¶ 2, 4.) Plaintiff never pressed the button on the YourVASurvey.info website, nor did she ever press any similar such button on any other LMB website. (*See id.*) But Plaintiff nonetheless began receiving Quicken's text messages. (*Id.* ¶ 3; *see also* ECF No. 20 at 5, FAC ¶ 14.) Plaintiff responded "stop," but Quicken didn't quit – instead, Quicken kept sending her text messages. (ECF No. 20 at 5-6; FAC ¶ 15.)

This same experience is shared by numerous others, including Amber Pickett and Carrie Tucker (whose declarations are submitted together herewith). (*See generally, e.g.,* Declaration of Carrie Tucker ("Tucker Decl."); Declaration of Amber Pickett ("A. Pickett Decl."); *see also* Declaration of Brandon Pickett ("B. Pickett Decl.").) Although some of these individuals inputted information into the form fields on the LMB website, none of them pressed the button on the final page, and yet all of them began receiving unsolicited text messages from Quicken and/or LMB – precisely as experienced by Plaintiff here. (*See id.*) This is no coincidence. This is compelling evidence that Quicken has sent millions of text messages to phone numbers that no one submitted to LMB, and that these messages were then received by millions of people who never assented to the Terms of Use. Plaintiff is one of these people.

Like Plaintiff, Ms. Pickett, and Ms. Tucker, numerous other consumers have posted publicly available complaints online about Quicken's and LMB's business practices, as depicted in several screenshots submitted together with this brief (*see* Declaration of Frank S. Hedin ("Hedin Decl.") ¶ 6; *id.*, **Exhibit E** (attaching screenshots)), one example of which is depicted below:



(*Id.*, Ex. E at 1.)

PLAINTIFF AMANDA HILL'S OPPOSITION TO
DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION

Thus, it appears that LMB and/or other affiliated entities use advanced cookie- and data analytics-based algorithms, in conjunction with other data warehouses, to extract all of the data Plaintiff had inputted (but not submitted) in order to associate a name, address, and phone number for Plaintiff, even though she had not pressed the button to submit the information.[1]  However, the coup de grâce came later still, when LMB and/or other

---

[1]  As LMB's own patents and other public documents explain, its technology is designed to (and does) extract information inputted (but not submitted) by visitors to its website, and then uses that data to locate additional personal information pertaining to those visitors from outside sources, such as credit reports and property records, independent of website visitors filling out the website fields – even if the visitor does not submit the information at the end of the form:

> A consumer lead enhancement system comprises a vendor criteria database, a web server, and a matching engine. The vendor criteria database is configured to store vendor criteria for receiving leads regarding consumers. The web server is configured to request from a consumer a first set of consumer characteristics and a second set of consumer characteristics. The matching engine is configured to compare the consumer characteristics with information in the vendor criteria database in order to match the consumer with one or more vendors so that the system is capable of generating a lead and transmitting the lead to the vendors. If the consumer provides the second set of consumer characteristics, the consumer may be matched to vendors based on the second set of consumer characteristics. Otherwise the consumer may be matched to vendors based on the first set of consumer characteristics.

(*E.g.,* U.S. Patent No. 7,778,885, Aug. 27, 2010, a copy of which is attached to the Hedin Decl. as **Exhibit A** (Abstract of the '885 patent, assigned to LowerMyBills.com, Inc.).)

And Quicken, like LMB, both of which are subsidiaries of Rock Holdings, Inc., appears to use the same technology as LMB uses to collect information inputted by visitors to into forms fields on its website, in real time.  Specifically, it has been widely reported that Quicken employs back door wiretapping software on Quickenloans.com to facilitate real-time interception and transmission of visitors' electronic communications as soon as the visitor loads Quickenloans.com or related websites.  (*See, e.g.,* "Before You Hit 'Submit,' This Company Has Already Logged Your Personal Data.", available at https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081 (last visited May 9, 2019), a copy of which is attached to the Hedin Decl. as **Exhibit B**; *see also Consumerist,* available at https://consumerist.com/2017/06/29/these-forms-collect-your-data-even-if-you-dont-hit-submit/ (last visited May 9, 2019), a copy of which is attached to the Hedin Decl. as **Exhibit C**. Every keystroke and mouseclick is instantaneously intercepted and transmitted through the wiretap. This real-time transmission includes, among other things, information typed on forms located on Quickenloans.com and related websites, regardless of whether the user completes the form or clicks "Submit."   (*See* Hedin Decl. Exs. B-C.) As website visitors browse Quickenloans.com and related e-commerce websites, the wiretapping software cross-references the collected information and attempts to "match" website visitors with records of real-life people in back-end databases maintained by data-brokers such as Navistone, Inc. (*See id.*) This matching involves running a database query to correlate the IP address of a website visitor and also matching user profiles through the use of names, addresses,

8

---

affiliated entities sold Plaintiff's data (that she had not submitted but they had harvested) to Quicken, who then began bombarding Plaintiff's cellular telephone number with its invasive text messages. Simply put: Plaintiff did not enter into the Terms of Use, did not agree to arbitrate anything with anyone, and plainly did not consent to receive text messages from anyone. (*See* Hill Decl. ¶¶ 2-4.)

