BROOKS R. BROWN (SBN 250724)
BBrown@goodwinlaw.com
W. KYLE TAYMAN (pro hac vice)
KTayman@goodwinlaw.com
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC  20001
Tel.: +1 202 346 4000
Fax.: +1 202 346 4444

LAURA A. STOLL (SBN 255023)
LStoll@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

Attorneys for Defendant:
QUICKEN LOANS INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| AMANDA HILL; and GAYLE HYDE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | Case No. 5:19-cv-00163-FMO-SP<br>**REPLY IN SUPPORT OF QUICKEN LOAN INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Date:       June 6, 2019<br>Time:       10:00 a.m.<br>Courtroom:  6D<br>Judge:      Hon. Fernando M. Olguin<br>            350 W. 1st Street, 6th Floor, Los Angeles, CA  90012<br><br>Filed concurrently with:<br>  1. Supplemental Declaration of Mitchell Viner |

1

# **Table of Contents**

2

**Page**

3

INTRODUCTION ...................................................................................... 1

4

ARGUMENT ...........................................................................................5

5

I.      Quicken Loans Did Not Waive Its Right to Arbitrate. ................................5

6

II.     Hill Agreed to the Terms of Use and Its Arbitration Provision. ...................9

7

III.    The Terms of Use Were Clear and Conspicuous. ...........................................13

8

IV.    The Arbitration Agreement Is Not Unconscionable. ....................................17

9

        A.      The Arbitration Agreement is Not Procedurally Unconscionable......17

10

        B.      The Arbitration Agreement is Not Substantively
                 Unconscionable. ...........................................................................19

11

12

V.      Quicken Loans Can Enforce the Arbitration Agreement.............................22

13

CONCLUSION...........................................................................................25

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...................................................................... 4

*Balsam v. Tucows Inc.*,
  627 F.3d 1158 (9th Cir. 2010) ..................................................... 23

*Bridge Fund Capital Corp. v. Fastbacks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010) ....................................................... 17

*Conde v. Open Door Mktg., LLC*,
  No. 15-cv-04080-KAW, 2017 WL 5172271
  (N.D. Cal. Nov. 8, 2017) ................................................................ 7

*Eshagh v. Terminix Intern. Co. L.P.*,
  No. 1:11-cv-0222 AWI DLB, 2012 WL 1669416
  (E.D. Cal. May 11, 2012) ............................................................... 6

*Fisher v. A.G. Becker Paribas Inc.*,
  791 F.2d 691 (9th Cir. 1986) ......................................................... 5

*Fuchs v. State Farm Gen. Ins. Co.*,
  No. CV-16-01844-BRO-GJS, 2016 WL 11504212
  (C.D. Cal. Nov. 14, 2016) .......................................................... 2, 6

*Gifford v. Travelers Protective Ass'n*,
  153 F.2d 209 (9th Cir. 1946) ....................................................... 21

*Graf v. Match.com, LLC*,
  No. CV 15-3911 PA, 2015 WL 4263957
  (C.D. Cal. July 10, 2015) .................................................. 3, 15, 16

*Hansen v. United States*,
  7 F.3d 137 (9th Cir. 1993) ........................................................... 11

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) ....................................................... 13

*Mangahas v. Barclays Bank Delaware*,
    No. SACV 16-00093 JVS (JCGx), 2016 WL 11002179
    (C.D. Cal. May 9, 2016) ................................................................ 11, 13

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ..................................................... 5, 7, 8

*Messina v. North Cent. Distrib., Inc.*,
    821 F.3d 1047 (8th Cir. 2016) ............................................................ 8

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ......................................................... 15, 19

*Mohamed v. Uber Techs., Inc.*,
    No. C-14-5200, 2015 WL 3749716 (N.D. Cal. June 9, 2015) ...... 16, 17

*Moreno v. Banamex USA*,
    No. CV 14-3049 PSG, 2014 WL 12534772
    (C.D. Cal. June 20, 2014) ................................................................ 20

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) .......................................................... 22

*Nasca v. Unknown Party*,
    No. CV-17-02861, 2018 WL 1210901 (D. Ariz. Mar. 8, 2018) ........ 6, 8

*On v. Stephen Vannucci, M.D., Inc.*,
    No. 2:14-cv-02714-TLNCMK, 2018 WL 489157
    (E.D. Cal. Jan. 19, 2018) ................................................................... 6

*Ouevedo v. Macy's, Inc.*,
    798 F. Supp. 2d 1122 (C.D. Cal. 2011) ............................................. 9

*Pickett v. LMB Mortg. Servs., Inc., d/b/a LowerMyBills.com*,
    No. 2:18-cv-09946-PA-SK, ECF No. 12 (C.D. Cal. Dec. 17, 2018) ............ 11, 23

*Rahmany v. T-Mobile USA Inc.*,
    No. 16-1416 (Jan. 5, 2017) .............................................................. 24

*Rajagopalan v. NoteWorld, LLC*,
    718 F.3d 844 (9th Cir. 2013) ............................................................ 22

*Richards v. Ernst & Young, LLP*,
    744 F.3d 1072 (9th Cir. 2013) ............................................................ 8

iii

*Rodriguez v. Experian Servs. Corp.*,
    No. CV 15–3553–R, 2015 WL 12656919 (C.D. Cal. Oct. 5, 2015)............*passim*

*Rodriguez v. Shen Zhen New World I LLC*,
    No. CV 13–02959–RSWL, 2014 WL 908464
    (C.D. Cal. Mar. 6, 2014)......................................................................... 8

*Schaffer v. Litton Loan Servicing, LP*,
    No. CV 05–07673–MMM, 2008 WL 9758641
    (C.D. Cal. July 21, 2008)....................................................................... 12

*Soltani v. W. & S. Life Ins. Co.*,
    258 F.3d 1038 (9th Cir. 2001) .............................................................. 22

*Sonic Auto., Inc. v. Younis*,
    No. CV 15-00717-RGK, 2015 WL 12656915
    (C.D. Cal. Oct. 19, 2015)........................................................................ 5

*Stover-Davis v. Aetna Life Ins. Co.*,
    No. 1:15-cv-1938-BAM, 2016 WL 2756848
    (E.D. Cal. May 12, 2016) ...................................................................... 13

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011).................................................. 16

*Thomas v. Sprint Sols., Inc.*,
    No. C08–5119 THE, 2010 WL 1263189 (N.D. Cal. Mar. 30, 2010).................. 20

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. Jun. 25, 2014) ............................... 15, 16

*Tucker v. Quicken Loans Inc.*,
    No 2:19-cv-00017-DJH, ECF No. 17 (D. Ariz. Feb. 28, 2019)........................ 11

*United States v. Bennett*,
    363 F.3d 497 (9th Cir. 2004) ................................................................ 13

*Walker v. S.W.I.F.T. SCRL*,
    517 F. Supp. 2d 801 (E.D. Va. 2007)................................................... 11