But even if Quicken could prove that Plaintiff actually clicked the final button on the final page of the survey flow on YourVASurvey.info (or on LowerMyBills.com or any other LMB website), the webpage plainly failed to provide Plaintiff with clear and conspicuous notice that she would be agreeing to the Terms of Use by pressing the button. The screenshots of YourVASurvery.info accompanying the Motion reflect a 13-page online survey culminating with a button that states "See my results," the final screen of which is attached to LMB's declaration in the following form:



(ECF No. 29-6 at 17.) However, when that screen is actually viewed on a mobile device, as it was when Plaintiff viewed it in October 2018 (*see id.* at 3 (noting "Device Type:

telephone numbers, and other PII. Once a match is found, the software de-anonymizes the user and updates the back-end databases with the user's current browsing activities and PII. (*See id.*) This software continues to monitor the website visitor as he or she browses Quickenloans.com., will report every page visited by the user, and assume that a visitor is interested in applying for a mortgage. (*See id.*) Thus, as these articles explain, when filling out forms, any PII the website visitor provides is immediately, automatically, and secretly transmitted in real-time. (*See id.*)

9

Mobile")), it would have appeared as follows (notably, without any of the fine print regarding the Terms of Use visible on the device's screen):



(Hedin Decl. ¶ 7; *id.*, **Exhibit F**.)  This sort of "day late, buck short" disclosure is plainly insufficient to manifest Plaintiff's assent to the Terms of Use.

Similarly, the button on the LowerMyBills.com webpage screenshot accompanying the Motion merely states "Calculate Your FREE Results."  (ECF No. 29-7 at 5.)  Plaintiff did not press that button either (*see* Hill Decl. ¶¶ 3-4), but even if she did, the configuration and layout of the page was likewise insufficient to clearly and conspicuously provide Plaintiff fair notice of the fine-print disclosures below the button.

Moreover, even assuming Plaintiff had assented to LMB's Terms of Use on either of these pages (and she did not), the plain language of the agreement to arbitrate makes clear that it would only exist as be between Plaintiff and LMB, and not between Plaintiff and any non-signatories Quicken.  (ECF No. 29-8 at 2 (Terms of Use, stating in pertinent part that "The Agreement describes the terms and conditions applicable to your use of the LMB Website and the products and services provided through or in connection with the LMB Website[.]").)

Finally, the arbitration agreement embedded in LMB's Terms of Use is permeated with unconscionable terms, including such one-sided terms as those that would require Plaintiff to arbitrate but not LMB (or any other entity otherwise able to enforce the agreement to arbitrate), prevent Plaintiff from recovering attorneys' fees from LMB but

require Plaintiff to pay LMB's fees, bar Plaintiff from recoving various types of damages, shorten the statutory period for any claims subject to the agreement, and the list goes on. (*See id.* at 29-8 at 3 (agreement to arbitrate providing for these and other clearly unconscionable terms).)

On this record, the Motion fails as a matter of law for the reasons below.

## LEGAL STANDARD

It is axiomatic that "arbitration is strictly a matter of consent," and thus a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016); *accord, Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, J.) ("Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. . . . [E]ven under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs.").

"Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court," the party moving to compel arbitration must first prove the existence of "an express, unequivocal agreement to that effect." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). In determining whether Quicken has proved that Plaintiff assented to arbitration, courts "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist.,* 925 F.2d at 1140-41. "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* "If there is doubt as to whether such an agreement exists," arbitration must be denied. *Id*. at 1141.

## ARGUMENT

Quicken waived any right it had to arbitrate. Even if it had not, Plaintiff did not agree to arbitrate anything with LMB or Quicken. And in the unlikely event the Court finds that Plaintiff agreed to arbitrate with Quicken, the purported agreement is unconscionable and thus still unenforceable. The Motion should be denied.

PLAINTIFF AMANDA HILL'S OPPOSITION TO
DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION

## I. Quicken Waived Any Right it Had to Compel Arbitration

First, whatever right to arbitrate might have existed, Quicken waived it by first litigating for months on the merits, across three federal court dockets.

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). A party waives any right to compel arbitration if the record reflects: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id*.

Quicken cannot dispute that it knew of its purported right to arbitration when it filed its initial motions in this action. The arbitration clause that Quicken invokes is contained in an agreement purportedly entered in October 2018 - *nearly four months before* this action was commenced on January 28, 2019 – by a self-proclaimed "affiliate" of Quicken no less. And for years, Quicken has repeatedly (and unsuccessfully) sought to invoke the same "Terms of Use" in other cases. *See, e.g., Orsatti v. Quicken Loans, Inc.,* 2016 WL 7650574 (C.D. Cal. 2016) (where Quicken submitted screenshot from LowerMyBills.com as purported evidence of consent, court denied motion to dismiss because, as here, even if plaintiff visited and inputted any information, Quicken failed to establish that plaintiff "completely fill[ed] out the form"). Quicken has been down this road before and was thus certainly aware of what its options were at the outset of this case.