*Williams v. Cigna Fin. Advisors, Inc.*,
    56 F.3d 656 (5th Cir. 1995) ................................................................ 6, 7

*Willick v. Napoli Bern Ripka & Assocs., LLP*,
    No. CV 15-00652-AB (EX), 2015 WL 12765469
    (C.D. Cal. Aug. 20, 2015) ............................................................................. 6

*Wishner v. Wells Fargo Bank, N.A.*,
    No. CV-16-2832-MWF-SKX, 2016 WL 10988765
    (C.D. Cal. Sept. 28, 2016) .......................................................................... 18

**California Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
    66 Cal. App. 4th 1199 (1998) ..................................................................... 21

*Casas v. Carmax Auto Superstores Cal. LLC*,
    224 Cal. App. 4th 1233 (2014) ................................................................... 21

*Gatton v. T-Mobile USA Inc.*,
    152 Cal. App. 4th 571 (2007) ..................................................................... 20

*Kavruck v. Blue Cross of Cal.*,
    108 Cal. App. 4th 773 (2003) ..................................................................... 22

*Matthau v. Super. Ct.*,
    151 Cal. App. 4th 593 (2007) ..................................................................... 22

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ............................................................................... 20

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ............................................................................... 20

*Serpa v. Cal Surety Investigations, Inc.*,
    215 Cal. App. 4th 695 (2013) ..................................................................... 21

*Wayne v. Staples, Inc.*,
    135 Cal. App. 4th 466 (2006) ..................................................................... 18

*William L. Lyon & Assoc. Inc. v. Super. Ct.*,
    204 Cal. App. 4th 1294 (2012) ................................................................... 22

**Federal Statutes**

28 U.S.C. § 1746.................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26................................................................................7

**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Quicken Loans Inc. ("Quicken Loans") submits this Reply in support of its Motion to Compel Arbitration (Dkt. 29).   As demonstrated below, the Motion should be granted and none of Plaintiff Hill's myriad opposition arguments compel any different conclusion.

## INTRODUCTION

On October 11, 2018, Plaintiff Amanda Hill ("Hill") visited YourVASurvey.Info, a website powered by LMB Mortgage Services, Inc. d/b/a/ LowerMyBills.com ("LMB"), provided information to receive mortgage loan refinance information, and clicked on a button to manifest her agreement to the LMB Terms of Use, which included a binding arbitration agreement.   Hill's agreement to the Terms of Use was clearly disclosed in language placed immediately below the button she clicked, and the Terms of Use were hyperlinked and set off from the grey surrounding text in bold, underline, and blue font.   One month later, on November 12, 2018, Hill visited LowerMyBills.com and assented to the same Terms of Use and the same arbitration agreement.   Hill admits that she voluntarily visited and provided some information about herself and mortgage needs on both websites.   In an effort to avoid arbitration, however, Hill now contends that she did not provide her contact information or click the submission button to confirm her agreement to LMB's Terms of Use during her visits.   But the record evidence belies Hill's self-serving (and implausible) contention.   That evidence demonstrates that LMB *only* collects and provides consumer information to Quicken Loans if the consumer clicks the button to submit his or her information to LMB and confirm agreement to LMB's Terms of Use.   As a result, Hill's information would not have been provided to Quicken Loans by LMB if, as she alleges, she had not provided it and clicked the submission button on LMB's websites.   Supplemental Declaration of Mitchell Viner (Viner Supp. Decl.) ¶ 4.

1

Beyond this, Hill otherwise makes a series of strawman arguments to try and avoid application of the arbitration agreement. Courts in this Circuit and elsewhere have repeatedly rejected those arguments and this Court should do the same here.

<u>First</u>, there has been no waiver of Quicken Loans' right to compel arbitration. Waiver of the right to arbitrate is disfavored, and Hill has not satisfied the heavy burden of proof placed upon the party opposing arbitration based upon waiver. Hill failed to disclose her visits to YourVASurvey.Info and LowerMyBills.com (and her agreement to the LMB Terms of Use) in either of her complaints in this action. Quicken Loans still acted diligently and promptly, filing its motion to compel on the same day it moved to dismiss Hill's barebones first amended complaint. Hill has suffered no prejudice as a result. No discovery has taken place, and the Court has not issued any rulings on the merits. This Court has held that a motion to compel arbitration that is brought a mere four months after a lawsuit is improperly filed does not waive the right to arbitration. *Fuchs v. State Farm Gen. Ins. Co.*, No. CV-16-01844-BRO-GJS, 2016 WL 11504212, at *9–10 (C.D. Cal. Nov. 14, 2016). Here, Quicken Loans moved to compel arbitration in far less time and before any substantive proceedings. Under these circumstances, there has been no waiver.

<u>Second</u>, Hill agreed to the LMB Terms of Use (including the arbitration provision) when she submitted her information on the LMB-associated websites in October and November of 2018. Hill admits her visits to these websites, and admits that she entered some information about her home and her mortgage loan during them. But she attempts to avoid the arbitration agreement by denying, in a self-serving declaration, that she submitted any information or agreed to the LMB Terms of Use during her website visits. Specifically, she claims that she did not enter her contact information and did not click the button to submit her information and agree to the Terms of Use on either occasion. According to Hill, LMB must have somehow "surreptitiously extracted" her telephone number, property address, *and* email address from other sources, then matched that information up with the non-

identifying information that Hill provided during her visits, and communicated all of that information to Quicken Loans that same day.  Opp. at 7.  This self-serving and strained theory is belied by LMB's business records, LMB's testimony, and common sense.  Declaration of Mitchell Viner Ex. 2–3 (Dkt. 29-5) (Viner Decl.).  The business records and testimony confirm, among other things, that (a) the information LMB provided to Quicken Loans about Hill was obtained from her during her admitted visits to YourVASurvey.Info and LowerMyBills.com, (b) LMB would not have provided Hill's information to Quicken Loans unless Hill first clicked the button to submit that information and confirm her agreement to the LMB Terms of Use, (c) LMB does not harvest or match data as Hill speculates, and (d) the only way LMB would have obtained Hill's contact information and provided it to Quicken Loans is if she (or someone acting or purporting to act under her direction or on her behalf) entered that information and clicked the button to submit that information and agree to the LMB Terms of Use, including the agreement to arbitrate with Quicken Loans.  Viner Supp. Decl. ¶¶ 3–5.

Third, the LMB Terms of Use, including the arbitration provision, were clear and conspicuous and placed Hill on adequate notice.  There was language immediately below the submission button that Hill clicked, which clearly informed her that, by clicking the button, she was agreeing to the LMB Terms of Use.  The arbitration provision was also clearly disclosed in just the second paragraph of the LMB Terms of Use, in all capital letters.  These types of agreements with such clear disclosures are routinely upheld by courts.  *See Graf v. Match.com, LLC*, No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015).  In fact, this Court has already upheld LMB's Terms of Use and arbitration agreement as clear and conspicuous when disclosed in a nearly identical manner with nearly identical language as here.  *See Rodriguez v. Experian Servs. Corp.*, No. CV 15–3553–R, 2015 WL 12656919, at *3 (C.D. Cal. Oct. 5, 2015).