Despite this knowledge, Quicken acted inconsistent with any purported right to arbitrate. Quicken responded to Plaintiff's claims by twice "seeking a judgment on the merits" and effectively "seeking a venue transfer" to another federal court (ECF Nos. 14, 15, 21, 27, 30) – the sort of "heads I win, tails you lose" litigation strategy that the Ninth Circuit has repeatedly held are "inconsistent with [a party's] right to arbitrate." *Martin*, 829 F.3d at 1125 (admonishing litigants who "choose[] to delay his right to compel arbitration by actively litigating his case to take advantage of being in a federal court"); *Messina v. North Cent. Distributing, Inc*., 821 F.3d 1047, 1051 (8th Cir. 2016) (attempt to transfer action to another federal venue prior to moving to compel arbitration "demonstrate[s] that [the movant] wanted to play heads I win, tails you lose, which is the worst possible reason for failing to move to compel arbitration sooner").

PLAINTIFF AMANDA HILL'S OPPOSITION TO
DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION

Quicken did exactly that with its two-pronged effort to avoid the Ninth Circuit's *Marks* decision which is unfavorable to Quicken: Quicken first moved to dismiss on the merits, holding out hope for a reversal of *Marks* through rehearing or *certiorari* petition. (ECF No. 14). Hedging its bet, Quicken also moved under the first-to-file rule to stay this case in favor of proceedings in two out-of-circuit federal courts unbounded by Ninth Circuit precedent. (ECF No. 15.) Only after both *Marks* settled (extinguishing any hope of reversal) and Plaintiff coordinated all class claims before this Court (mooting Quicken's forum-shopping motion to stay) did Quicken abruptly change tact and file this motion to compel arbitration (ECF No. 29). That is not the way it works. Quicken cannot avail itself to the full panoply of defensive tools offered under the federal rules, in federal court, only to abandon the litigation on a whim in favor of individual arbitration when things start going south.

Quicken's inconsistent acts prejudiced Plaintiff. "When a party has expended considerable time and money due the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced." *Martin*, 829 F.3d at 1127. Rather than promptly move for arbitration, Quicken chose to actively litigate for months, under a professed concern for "economy, consistency, and comity." *See* ECF No. 15-1 (Quicken's Motion to Stay). Taking Quicken at its word, Plaintiff proceeded to incur substantial time and costs working to coordinate a dismissal and several motions and amended pleadings across three different federal dockets.

Now that Plaintiff's efforts have accomplished exactly what Quicken claimed to want from the outset - all class claims before a single federal court – Quicken should not be allowed to renege simply because the particular federal court is bound by Ninth Circuit precedent in *Marks* which Quicken wants to avoid. Arbitration is not an ace up the sleeve, to be held back and played only if and after a defendant's forum-shopping fails. Quicken chose to litigate. As a result, Plaintiff expended substantial time and effort to coordinate all class claims before this Court. Quicken cannot nullify that effort with this tardy motion.

Quicken waived any right it had to arbitrate, and the Motion should be denied.

PLAINTIFF AMANDA HILL'S OPPOSITION TO
DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION

## II.    The Motion to Compel Arbitration Fails on the Merits

Even if any right to compel arbitration was not waived, Quicken fails to prove that Plaintiff assented to the Terms of Use with LMB, and accordingly fails to demonstrate the existence of an agreement to arbitrate between Plaintiff and LMB (or anyone else entitled to enforce the Terms of Use in LMB's place). Moreover, to the extent Plaintiff assented to the Terms of Use, the agreement to arbitrate would still be unenforceable by Quicken, a non-signatory to the agreement to arbitrate. And finally, even if Plaintiff assented and the agreement to enforceable by Quicken, the agreement to arbitrate is procedurally and substantively unconscionable and thus unenforceable nonetheless.

### A. Quicken Fails to Demonstrate that Plaintiff Assented to LMB's Terms of Use

Arbitration can be compelled "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Three Valleys Mun. Water Dist.,* 925 F.2d at 1140-41. "If there is doubt as to whether such an agreement exists," Quicken has failed to carry its burden and arbitration must be denied. *Id*. at 1141. Under applicable California law, the "essential elements for a contract" include each parties' mutual assent to the contract. *Norcia v. Samsung Tel. America, LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting Cal. Civ. Code §1550).[2]

In this case, the Motion fails for failure to demonstrate the mutual assent element of contract formation under California law for two reasons: (1) Quicken has failed to demonstrate that Plaintiff clicked the button on the final page of LMB's website, as would be necessary to even potentially bind herself to the Terms of Use; and (2) even if Plaintiff clicked the button (and she did not), she was not put on fair notice of the Terms of Use to which Quicken contends she is bound.

---

[2] Even in the context of arbitration, the existent of an agreement is determined by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). California contract law applies here under a "governmental interest approach," *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982), for Plaintiff's claims arise from text messages she received from Quicken in California. *See, e.g., Hernandez v. Burger*, 102 Cal. App. 3d 795, 801 (1980).