3

Fourth, the arbitration agreement is neither procedurally nor substantively unconscionable.  That the LMB Terms of Use are a form agreement rather than a negotiated contract does not, standing alone, support a finding of procedural unconscionability.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 1745 (2011) (holding that contracts of adhesion are a societal reality and therefore not unenforceable).  This is particularly true where, as here, Hill had myriad other options to identify and locate potential refinance lenders.  These other options provided Hill with a meaningful choice, and she chose to visit and use LMB's websites and agree to the LMB Terms of Use in the process.  Nor can Hill credibly contend unfair surprise: the arbitration agreement is contained in a separate numbered paragraph near the beginning of the LMB Terms of Use, and it is set off with a bold heading and presented in all capital letters.  Viner Decl. Ex. 3 at 34.  To access the full text of the Terms of Use, including the arbitration agreement, Hill simply had to click the link to "Terms of Use," which was contained in the acknowledgement and disclosure immediately below the submission button which Hill clicked to submit her information and confirm her agreement to the LMB Terms of Use.   Hill also cannot meet her burden of proving substantive unconscionability, because she received significant and meaningful consideration as part of her agreement with LMB (*e.g.*, a referral to Quicken Loans) and an equal bilateral exchange is not required to avoid a substantive unconscionability finding.  Here again, this Court has already upheld this agreement, and has already rejected the same unconscionability arguments as Hill raises here.  *Rodriguez*, 2015 WL 12656919, at *2–3.

Finally, Quicken Loans is entitled to enforce the arbitration agreement because it is undisputed that the company falls within the express terms of the arbitration agreement in the LMB Terms of Use.  Quicken Loans is an affiliate of LMB, and Hill expressly agreed to arbitrate all claims against LMB *and its affiliates and related companies*.  Moreover, Quicken Loans is expressly identified in the

4

LMB Terms of Use as a party that may contact Hill in response to a mortgage loan inquiry.  Further, Hill is estopped from denying application of the arbitration agreement because her claim that she did not adequately consent to being contacted by Quicken Loans is inextricably intertwined with the LMB Terms of Use in which she gave her consent to the challenged contact.

## ARGUMENT

### I.   QUICKEN LOANS DID NOT WAIVE ITS RIGHT TO ARBITRATE.

Quicken Loans did not waive its right to arbitrate.  "Because waiver of the right to arbitrate is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof."  *Martin v. Yasuda*, 829 F.3d 1118, 1126–27 (9th Cir. 2016).  To sustain that burden, Hill must establish that Quicken Loans (1) knew of the right to compel arbitration; (2) acted inconsistently with that right; and (3) prejudiced Hill by waiting to pursue arbitration.  *See Martin*, 829 F.3d at 1124; *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *see also Sonic Auto., Inc. v. Younis*, No. CV 15-00717-RGK (AGRx), 2015 WL 12656915, at *5 (C.D. Cal. Oct. 19, 2015) (quoting *Gloster v. Sonic Auto., Inc.*, 226 Cal. Rptr. 3d 648, 656 (Ct. App. 2014) ("Ordinarily, a delay is found unreasonable only when it is combined with the attempt by the party asserting a right to arbitrate to obtain an advantageous litigation position during the delay.").  Hill has not established any (let alone all) of these required elements of waiver.

Contrary to Hill's *ipse dixit* (Opp. at 12–13), Quicken Loans has not waived its rights by litigating this case for "months" or taking any action inconsistent with its right to arbitrate.  Hill filed (but did not serve) her initial complaint on January 28, 2019 (Dkt. 1), and filed an amended complaint on April 1, 2019 (Dkt. 20).  Hill did not disclose in either of her complaints that she visited YourVASurvey.Info or LowerMyBills.com.  Nevertheless, Quicken Loans acted promptly and diligently in

investigating Hill's claims and identifying LMB's connections to them.[1]  Quicken Loans then filed its Motion to Compel Arbitration on April 15, 2019—less than four months after the case was filed and just 28 days after its response to Hill's original complaint was due and on the *same day* that it moved to dismiss Hill's first amended complaint.  This record fails to establish waiver.  *See Eshagh v. Terminix Intern. Co. L.P.*, No. 1:11-cv-0222 AWI DLB, 2012 WL 1669416, at *4 (E.D. Cal. May 11, 2012) ("The Ninth Circuit has rejected the argument that the mere filing of a motion to dismiss is sufficient to waive the right to arbitrate.").  There have been no substantive proceedings in this case during the four-month period between the filing of the lawsuit and the Motion, and Hill identifies none.  Nor was there any undue delay or actions taken inconsistent with Quicken Loans' right to arbitrate during the same period.  *See, e.g.*, *On v. Stephen Vannucci, M.D., Inc*., No. 2:14-cv-02714-TLNCMK, 2018 WL 489157, at *4 (E.D. Cal. Jan. 19, 2018) (finding no waiver where case was pending for **four months** before motion to compel filed); *Nasca v. Unknown Party*, No. CV-17-02861, 2018 WL 1210901, at *3 (D. Ariz. Mar. 8, 2018) (finding no waiver where motion to compel filed after **five months**); *see also Williams v. Cigna Fin. Advisors, Inc*., 56 F.3d 656, 661 (5th Cir. 1995) (finding no waiver where motion to compel filed after **nine months**).

Further, there is no waiver where, as here, the party seeking arbitration has not engaged in active litigation.  *See Fuchs*, 2016 WL 11504212, at *9–10 (finding no waiver when motion to compel filed **seven months** after removal because defendant did not actively engage in litigation prior to motion to compel); *Willick v. Napoli Bern Ripka & Assocs., LLP*, No. CV 15-00652-AB (EX), 2015 WL 12765469, at *3 (C.D. Cal. Aug. 20, 2015) ("Defendants took no other steps that

---

[1] It is notable that, while Hill argues on one hand that Quicken Loans should have known of LMB's connection to her claims immediately after she filed her complaint because Quicken Loans and LMB are affiliated (Opp. at 12), she argues in contradiction on the other hand that Quicken Loans does not fall within the scope of the arbitration agreement that encompasses LMB's "affiliates" (Opp. at 22).

evince their willingness to actively litigate this case . . . neither Party has spent extensive time and resources conducting discovery on this case. No motions to compel have been filed, no notices of depositions were sent to Plaintiff, nor were there any depositions taken here."). This case is still in its infancy and Quicken Loans has not "actively engage[d] in litigation." Quicken Loans has not answered either of Hill's complaints (because it has filed motions to dismiss them), no written discovery has been conducted,[2] no depositions have been taken, no discovery motions have been filed, and there have been no substantive rulings on the merits. Recognizing this, Hill advances the *non sequitur* that Quicken Loans' litigation actions in *other* cases (Opp. at 12) is somehow evidence of it actively litigating *this* case. That obvious illogic aside, courts routinely refuse to find a waiver even in cases that have progressed much further in litigation. *See, e.g.*, *Williams*, 56 F.3d at 661–62 (no waiver where defendant "filed a motion to dismiss, filed a motion to stay proceedings, answered Williams' complaint, asserted a counterclaim, and exchanged Rule 26 discovery"); *Conde v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2017 WL 5172271, at *6 (N.D. Cal. Nov. 8, 2017) (no waiver where defendant filed motions to deny class certification and for judgment on the pleadings, answered the Fourth Amended Complaint, entered into a protective order, served discovery requests, responded to plaintiff's discovery requests, and participated in case management conferences and statements).