14

### 1. Quicken Has Not Demonstrated (and Cannot Demonstrate) that Plaintiff Clicked the Submit Button on LMB's Website

Quicken points to screenshots of two LMB-related websites as manifesting Plaintiff's assent to LMB's Terms of Service (and the arbitration clause therein). ECF No. 29-1 at 9-10. But LMB's own employee declarant admits they have no direct evidence showing that Plaintiff clicked the button on the final page of the array of screens that Quicken contends Plaintiff traveled through. *See* ECF No. 29-5 at 2 ("LMB does not capture or retain in session screenshots."). This lack of threshold evidence is fatal to Quicken's Motion: Quicken cannot prove Plaintiff clicked the button on LMB's say-so alone to establish her assent to the Terms of Use.[3] And with not a shred of admissible evidence that Plaintiff actually clicked the final button – coupled with Plaintiff's sworn declaration stating that she did not click that button (as well as the declarations of others just like her with the same or substantially similar experience) – the Motion crumbles under the weight of its own premise: if there's no click, then there's no assent. *See Smith v. Rent-A-Center, Inc*., 2019 WL 1294443, at *6-*7 (E.D. Cal. 2019) (denying arbitration where declarant "summarily asserted that plaintiff electronically signed the agreement" but failed to substantiate with admissible supporting evidence "how he inferred that it was Plaintiff who created and entered the password" or "ascertained that the electronic signature was the act of Plaintiff."); *Ruiz v. Moss Brothers Auto Group*, 232 Cal. App. 4th 836 (2014) (same); *Orsatti,* 2016 WL 7650574 at *6 (denying motion to dismiss because, like here, even if plaintiff partially filled out some information at LMB website, Quicken failed to present evidence that plaintiff "completely fill[ed] out the form").

---

[3] The Court should not consider the statements made by Mr. Viner concerning records that LMB purports to possess, but has failed to submit to the Court, concerning Plaintiff's purported interactions with either of the websites. Mr. Viner's statements are inadmissible hearsay and violate the best evidence rule. *See, e.g., Stover-Davis v. Aetna Life Ins. Co*., 2016 WL 2756848, t *3 (E.D. Cal. 2016) ("On motion to compel arbitration, the court applies a standard similar to summary judgment . . . [thus] the material cited to support to dispute a fact [must] be presented in a form that would be admissible in evidence.") (citing Fed. R. Civ. P. 56(c)); *U.S. v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) ("proponents of computer-produced evidence [] founder on the best evidence rule by presenting [] testimony based on . . . review of computer printouts without actually introducing the printouts themselves . . ."); *Loomis v. Cornish*, 836 F.3d 991, 996-97 (9th Cir. 2016) (court "properly rejected" "affidavit [] not based on personal knowledge [that instead] relied on inadmissible hearsay . . .").

Nor can it be inferred from LMB having supposedly obtained Plaintiff's personal information though its intake websites. As explained above, the personal information inputted by a visitor in the series of intake fields on the LMB website is <u>collected and stored by LMB and/or other affiliated entities regardless of whether the webpage visitor actually clicks the final button</u>, and is then used by LMB and/or other affiliated entities to automatically tie a name, address, and cellular telephone number with that visitor (as well as to prepopulate similar personal information fields on subsequent visits to LMB-associated websites). *See* ECF No. 29-5 at 5.[4]

LMB's and Quicken's own patented technology is designed to (and does) compile this personal information from outside sources, such as credit reports, property records, and other data sources, including those maintained by Experian, without website visitors having inputted all of their personal information into the form or even pressed the final button to submit any information that was inputted. *E.g.,* U.S. Patent No. 7,778,885, Aug. 27, 2010, Hedin Decl., Ex. A; *see also Kingery v. Quicken Loans, Inc.*, 300 F.R.D. 258, 262 (S.D. W. Va. 2014) (describing Quicken's automated lead processing software, which, *inter alia*, "contacts third-party vendors to obtain the lead's credit report" and then "scrapes the data in the credit report . . . for storage in [Quicken's] database").

This is further confirmed by the sworn declarations accompanying this opposition brief (Hill Decl. ¶¶ 2, 4; A. Pickett Decl. ¶¶ 2, 4; B. Pickett Decl. ¶¶ 2, 4; Tucker Decl. ¶¶ 2, 4), by numerous consumer complaints posted publicly online (Hedin Decl., Ex. E), and by LMB's own words in the declaration submitted in support of the Motion (*see* ECF No. 29-5 at 5 (admitting that personal information inputted into forms on LMB's websites is automatically collected by LMB and used to automatically prepopulate similar fields on subsequent visits to associated websites, explaining that LMB collects and keeps the "information" of any "consumer [that] had visited an LMB or LMB-powered website in the preceding 60 days" and then "if a consumer had visited a website owned or powered by LMB in the preceding 60 days, the consumer would not have to re-enter . . . his or her

---

[4] As the screenshots reflect on their face and LMB's declarant further admits, the personal information fields of those websites are necessarily populated ***before*** the webpage visitor is presented with any opportunity to click any button agreeing to anything. *See* ECF No. 29-5 at 2 (explaining that website collects and "maintains the data that a consumer enters" and then only if "their answers me[et] certain criteria" are "LMB's disclosures, privacy policy, and terms of use [] presented to the consumer[.]").

information."); *see also id.* at 8 (conceding that this automated prepopulating information entry process happened to Plaintiff here, because ". . . she was not required to re-enter all her information," but conveniently omitting the fact that Plaintiff never pressed the button to submit anything to LMB)). Thus, whatever personal information is inputted, it is collected and stored by LMB regardless whether the webpage visitor actually inputs all of their information and regardless whether the visitor clicks the final button. In this case, LMB's records fail to show that Plaintiff hit the "See my results" button or any other submission button.