Nor do the cases cited by Hill support a finding of waiver in this pre-answer, pre-discovery stage of the case. To the contrary, they demonstrate that Hill has not (and cannot) meet the extremely high bar to establish waiver here. In *Martin v. Yasuda*, for example, the court found a waiver where the defendants litigated for *seventeen months* before moving to compel, during which time the defendant

---

[2] Hill's co-plaintiff, Gayle Hyde, served discovery *after* Quicken Loans had moved to compel arbitration. This discovery (which does not involve Hill, and which had not been served at the time Quicken Loans filed its opening brief) is thus not relevant to the resolution of this Motion.

answered the complaint, propounded and responded to written discovery, participated in court conferences, conducted depositions—and repeatedly acknowledged the existence of arbitration agreements but did not seek to compel arbitration, *even when warned by the court about the possibility of waiver*. *See* 829 F.3d at 1126. Similarly, in *Messina v. North Cent. Distrib., Inc.*, the defendant waited *eight months* to move for arbitration—and only after it had received affidavits, witness lists, and other discovery from plaintiff. 821 F.3d 1047, 1051 (8th Cir. 2016). In these cases, the defendants made a deliberate choice to forego arbitration, then subsequently reversed course in attempting to compel arbitration. That is not the case here.

A party opposing arbitration must also show that, as a result of any delay in seeking arbitration, (1) they incurred litigation costs that they would not otherwise have incurred; (2) they were forced to relitigate issues on the merits; or (3) the defendants received some advantage from litigating in court that would not have been available in arbitration. *See Martin*, 829 F.3d at 1126–27; *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 (9th Cir. 2013) (plaintiff may be prejudiced if the opposing party "gain[ed] information about the other side's cases that could not have been gained in arbitration"). Hill does not show (and cannot show) any of that here. That she may have incurred costs from filing her complaint in federal court instead of filing in arbitration (*e.g.*, the costs of preparing a complaint) is not sufficient to demonstrate prejudice; if that were the case, every plaintiff could argue waiver simply from filing a complaint in breach of a valid and enforceable arbitration agreement. Instead, a party opposing arbitration must point to additional costs incurred as a result of delay, such as the costs of engaging in discovery. *See Nasca*, 2018 WL 1210901, at *3 (plaintiff was not prejudiced merely by incurring "attorneys' fees, service fees and filing fees" associated with five months of limited litigation); *Rodriguez v. Shen Zhen New World I LLC*, No. CV 13–02959–RSWL (JCGx), 2014 WL 908464, at *4 (C.D. Cal. Mar. 6, 2014) ("[W]hile it is true that

8

Plaintiff has likely accrued significant costs in litigating this case for the months that Defendant delayed in asserting its right to compel arbitration, Plaintiff fails to indicate how this delay has prejudiced him."); *Ouevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1132 (C.D. Cal. 2011) (finding plaintiff was not prejudiced because defendant propounded no discovery requests and gained no information before moving for arbitration).

Here, Hill points to no actual prejudice because there is none. Litigation of this matter has been limited, and the only costs sustained by Hill result from her own deliberate choice to file suit in this Court rather than seek relief in arbitration. Quicken Loans has not propounded any discovery or unfairly obtained any information that would not otherwise be available in arbitration. Hill will not be forced to "relitigate" any issues on the merits in arbitration, as no substantive litigation has yet occurred, and no rulings have been issued. The only "prejudice" that Hill complains of relates to her coordinated forum-shopping efforts with two other plaintiffs. Hill argues, in essence, that the Court should allow her class claim to proceed in this Court (not in arbitration) because she convinced two other plaintiffs to dismiss their class allegations against Quicken Loans, and one of them (Hyde) joined her in this action. Opp. at 5. But her gamesmanship in securing the dismissal of *other* class actions so that she and Hyde could attempt to litigate in a preferred forum does not somehow prejudice her—it prejudices Quicken Loans in having appeared and defended those other class actions for naught given Hill's behind-the-scenes coordination to terminate those competing cases. There has been no waiver.

## II.    HILL AGREED TO THE TERMS OF USE AND ITS ARBITRATION PROVISION.

Hill admits that she voluntarily visited YourVASurvey.Info and LowerMyBills.com on two separate occasions. Declaration of Amanda Hill (Hill Decl.) ¶ 2. She also admits that she may have entered some information about her property and her mortgage during her visits. *Id.* But she claims, by way of an

undated declaration,[3] that she never entered her personal contact information and did not click the button to submit her information and agree to the arbitration provision in the LMB Terms of Use. *Id.* To account for how LMB nonetheless obtained her contact information and provided it to Quicken Loans, Hill speculates that LMB somehow used any "non-personal intake information" she provided during her visits (*id.*) to identify her property address, email address, and telephone number (all of which she maintains she did not provide to LMB) and then sent that information to Quicken Loans (Opp. at 6).

Hill's self-serving denial about clicking the submission button on the LMB websites and conjecture as to how LMB nonetheless somehow obtained her contact information and provided it to Quicken Loans are purely speculative and implausible. According to Hill, she was looking for information about mortgage refinance loans and lenders in October and November 2018, twice visited LMB-associated websites a month apart to obtain that information, voluntarily provided some information about her existing loan and herself during her visits, but then stopped short of providing her contact information and clicking the button to submit it so that she could get the refinance information she was seeking. That makes no sense. Hill then posits that, in almost real time, LMB was somehow able to use the limited information about her and her existing loan that she provided (but allegedly did not click the button to submit) to identify her property address, email address, and telephone number and provide that contact information to Quicken Loans. Hill Decl. ¶ 2. Again, that makes no sense and Hill provides no evidence to corroborate her self-serving and speculative theory.[4] So, reduced to its essence, Hill's argument

---

[3] Because it is undated, the declaration fails to comply with 28 U.S.C. § 1746 and should be ignored by the Court.