Because Quicken has failed to adequately demonstrate that Plaintiff assented to the Terms of Use, Quicken has failed to demonstrate the existence of a contract to arbitrate.[5] The Motion should be denied. *Three Valleys Mun. Water Dist.,* 925 F.2d at 1140-41 (if any "genuine issue of fact concerning the formation of the agreement," motion must be denied).

### 2. LMB's Website Fails to Put Visitors on Fair Notice of the Terms of Use to which Quicken Contends they Are Bound by Pressing the Submit Button

But even if Quicken had adequately demonstrated that Plaintiff clicked any of the submission buttons (which is not so), that would still fail to establish Plaintiff's assent to LMB's Terms of Use. Plaintiff could not have assented to the Terms of Use because they are not clearly and conspicuously displayed to visitors.

Companies like Quicken that seek to enforce the terms of an online take-it-or-leave-it contract bear the burden of establishing, on undisputed facts, that the provisions of the contract were clearly communicated and accepted. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (explaining that the "onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," for "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound"). Determining "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and

---

[5] At the very least, the conflicting evidentiary record before the Court on the issue of mutual assent – a fundamental element to the formation of any contract – leaves a genuine issue of fact as to whether Plaintiff or anyone else formed a contract (i.e., the Terms of Use) with LMB in the way Quicken and LMB say they did.

whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms" is "a fact-intensive inquiry," *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016), which "depends heavily" on "the design and content" of the relevant webpages. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016); *see also Nguyen*, 763 F.3d at 1177-78.

Here, the design and content of the proffered screenshots come nowhere close to demonstrating Plaintiff's assent to LMB's Terms of Use. The YourVASurvery.info screenshots reflect nothing more than an online survey (ECF No. 29-6), the first eleven pages of which comprise a series of survey questions and form fields for the visitor's answers to them (answers which LMB collects in real time, before the final button is pressed) (*id.* at 5-14). The eleventh page has a button labeled "Next" – but critically lacks any terms or conditions, any hyperlink to any terms or conditions, any indication that an agreement is being offered, any request for assent to any terms, or any mechanism to assent to any such terms. (*Id.* at 15.) The twelfth page to which a visitor is directed after clicking "Next" on page eleven contains a form field for an e-mail address (*id.* at 16), followed by a prepopulated checkbox referencing the e-mail address (which Quicken does not even attempt to argue constitutes assent to the Terms of Use), followed by another "Next" button. (*Id.*) The thirteenth and final page asks for the visitor's name, phone number, and street address – data which LMB and/or Quicken collects in real time as it is inputted, even if the form is never submitted. (*Id.* at 17.) At the bottom of this thirteenth page is the final button labeled "See my results" – presented to the visitor without any mechanism requiring the visitor to affirmatively agree to any contractual terms in order to proceed, be it by a button, a checkbox, or an electronic signature, and without any clear, conspicuous, or prominent indication whatsoever that by pressing the button the visitor would be purportedly agreeing, consenting, or otherwise assenting to any terms.[6]

Only located well below the innocuous "See my results" survey button, in tiny, light grey-colored fine print, dwarfed by the foregoing colorful survey questions and button and nearly indecipherable against the already lightly-colored background, does the website

---

[6] And critically, as discussed at length above, the information inputted by the visitor into the form has already been collected for exploitation by LMB, Quicken, and other affiliated entities even if the visitor declines to press the button (or even submit the information on the final page) – precisely as happened to Plaintiff.

make its first and only purported reference to LMB's Terms of Use (text which Quicken was tellingly forced to magnify in order to make it even somewhat legible prior to submitting it to the Court (ECF No. 29-6 at 18)). Critically, even that belated reference to the Terms of Use is invisible to the visitor when the page is presented to the visitor on a mobile device, as it was presented to Plaintiff when she navigated to the page in October 2018 (*see* ECF No. 29-6 at 3 (referring to "mobile" device)); *see also* ECF No. 29-7 at 3 (same for November 2018)).  Rather, the visitor would need to scroll down, below the giant "See my results button," to even notice the disclosure language.

And even that hidden reference to the "Terms of Use" in that invisible disclosure language comes as just three words (words 111-113 to be precise) buried in the middle of a rambling, several-hundred-word diatribe, addressing a hodgepodge of topics bearing no relation to the subject of the survey or the "results" to be "seen" if the button is clicked. Indeed, rather than addressing any of the important provisions of the Terms of Use – such as those pertaining to arbitration, waivers of jury trials, or the like – this block of gibberish instead provides the visitor with disclosures concerning a list of out-of-left-field topics ranging from service matching tools to home improvement services to consumer credit reports to the national Do Not Call Registry, and so on.