[4] Hill claims that LMB collects information that is provided but not submitted by a consumer. For instance, Hill cites to an LMB patent for technology that allegedly extracts information that is inputted but not submitted by someone. Opp. at 8. But that "patent evidence" does not advance Hill's theory. Her theory is that she never provided or submitted her contact information and that LMB nonetheless obtained her contact information from some other source(s). Hill's own theory thus has

1    to avoid arbitration requires this Court to accept her unsupported theory that,

2    although she never provided LMB with her contact information (or, for that matter,

3    any personally identifying information), LMB somehow identified her telephone

4    number, email address, and property addresses from another source(s) by using only

5    the "non-personal intake information" she provided (but allegedly never submitted)

6    regarding her property and her mortgage. Hill Decl. ¶ 2. This Court should decline

7    to accept that strained theory because it is unsupported by anything other than Hill's

8    self-serving declaration and belied by the other record evidence. *See Mangahas v.*

9    *Barclays Bank Del.*, No. SACV 16-00093 JVS (JCGx), 2016 WL 11002179, at *3

10    (C.D. Cal. May 9, 2016) (compelling arbitration because plaintiff's self-serving

11    declaration and "varying evidence that that she either did not read, receive, or recall

12    reading or receiving the cardmember agreement" did not create genuine issue of

13    material fact); *see also Hansen v. United States*, 7 F.3d 137 (9th Cir. 1993) ("When

14    the nonmoving party relies only on its own affidavits to oppose summary judgment,

15    it cannot rely on conclusory allegations unsupported by factual data to create an

16    issue of material fact.").[5]

17        Indeed, consistent with Hill's admissions about her visits to and use of the

18    subject websites, LMB's records show that (a) Hill visited YourVASurvey.Info on

19    October 10, 2018, at 10:21:49 PM PST, and entered her name, telephone number,

20    email address, and property address (among other information), and (b) Hill visited

21    LowerMyBills.com on November 12, 2018. Viner Decl. ¶¶ 17, 19. During both

22

23    nothing to do with the "extraction" of inputted (but not submitted) contact information.

24    [5] The declarations from other individuals submitted by Hill are not relevant to the issue of whether she agreed to LMB Terms of Use—particularly as these individuals

25    voluntarily dismissed their lawsuits against Quicken Loans (Tucker) and LMB (Pickett). *Tucker v. Quicken Loans Inc.*, No 2:19-cv-00017-DJH, ECF No. 17 (D.

26    Ariz. Feb. 28, 2019); *Pickett v. LMB Mortg. Servs., Inc., d/b/a LowerMyBills.com*, No. 2:18-cv-09946-PA-SK, ECF No. 12 (C.D. Cal. Dec. 17, 2018). Anonymous

27    internet postings also cannot be credited. *See, e.g.*, *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807 (E.D. Va. 2007) (plaintiffs cannot "fill gaps in their factual

28    allegations by reference to unnamed or anonymous sources").

visits, Hill was presented with a page containing links to LMB's Terms of Use, and she clicked a button to submit the information she had entered and confirm her agreement to the Terms of Use. *Id.* As attested to by Mitch Viner, General Counsel for LMB, LMB would not have received Hill's information from YourVASurvey.Info on October 10, 2018, unless Hill had provided her information and clicked the submission button. Viner Supp. Decl. ¶ 4. LMB does not "harvest" or collect information from other sources. *Id.* Further, LMB only generates leads for its business partners or others after a consumer clicks the submission button. *Id.* ¶ 5. Thus, only after Hill clicked a button to submit her information and agree to the Terms of Use did LMB receive her information and then generate a lead, which it then sent to Quicken Loans. Viner Decl. ¶ 18. Similarly, LMB only sent a lead with Hill's information to Quicken Loans in November 2018 after Hill (or someone purporting to be Hill) clicked the submission button on LowerMyBills.com. Viner Supp. Decl. ¶ 5. And here, there is no reason to suspect anyone other than Hill clicked (twice) on that submission button because she admits she went to the YourVASurvey.Info and LowerMyBills.com websites and entered information. Hill Decl. ¶ 2.

Recognizing that Mr. Viner's testimony belies her speculative theory, Hill argues that the Court should disregard it as inadmissible hearsay and a violation of the best evidence rule (Opp. at 15, n.3). There is no basis for either objection. Mr. Viner's testimony is based on his personal knowledge of LMB's business, in his role as General Counsel, and on LMB's business records, and so is not hearsay and is admissible.[6] *See, e.g.*, *Schaffer v. Litton Loan Servicing, LP*, No. CV 05–07673–MMM (CTx), 2008 WL 9758641, at *15 (C.D. Cal. July 21, 2008) (a declarant "may properly testify to information contained in the business records so long as it

---

[6] Although Mr. Viner's initial declaration provided more than sufficient evidence, Quicken Loans also submits a supplemental declaration from Mr. Viner with this brief, which attaches information from the LMB records he reviewed. Viner Supp. Decl. Ex. 1.

is within his personal knowledge").  Further, the cases cited by Hill in support of her objections are inapposite or mischaracterized in her Opposition.  *See Loomis v. Cornish*, 836 F.3d 991 (9th Cir. 2016) (affidavit that was based entirely on third-party hearsay statements—and not personal knowledge—was inadmissible); *United States v. Bennett*, 363 F.3d 497 (9th Cir. 2004) (GPS-based testimony was not admissible under best evidence rule because it was not accompanied by "the GPS itself-or a printout or other representation of such data"); *Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-cv-1938-BAM, 2016 WL 2756848 (E.D. Cal. May 12, 2016) (granting motion to compel arbitration and overruling plaintiff's objections to form of declarations because "the focus of an objection at the [motion to compel arbitration] stage is not 'the admissibility of the evidence's form' but on the 'admissibility of its contents'" (internal citation omitted)).

Where the record evidence from LMB belies Hill's self-serving denials and speculative theories, this Court should find that Hill agreed (twice) to the Terms of Use containing the binding arbitration provision.[7]

## III.  THE TERMS OF USE WERE CLEAR AND CONSPICUOUS.

Hill also argues that, even if she clicked on the button, she still did not assent to the LMB Terms of Use because she was not on adequate notice.  That argument fails in light of the record evidence and applicable law.

The record evidence demonstrates that the Terms of Use were clear and conspicuous.  When Hill visited YourVASurvey.Info in October 2018, she was presented with the following text directly below the "See my results!" button:

---

[7]  To the extent this Court concludes that Hill's self-serving declaration creates a genuine dispute of fact (and it should not), *see Mangahas*, 2016 WL 11002179, at *3, the proper course is not to deny Quicken Loans' Motion.  Instead, this Court should set a limited period for discovery narrowly tailored to Hill's interactions with the LMB websites and the testimony in her declaration, in advance of an evidentiary hearing to resolve the issue.  A plaintiff cannot be allowed to avoid arbitration simply by categorically denying that she entered into an agreement; if that were so, every plaintiff who agreed to arbitration would be able to subsequently ignore their obligations by issuing the same self-serving denial as Hill.

13

By clicking the button above, you express your understanding and consent, electronically via E-sign, to the following:

1. To be matched with, and contacted by, up to 5 participants in the LMB Provider Network about mortgage and financial services products, and consent (not required as a condition to purchase a good/service) for us and them to contact you (including through automated or prerecorded means) via telephone at the phone number provided above, on mobile devices (including SMS and MMS), and email, even if you are on a corporate, state or national Do Not call Registry. As an alternative, you may contact us by email at customercare@coredigital.com.