Such disclosures, and the way in which they are presented, are offensive to any consumer's reasonable expectation of due process and fair play. For one thing, they are invisible unless visitors ferret them out (by scrolling down), rendering them incapable of clearly and conspicuously communicating anything to Plaintiff or any other visitor, as a matter of law. *E.g., Cullinane v. Uber Technoogies, Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) (inadequate notice where "the presence of other terms on the same screen with a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's capability to grab the user's attention," and where "text used to notify potential users," at "bottom of the screen," had no "distinguishable feature that would set it apart from all the other terms surrounding it"); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *2 (N.D. Cal.) (finding no assent to terms where, like here, reference to terms of use "never appear[ed] in the text, sidebar, or at the top of the webpage prior to" user clicking button); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 293 (2d Cir. 2019).

PLAINTIFF AMANDA HILL'S OPPOSITION TO
DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION

The screenshot from LowerMyBills.com is just as deficient – far too little, far too late. *See Sgouros*, 817 F.3d at 1036 (clicking button cannot suffice where notice of terms is interspersed with text that "distracted" website visitors "by informing [them] that clicking served a particular purpose unrelated to the" terms). As then-Judge Sotomayor put it, "there is no reason to assume that viewers will scroll through to subsequent" text simply because it's there. *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 32 (2d Cir. 2002).

The Ninth Circuit and the rest of the federal judiciary is in near uniform agreement that such "browsewrap" configurations fail to provide adequate notice of contractual terms and are thus incapable of establishing mutual assent to such terms, as a matter of law.[7] *See Nguyen*, 763 F.3d at 1177-78. Even "a consumer's clicking on a . . . button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the . . . button would signify assent to those terms." *Specht*, 306 F.3d at 29-30. The layouts of LMB's pages fall far short of providing the notice required to establish assent. The Motion should be denied.[8]

**B. Even If an Agreement to Arbitrate Existed Between Plaintiff and LMB, it Could Not Be Enforced by Non-Signatories Like Quicken**

Even assuming Quicken were able to demonstrate Plaintiff's assent to the Terms of Use, LMB's Terms of Use are not enforceable by non-signatories like Quicken.

_____

[7] Quicken's motion implies LMB's screenshots reflect a "clickwrap" process. (ECF No. 29-1 at 9-10. Not so. Unlike the LMB configuration, a clickwrap agreement requires users to "click an 'I agree' box after being presented with a list of terms and conditions of use." *Nicosia*, 834 F.3d and thus "force[s] users to 'expressly and unambiguously'" manifest assent before "being given access to the product." *Id.* (quoting *Register.com*, 356 F.3d at 429). In contrast, LMB's configuration does not force the website visitor view the terms and check an "I agree" box before being given access. Even Quicken's principal (albeit largely unpersuasive) authority, *Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW, ECF No. 43 (C.D. Cal. Oct. 5, 2015), contradicts Quicken and instead accurately describes LMB's intake pages as "browsewrap," not clickwrap.

[8] Unlike here, in Quicken's cited cases the contractual significance of the buttons a user would click was plain from the text of the button itself. *Compare Mohamed v. Uber Technologies, Inc.*, 109 F. Supp. 3d 1185, 1191-92 (N.D. Cal.) (button labeled "Yes, I agree"); *Fteja v. Facebook*, 841 F. Supp. 2d 829, 825 (S.D.N.Y. 2012); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *1 (S.D. Cal. 2014), *with Savetsky v. Pre-Paid Legal Services, Inc.*, 2015 WL 604767, at *4 (N.D. Cal. 2015) ("More Plan Details" did not indicate assent to website terms and conditions); *Motley v. Contextlogic, Inc.*, 2018 WL 5906079, at *2 (N.D. Cal. 2018) ("Click here for more details" did not indicate assent to mobile app terms of service).

Nearly always, "only signatories to an arbitration agreement" may enforce it. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013). Quicken concedes it is not a signatory yet invokes two exceedingly narrow non-signatory exceptions: (1) equitable estoppel; and (2) third-party beneficiary. Neither is even remotely applicable here.

### 1. Equitable Estoppel Does Not Apply

Equitable estoppel "in this context is narrowly confined." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013). It could only apply if Plaintiff's claims were either: (1) directly founded on LMB's Terms of Use; or (2) alleged interdependent misconduct by Quicken and a signatory that was directly founded on LMB's Terms of Use. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (adopting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009)). Plaintiff alleges only statutory TCPA claims that have nothing to do with any term or obligation under LMB's Terms of Use. Nor does Plaintiff allege any interdependent misconduct whatsoever, let alone by Quicken and a signatory or founded on any term or obligation under LMB's Terms of Use. Because Plaintiff's TCPA claims exists wholly apart from LMB's Terms of Use, equitable estoppel cannot apply. *Kramer*, 705 F.3d at 1132; *Murphy*, 724 F.3d at 1231.