2. To the LMB Lending Terms of Use, Privacy Policy, and Consent to Doing Business Electronically.

3. And that as a condition of such consent, you are providing express Written Instructions (as defined under applicable law(s)) to LMB to utilize your information in order to reference your consumer credit report for the purpose of validating your self-reported information. Matched Providers will contact you directly to discuss their financial services and products, and to gather additional information, in order to best service your request for information and products.

4. Additionally, if selected above, you consent to be matched to up to an additional 3 providers about solar services, home improvement services, and home insurance services, and consent (not required as a condition to purchase a good/service) for us and them to contact you (including through automated or prerecorded means) via telephone at the phone number provided above, on mobile devices (including SMS and MMS), and email, even if you are on a corporate, state or national Do Not call Registry. As an alternative, you may contact us by email at customercare@coredigital.com.

Viner Decl. ¶ 10 & Ex. 1 at 26. The first words below the button immediately notify the user that "[b]y clicking the button above, you express your understanding and consent, electronically via E-sign, to the following," and the second paragraph clearly states "To the LMB Terms of Use"—which are bold and underlined in bright blue text (contrasted to the surrounding grey text). *Id.* ¶ 11. If a user clicked on the hyperlink for the Terms of Use, a new window would open with the full text of the Terms of Use. *Id.* Similarly, when Hill visited LowerMyBills.com in November 2018, she was presented the same language immediately below the submission button, with the only difference being the color of the "Terms of Use" hyperlink. *Id.* ¶ 13. LMB's Terms of Use were not "buried" (Opp. at 19) anywhere; they were visibly displayed and readily accessible to anyone viewing the webpage. Further, the Terms of Use were linked on each page that Hill visited—including as Hill points out (Opp. at 18), the preceding page on which she affirmatively certified her agreement to the terms and conditions when she entered her email address.



Viner Decl. ¶ 8 & Ex. 1 at 24.

The disclosure language was clear and conspicuous, and Hill was plainly on notice of her assent to the Terms of Use.  As this Court held in *Rodriguez* when granting a motion to compel arbitration as to LMB's Terms of Use that were displayed in the same manner as here, "[t]his disclosure and acknowledgement is exactly the type of notice the Ninth Circuit in *Nguyen* required and approved of when it said that more than a conspicuous hyperlink was required."  2015 WL 12656919, at *2.  Indeed, courts within this Circuit routinely enforce internet agreements like the LMB Terms of Use.  *See Graf*, 2015 WL 4263957 at *4 ("This type of 'browsewrap' agreement commonly used to bind a website user to a website's terms of use are 'consistently enforced.'"); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *7 (N.D. Cal. Jun. 25, 2014); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017) ("The fact that clicking the register button had two functions—creation of a user account and assent to the Terms of Service—does not render Meyer's assent ambiguous.").

In *Tompkins*, the court upheld an internet agreement where the contract terms were not presented to the user, but there was a hyperlink to those terms

conspicuously presented nearby, and the user had to click a button indicating that they agreed to be bound by those hyperlinked terms. The *Tompkins* court concluded that such situations "resemble clickwrap agreements, where an offeree receives an opportunity to review terms and conditions and must affirmatively indicate assent. The fact that the [contract was] hyperlinked and not presented on the same screen does not mean that customers lacked adequate notice" of the contract terms. *Id.* at *8. Specifically, the *Tompkins* court concluded that users had adequate notice of the contract terms "because courts have long upheld contracts where 'the consumer is prompted to examine terms of sale that are located somewhere else.'" *Id.* (quoting *Fteja v. Facebook*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012); *see also Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal. 2011) (enforcing arbitration clause where "Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button"). Similarly, in *Graf*, the court upheld an agreement where, as here, the plaintiff "affirmatively agree[d] to the Terms of Use when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review." *See Graf*, 2015 WL 4263957, at *4.

The LMB Terms of use were presented clearly and conspicuously to Hill, and she had an opportunity to review them before she clicked the button manifesting her agreement, just like the plaintiffs in *Tompkins* and *Graf*. Whether she actually did so is not relevant as a matter of law. *See Mohamed v. Uber Techs., Inc.*, No. C-14-5200, 2015 WL 3749716, at *7 (N.D. Cal. June 9, 2015) (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001)) ("Whether or not the [Plaintiff] actually clicked the links or otherwise read the terms of the contracts is irrelevant: Under California law '[a] party cannot avoid the terms of a contract on the ground that he or she failed to read it before

16

1  signing.'"). Hill "had the opportunity to review the relevant terms of the

2  hyperlinked agreements, and the existence of the relevant contracts was made

3  conspicuous." *Mohamed*, 2015 WL 3749716, at *7. That is sufficient for a clear

4  and conspicuous disclosure as a matter of law.[8] *See id.*

5  ## IV.    THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE.

6  The arbitration agreement in LMB's Terms of Use is neither procedurally nor

7  substantively unconscionable. Under California law, Hill must prove both types of

8  unconscionability to invalidate a contract and avoid the arbitration agreement.

9  *Bridge Fund Capital Corp. v. Fastbacks Franchise Corp.*, 622 F.3d 996, 1004 (9th

10  Cir. 2010). She cannot do so here. The LMB Terms of Use—including the

11  arbitration agreement—have already been upheld in *Rodriguez*, with the court

12  rejecting the plaintiff's substantially similar unconscionability arguments in that

13  case. *See* 2015 WL 12656919.

14  ### A.    THE ARBITRATION AGREEMENT IS NOT PROCEDURALLY

15  UNCONSCIONABLE.

16  Hill argues that the arbitration agreement in the Terms of Use is procedurally

17  unconscionable because the Terms of Use are a contract of adhesion, and the terms

18  were a surprise to her. Hill is incorrect on both points. "In assessing procedural

19  unconscionability, the court, under California law, focuses on the factors of surprise

20  and oppression in the contracting process." *Rodriguez*, 2015 WL 12656919, at *2

21  (quoting *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010)). Oppression

22  refers to "an inequality of bargaining power [that] results in no real negotiation and

23

24  _____

    [8] Hill's discussion of the mobile site is a red herring. Opp. at 19. Hill does not even

25  assert that she visited the mobile site (as opposed to viewing the full website on her
    mobile tablet or other device) for either YourVASurvey.Info or LowerMyBills.com.

26  *See* Hill Decl. The present day screenshot taken by Attorney Hedin on his Galaxy
    device (which is only a partial screenshot as the webpage is clearly cut off at the

27  bottom) is irrelevant to the question of what *Hill* saw on the two occasions that she
    visited LMB's websites back in 2018. And, in 2018, the same disclosures and

28  Terms of Use were presented to consumers who used mobile devices to visit these
    websites. Viner Supp. Decl. ¶ 7.

an absence of meaningful choice." *Id.*  Surprise refers to "the extent to which the contract clearly discloses its terms" and "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*  No improper oppression or unfair surprise is present here.