Quicken acknowledges as much yet argues Plaintiff's non-contract, statutory TCPA claims are "intimately founded in and intertwined with" LMB's Terms of Use because the TCPA affords an affirmative defense of consent that Quicken intends to assert based on LMB's Terms of Use. ECF No. 29-1 at 14-15. The Ninth Circuit has rejected this very argument. *Rahmany v. T-Mobile USA Inc.*, 717 Fed. Appx. 752, 753 (9th Cir. 2018) (holding equitable estoppel cannot apply to TCPA claims even where defendant's affirmative defense of consent would turn on purported contract).

Nor can Quicken's vague appeal to "equity" warrant estoppel. *See* ECF No. 29-1 at 15. As the Ninth Circuit explained in *Murphy*, "[e]ven if [a Defendant] is correct that Plaintiffs' claims on some abstract level require the existence of the [contract], the law is clear that this is not enough for equitable estoppel." 724 F.3d at 1230. Always, the "*sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause." *In re Henson*, 869 F.3d 1052, 1061 (9th Cir. 2017). Plaintiff's TCPA

21

claims do not depend on LMB's Terms of Use, at all. *Cf.* ECF No. 29-1 at 15. Thus, equitable estoppel does not apply here.

## 2. Quicken Has No Third-Party Beneficiary Rights

Nor is Quicken an intended third-party beneficiary simply because it might benefit as part of the "LMB Provider Network." *Cf.* ECF No. 29-1 at 12-14. As the Ninth Circuit and California courts have repeatedly admonished, this sort of "indirect reference to a third party does not make the third party a beneficiary of the [contract]." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). Nor does the "mere fact that a contract results in benefits to a third party [] render that party a third-party beneficiary." *Murphy*, 724 F.3d at 1234; *Matthau v. Super.* Ct., 151 Cal. App. 4th 593, 602 (2007). Rather, to qualify as an intended third-party beneficiary, a non-signatory must prove that each party to an agreement has "expressly intended that the third party would benefit," and "that the parties intend[ed] that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Rajagopalan*, 718 F.3d at 847.

Here, Quicken offers no evidence that any parties to the LMB Terms of Use expressly intended Quicken to benefit from it, no evidence that Plaintiff intended so, no evidence that Quicken assumed any direct obligations to Plaintiff, LMB, or anyone else under LMB Terms of Use, and certainly no evidence that Plaintiff assumed any "direct obligation" to Quicken at the time of she purportedly entered the contract with LMB. *See Rajagopalan*, 718 F.3d 844; *Britton v. Co-Op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993). To the contrary, LMB's Term of Use specifically exclude third-party mortgage lenders like Quicken from their scope. In the section titled "Dealings with Third Parties," LMB's Terms of Use expressly carve Quicken out, stating any "dealings with any third parties as a result of your visit and participation in the Service, including . . . with mortgage brokers or lenders . . . is solely between [the user] and such third party." (ECF No. 29-8 at 7.) Quicken is not an intended beneficiary where, as here, the "plain language of the [agreement] explicitly and unambiguously relinquishes all third-party rights." *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010). At the very least, the ambiguity created

by this carve out "militates against concluding that [Quicken] is a third-party beneficiary." *Murphy*, 724 F.3d at 1234.[9]

Quicken cannot enforce the agreement, and the Motion should be denied.

### C. The Arbitration Agreement is Unconscionable

Finally, even if Quicken had proved both Plaintiff's assent and some legitimate ground for non-signatory enforcement (Quicken has done neither), the agreement to arbitrate in LMB's Terms of Use would still be unenforceable because it is permeated with procedural and substantive unconscionability.

"Under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) ("core concern" is "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.").

Procedural unconscionability "focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate." *Pokorny*, 601 F.3d at 996. It "requires *either* oppression or surprise." *Carbajal*, 245 Cal. App. 4th at 243. Substantive unconscionability focuses on whether the terms of the agreement create an "unfairly one-sided" result. *See Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1071–72 (Cal. 2003). While both procedural and substantive unconscionability "are required, 'they need not be present to the same degree.'" *Colvin v. NASDAQ OMX Group, Inc.,* 2015 WL 6735292, at *3 (N.D. Cal. 2015) (quoting *Pokorny*, 601 F.3d at 996). "Instead, a sliding scale is applied, such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa.'" *Id.*

LMB's arbitration clause is egregious on both counts. Procedurally, it is a contract of adhesion against an individual consumer with no opportunity to negotiate; the contract

---

[9] Quicken's own online terms confirm the same, stating explicitly that "Quicken loans is *not a party to any agreement that [users] may make with an affiliate* [such as LMB] . . . the affiliate is solely responsible for its services to [the users]." (*See* **Exhibit D** to the Hedin Decl. (screenshot of Quickenloans.com "Terms of Use" webpage as of May 9, 2019).)