First, the fact that LMB's Terms of Use is a form agreement does not render it procedurally unconscionable.  Adhesion contracts are not presumptively unconscionable. *See Wishner v. Wells Fargo Bank, N.A.*, No. CV-16-2832-MWF-SKX, 2016 WL 10988765, at *3 (C.D. Cal. Sept. 28, 2016) ("But there is no general rule that a form contract used by a party for many transactions is procedurally unconscionable . . . ." (internal citation omitted)).  Hill had a meaningful choice when she chose to agree to the LMB Terms of Use as part of using its mortgage refinance information services.  She had plenty of alternative options to obtain such information—*e.g.*, the yellow pages, other online sources for mortgage loan information, or mortgage loan providers. *See Rodriguez*, 2015 WL 12656919, at *2 ("[The arbitration agreement in the LMB Terms of Use] is not oppressive because Plaintiffs had plenty of alternative options to locate other debt relief providers. . . . Plaintiffs could have easily gone elsewhere for debt relief options."); *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) (there is no "oppression . . . even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices . . . .").  Hill also had the option of sending an email to LMB to be matched with refinance loan providers—without agreeing to the LMB Terms of Use.  Viner Supp. Decl. ¶ 4.  Yet with all of these other options—none of which involved agreeing to the LMB Terms of Use—Hill chose to agree to the LMB Terms of Use on two different occasions.

Second, Hill cannot credibly claim surprise.  As demonstrated above (*supra* at 14–15), the LMB Terms of Use were presented in a hyperlink located directly below the buttons Hill clicked to submit her information and agree to the Terms.

18

Viner Decl. Ex. 1 at 24–25, Ex. 2 at 30; *see Meyer*, 868 F.3d at 78 (Terms of Service, located "directly below the buttons for registration" were immediately visible to users and provided sufficient notice under California law). Had Hill clicked on the hyperlink, it would have taken her directly to the LMB Terms of Use in full. Viner Decl. ¶ 11. Hill also cannot claim to be surprised by the arbitration agreement in the Terms of Use. That provision is the second paragraph of the Terms of Use. *Id.* Ex. 3. The section heading—"**ARBITRATION**"—is in all capital letters and bolded. *Id.* Ex. 3 at 34. Moreover, the entire text of the arbitration provision is in all capital letters and, thus, is noticeably distinguishable from the surrounding text. *Id.* Another court in this district has already rejected an argument that the LMB Terms of Use are unconscionable due to surprise:

> Plaintiffs cannot claim surprise. The Terms of Use during all relevant times were between three to four pages long. It contained normal size font and all the headings were bolded. In fact, the entire arbitration provision appears in all caps in the 2012 version.

*Rodriguez*, 2015 WL 12656919, at *2. The arbitration agreement clearly provided Hill with sufficient information regarding the arbitration process to which she twice consented. There thus was no procedural unconscionability. *See Meyer*, 868 F.3d at 79 ("Once a user clicks through to the Terms of Service, the section heading ("Dispute Resolution") and the sentence waiving the user's right to a jury trial on relevant claims are both bolded.")

**B.    THE ARBITRATION AGREEMENT IS NOT SUBSTANTIVELY UNCONSCIONABLE.**

While the Court need not reach the question of substantive unconscionability—because Hill has failed to show that the arbitration agreement is procedurally unconscionable—the arbitration agreement is not substantively unconscionable either.

To begin with, because Hill had a meaningful choice in selecting LMB's free

online service over the plethora of other options to obtain mortgage loan refinance information, she "must therefore 'make a strong showing of substantive unconscionability to render the [disputed] provision[s] unenforceable.'"  *See Thomas v. Sprint Sols., Inc.*, No. C08–5119 THE, 2010 WL 1263189, at *8 (N.D. Cal. Mar. 30, 2010) (quoting *Gatton v. T-Mobile USA Inc.*, 152 Cal. App. 4th 571, 585 (2007)).  Indeed, it is Hill's burden to establish substantive unconscionability. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015) (finding no unconscionability in an arbitration provision).  And that burden is a steep one: "[T]he standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration as for any contract clause." *Id.* at 912; *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to shock the conscience.'" (citing *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1213 (1998))).  Hill has not met her burden.

First, Hill alleges that she received no consideration for entering the agreement to arbitrate because it "would require Plaintiff to arbitrate any claims she has against LMB, [but] it would not to [*sic*] require LMB (or any other entity otherwise able to enforce the agreement) to arbitrate any claims that it has against Plaintiff."  Opp. at 24.  But not every contract provision requires an equal and bilateral exchange.  The relevant inquiry is whether the contract, as a whole, involved any consideration.  *See, e.g., Moreno v. Banamex USA*, No. CV 14-3049 PSG (PLAx), 2014 WL 12534772, at *3 (C.D. Cal. June 20, 2014) (holding that employers' agreement to provide continued employment was sufficient consideration to support binding arbitration agreement).  Here, Hill received more than enough consideration in exchange for her agreement to the arbitration provision—she was matched with mortgage providers and she was provided with

20

information about mortgage finance options.  Viner Decl. Ex. 3 at 34.  Further, LMB voluntarily relinquished its right to a jury trial in the LMB Terms of Use.  *Id.*

Second, the agreement is not substantively unconscionable simply because it "affords LMB the right to modify the agreement to arbitrate in its sole discretion, 'without notice' to Plaintiff."  Opp. at 25.  California courts have repeatedly rejected that very argument.  *See Casas v. Carmax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 1233, 1237 (2014) ("Under California law, however, even a modification clause not providing for advance notice does not render an agreement illusory, because the agreement also contains an implied covenant of good faith and fair dealing."); *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1214 (1998) ("[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings."); *Serpa v. Cal Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 708 (2013) ("[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable.").  Further, the LMB Terms of Use that Hill agreed to were last updated in March 2015 and have not been modified since she agreed to them.  Viner Decl. Ex. 3 at 33; Viner Supp. Decl. ¶ 8.

Nor is the agreement substantively unconscionable because it sets a one-year limitation on when a claim may be brought.  Opp. at 25.  At the outset, that limitation does not affect Hill's claims, which she asserted just three months after agreeing to the LMB Terms of Use, so is an irrelevant diversion.  Moreover, alterations to the statute of limitations are permissible, even in adhesion contracts.  "Under California law, a contract may fix the time within which a suit may be brought, whether it be a shorter or longer period than that of the Statute."  *Gifford v. Travelers Protective Ass'n*, 153 F.2d 209, 211 (9th Cir. 1946).  That flexibility is "qualified, however, by the requirement that the period fixed is not in itself

unreasonable or it is not so unreasonable as to show imposition or undue advantage." *William L. Lyon & Assoc. Inc. v. Super. Ct.*, 204 Cal. App. 4th 1294, 1307 (2012). Here, Hill makes no argument that one year is *per se* unreasonable— nor could she. *See Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1045 (9th Cir. 2001) ("Indeed, California courts have upheld shortened limitation periods in insurance contracts, which are quintessential adhesion contracts."). The LMB Terms of Use are not unconscionable, and they must be enforced.

## V. QUICKEN LOANS CAN ENFORCE THE ARBITRATION AGREEMENT.

As set forth in the Motion (Mot. at 12–15), Quicken Loans is entitled to enforce the arbitration agreement on two independent grounds: (1) Quicken Loans falls within the express terms of the arbitration agreement in the LMB Terms of Use, and (2) Hill should be estopped from bringing her claim in court.

First, Quicken Loans is plainly covered by the express terms of the arbitration agreement in the LMB Terms of Use. That clause expressly requires Hill to arbitrate to all claims against LMB "*AND ITS PARENTS, SUBSIDIARIES, AFFILIATES, AND RELATED COMPANIES*" (and Hill does not dispute that Quicken Loans and LMB are affiliated and related companies). Viner Decl. Ex. 3 at 33. Hill's argument that only LMB is entitled to enforce the arbitration agreement would render the quoted language meaningless. *Kavruck v. Blue Cross of Cal.*, 108 Cal. App. 4th 773, 783 (2003) ("A contract may not be interpreted in a manner which would render one of its terms meaningless.").

The cases cited by Hill are inapposite. *See Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (arbitration provision was limited to disputes between "the parties" and did not include any reference to affiliates or related companies); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (arbitration agreement between signatory and its customers did not mention defendant by name or by category); *Matthau v. Super. Ct.*, 151 Cal. App. 4th 593, 602 (2007) (arbitration provision was limited to disputes between "an agent and his

22

client" and did not specify any other parties such as affiliates or related companies).

Hill also ignores each provision of the LMB Terms of Use cited in the Motion, choosing instead to build a strawman out of the (irrelevant) "Dealings with Third Parties" provision in the agreement, which states as follows:

> Your correspondence or business dealings with any third parties as a result of your visit and participation in the Service, including, but not limited to, business dealings with mortgage brokers or lenders, insurance agents or carriers, or any other terms, conditions, warranties, representations associated with such dealings, are solely between you and such third party.  You agree that LMB shall not be responsible or liable for any loss or damage of any sort incurred as the result of any such dealings or as the result of the presence of such third party on the Service.

Viner Decl. Ex. 3 at 38.  This provision does not, as Hill contends, "expressly carve Quicken [Loans] out" of the "scope" of the Terms of Use or the express affiliates language in the arbitration provision.  Rather, that section carves out *LMB* from any separate agreement between Hill and third parties (for instance, if Hill obtained a loan from one of the mortgage loan providers with whom she was matched, LMB would not be party to that loan agreement).  That section is wholly distinguishable from *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010), *see* Opp. at 22, where the contract included a specific clause stating that "[t]his Agreement shall not be construed to create any obligation by either ICANN or Registrar to any non-party to this Agreement."  *Id.*  The LMB Terms of Use contain no such provision.

Hill is also wrong when she argues she did not "assume[] any 'direct obligation' to Quicken" by agreeing to the Terms of Use.  Opp. at 22 (citing *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013).  The Terms of Use explicitly provide that "[b]y submitting your contact request for a loan product, you are consenting to be contacted by one or more Clients *which may include*

23

1    *Quicken Loans* . . . based on the information you have provided to us . . . ."  Viner

2    Decl. Ex. 3 at 34.  Put simply, Hill agreed to share her information with Quicken

3    Loans and agreed that Quicken Loans could contact her using that information.

4    Having agreed to confer those benefits upon Quicken Loans—and having agreed to

5    arbitrate her claims against LMB's affiliates, which include Quicken Loans—Hill

6    cannot now avoid her arbitration obligation.

7         Second, the principles of estoppel also compel the conclusion that Quicken

8    Loans may enforce the arbitration agreement.  Hill is incorrect that her TCPA claim

9    against Quicken Loans "[has] nothing to do with any term or obligation under

10    LMB's Terms of Use."    Opp. at 21.    Hill admits that she visited both

11    YourVASurvey.Info and LowerMyBills.com and she alleges that she began to

12    receive text messages from Quicken Loans after doing so.  Hill Decl. ¶¶ 2–3.  And,

13    as discussed above, although Hill conveniently and self-servingly denies clicking

14    any submission buttons on the websites, there is substantial evidence that Hill not

15    only input her contact information but also clicked on the buttons on each website in

16    which she agreed to the LMB Terms of Use.  *See supra* Section II.  Thus, Hill's

17    TCPA claim rests on her assertion that the consent she gave in the LMB Terms of

18    Use was not effective—a claim which must be arbitrated in light of the arbitration

19    provision contained in that agreement.    Further, and more importantly, the

20    arbitration agreement (unlike the one in *Rahmany v. T-Mobile USA Inc.*, 717 F.

21    App'x 752 (9th Cir. 2018), cited by Hill), is not limited to claims that concern the

22    agreement itself.  Rather, the Terms of Use specifically encompasses "statutory"

23    claims like Hill's TCPA's claim.  *Compare* Viner Decl. Ex. 3 at 38 *with Rahmany*,

24    No. 16-1416 (ECF No. 25) (Jan. 5, 2017).  Thus, even if Hill were correct that her

25    claim "[has] nothing to do with any term or obligation under LMB's Terms of

26    Use"—and she is not—that claim still falls squarely within the arbitration

27    agreement, as it is a dispute between Hill and an "affiliate . . . or related compan[y]"

28    of LMB.

1   Finally, Hill acknowledges that equitable estoppel is appropriate where
2   "interdependent misconduct" between a signatory and the third party seeking to
3   enforce the agreement is alleged.  Opp. at 21–22.  While Quicken Loans denies any
4   misconduct whatsoever, Hill's theory of the case, as clarified in her Opposition, is
5   that LMB and "affiliated entities" including Quicken Loans somehow conspired to
6   "scrape" or "harvest" her data. *See, e.g.*, Opp. at 2, 9, 16.  Hill's assertions therefore
7   bring this dispute well within this additional ground for equitable estoppel.

8   ## CONCLUSION

9   For the foregoing reasons, and those set forth in the Motion to Compel
10  Arbitration, Quicken Loans respectfully request that this Court grant this Motion to
11  Compel Arbitration and stay the proceedings.

12
13                                          Respectfully submitted,

14  Dated:   May 23, 2019           By:   /s/ W. Kyle Tayman
15                                         BROOKS R. BROWN
                                           *BBrown@goodwinlaw.com*
16                                         LAURA A. STOLL
                                           *LStoll@goodwinlaw.com*
17                                         W. KYLE TAYMAN (pro hac vice)
                                           *KTayman@goodwinlaw.com*
18                                         **GOODWIN PROCTER** LLP

19                                         Attorneys for Defendant:
                                           QUICKEN LOANS INC.
20
21
22
23
24
25
26
27
28