was drafted solely by LMB, a large, well-funded corporate entity with superior bargaining power, and imposed take-it-or-leave-it via inconspicuous websites designed to distract consumer from its terms. Worse, it specifically targets financially distressed consumers desperate for debt relief, precisely to generate more vulnerable leads ripe for exploitation by Quicken and other predatory subprime lenders.  These oppressive circumstances, even without surprise, establish procedural unconscionability. *See Pokorny*, 601 F.3d at 996 ("A contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.").[10]  Still, surprise is also present and "multipl[ies] the degree of procedural unconscionability": LMB failed to even "attach the arbitration rules" to its Terms of Use and thereby "denied the [Plaintiff] 'a fair opportunity to review the full nature and extent of the non-binding conciliation and binding arbitration processes to which [she] would be bound.'" *Vargas*, 2016 WL 946112, at *10 (quoting *Pokorny*, 601 F.3d at 996–97).[11]

The agreement to arbitrate is also substantively unconscionable. First, LMB (and Quicken by extension) would provide Plaintiff no consideration in exchange for entering into the agreement to arbitrate; although the agreement to arbitrate would require Plaintiff to arbitrate any claims she has against LMB, it would not to require LMB (or any other entity otherwise able to enforce the agreement) to arbitrate any claims that it has against Plaintiff (*see* ECF No. 29-8 at 3 (agreement to arbitrate, stating in pertinent part that "YOU UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, . . . SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION AT A LOCATION DETERMINED BY THE ARBITRATOR.")).  *See Armendariz v. Found'n Healthy Psychcare Servs. Inc.*, 24 Cal. 4th 83, 120 (2000) (lack of mutual consideration for arbitration provision indicative of

---

[10] *See also, Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007) ("reject[ing] notion that the existence of 'market alternatives' bars a finding of procedural unconscionability"); *Higgins v. Superior Court,* 140 Cal. App. 4th 1238, 1252 (2006) (unsophistication of party supports procedural unconscionability).

[11] *See also, Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010) ("failure to provide a copy of the arbitration rules" exacerbates procedural unconscionability); *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406 (2003) (failure to include rules is procedurally unconscionable, for it would give reasonable consumer "a nasty shock").

24

unconscionability). Moreover, Plaintiff is afforded no means to choose, much less contest the "neutrality" of, the pool of arbitrators. *See Moreno,* 311 P.3d at 207 ("an adhesive agreement that gives the [defendant] the right to choose a biased arbitrator is unconscionable."); *Newton v. American Debt Services, Inc.*, 549 Fed. Appx. 692, 694 (9th Cir. 2013) (unconscionable to "reserve selection of arbitrator"). Yet Plaintiff is forced to both indemnify LMB for any "attorneys' fees" and preemptively release any potential liabilities, obligations, legal fees, or costs owed by LMB. *See Newton*, 549 Fed. Appx. at 694 (unconscionable to "limit damages otherwise available" or "not permit a full recovery"). This creates the sort of one-sided "loser pays" consequence that the Ninth Circuit and California courts have held unconscionable. *See Pokorny,* 601 F.3d at 1004 (similar fee-shifting provisions are unconscionable) *Capili*, 116 F. Supp. 3d at 1008 (same).

The agreement unfairly affords LMB the right to modify the agreement to arbitrate in its sole discretion, "without notice" to Plaintiff, *see Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir. 2003) (under California law, "unilateral power to terminate or modify . . . is substantively unconscionable"), and also purports to release all of Plaintiff's claims, bar Plaintiff from recovering any damages, and shorten the limitations periods for any claims she is able to bring. ECF No. 29-8 at 5-8 ("Release," "Limitation of Liability," and "Statute of Limitations"). Each of these provisions is plainly unconscionable under California law.[12]

Because LMB's arbitration agreement is permeated by unconscionable terms, it is unenforceable under California law and the Motion should be denied. *See Ingle*, 328 F.3d at 1180; *Armendariz*, 24 Cal. 4th at 124 (more than one unconscionable provision renders agreement "permeated by an unlawful purpose" such that it cannot be severed).[13]

## CONCLUSION

---

[12] *See, e.g.*, *Newton*, 549 Fed. App'x. at 694 (unconscionable to limit damages); *Circuit City Stores, Inc. v. Adams*, 279 F.3d at 894 (same); *Davis*, 485 F.3d at 1076-77 (unconscionable to shorten statute of limitations).

[13] Since Quicken has failed to carry its burden of proving the existence of an enforceable agreement to arbitrate, this proceeding is not "referable to arbitration" and thus no stay or dismissal pending arbitration is warranted. *See* 9 U.S.C. § 3. To the extent the Court finds that an issue of fact exists as to whether Quicken has met its burden to demonstrate the existence of a contract to arbitrate, Plaintiff is entitled to and requests discovery and trial by jury. *See* 9 U.S.C. § 4.

For the foregoing reasons, the Motion should be denied.

PLAINTIFF AMANDA HILL'S OPPOSITION TO
DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION

Dated: May 9, 2019

Respectfully submitted,

**HEDIN HALL LLP**

By: /s/ Frank S. Hedin
       Frank S. Hedin

Frank S. Hedin (SBN 291289)
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-mail: fhedin@hedinhall.com

**HEDIN HALL LLP**

David W. Hall (SBN 274921)
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
E-mail: dhall@hedinhall.com

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Counsel for Plaintiffs and Putative Classes*

PLAINTIFF'S OPPOSITION TO
DEFENDANT QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION