**HEDIN HALL LLP**
Frank S. Hedin (SBN 291289)
E-mail: fhedin@hedinhall.com
David W. Hall (SBN 274921)
E-mail: dhall@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMANDA HILL; and GAYLE HYDE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUICKEN LOANS INC.,<br><br>Defendant. | **Case No.:** 5:19-cv-00163-FMO-SP<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Amanda Hill ("Ms. Hill") and Gayle Hyde ("Ms. Hyde," together the "Plaintiffs"), individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters, against Defendant Quicken Loans Inc. ("Defendant" or "Quicken Loans"). Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth in this amended complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. Plaintiffs bring this action for legal and equitable remedies resulting from the illegal actions of Quicken Loans in transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiffs' cellular devices and the cellular devices of numerous other individuals across the country, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

## JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this district at to Ms. Hill because:

    a. Ms. Hill resides in this district and her claims arose in substantial part in this district;
    b. Defendant directed the text messages received by Ms. Hill into this district by transmitting the messages to a telephone number that is assigned an area code (951) corresponding to a location in this district;

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

    c. Ms. Hill received Defendant's unsolicited text messages on her cellular device while present in this district; and,

    d. Defendant does substantial business in this district and has intentionally availed itself of the laws of the State of California by conducting business in this judicial district.

4. Personal jurisdiction and venue are proper in this district as to Ms. Hyde because:

    a. There is personal jurisdiction over Defendant with regard to at least one of the named Plaintiffs, Ms. Hill, the co-Plaintiff to Ms. Hyde; and,

    b. The doctrine of pendent personal jurisdiction applies to Ms. Hyde's claims against Defendant.

## **PARTIES**

5. Ms. Hill is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is, and at all times mentioned herein was, a citizen and resident of Wildomar, California.

6. Ms. Hyde is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Minnesota.

7. Defendant Quicken Loans is a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains, and at all times mentioned herein maintained, its corporate headquarters in Detroit, Michigan.

# THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

8. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party before initiating such calls or texts using an autodialer or prerecorded voice.

9. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming texts whether they pay in advance or after the texts are used.

10. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore;

it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[1]

11. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

12. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

13. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

14. Ms. Hill is, and at all times mentioned herein was, the subscriber of the cellular telephone number (951) ***-9785 (the "9785 Number"). The 9785 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

15. For over at least the past year, continuing through the present, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS or MMS text messages to the 9785 Number without Ms. Hill's prior express written consent, an example of which is

---

[1] Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research, http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

depicted in the screenshot below, which was extracted from Ms. Hill's cellular device:



16. Ms. Hill has on several occasions attempted to put a stop to Defendant's invasive text messages by responding "STOP," to no avail. For instance, over a week before receiving the text messages depicted in the screenshot above, Ms. Hill had texted "STOP" in an attempt to end the onslaught of Defendant's digital junk mail, as shown in the screenshot below, also extracted from Ms. Hill's cellular device:



17. Despite these clear instructions to STOP, Defendant is nonetheless undeterred. Its texts to the 9785 Number persist. The TCPA was enacted to end this sort of contumacious behavior.

18. The hyperlinked URLs within the above-depicted text messages were leased or owned, and were operated and maintained, by Defendant or an agent or affiliate of Defendant.

19. When visited, the URLs in the above-depicted text messages re-direct to website(s) owned and operated by Defendant, where Defendant advertises and markets the commercial availability of its mortgage-lending and other lending goods and services, which Defendant sells for profit.

20. The source of the unsolicited text messages that Defendant transmitted to the 9785 Number was 26293, which is a telephone number leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing program.

21. Additionally, sometime prior to November 2018, Ms. Hyde went onto QuickenLoans.com to compare rates using Quick Loans' Mortgage Calculator, a free service.

22. At no time did Ms. Hyde text AMAZE to the short code 262-93, or consent to receive text messages in any other way.

23. On or about November 26, 2018, at approximately 4:34 p.m., Quicken Loans sent Ms. Hyde a marketing text message to her cellular telephone ending in "8955", from the short code 262-93. The November 26, 2018, text message read:

> Quicken Loans: Time's running out on our Biggest Deal of the Year! Lock your rate now. http://m.qloans.co/N2CRyGuU Reply HELP for help, STOP to end text

24. Ms. Hyde had received several marketing text messages identical to the one above for the past two months. Each time that Ms. Hyde received this text in the past, she responded with "Stop."

25. However, such requests went unheeded, as Ms. Hyde received another text message on November 26, 2018.

26. Having no other option, on November 26, 2018, Ms. Hyde yet again responded to the text message with "Stop".

27. Similar to Ms. Hyde's other attempts, Quicken Loans almost immediately responded with:

> QLTextAlerts: You are unsubscribed & will no longer receive messages from us. Reply HELP for help. Msg&Data Rates May Apply. 1-800-863-4332

28. Despite this clear revocation of consent (if consent had existed in the first instance) and Quicken Loans acknowledgment of the revocation, on December 4, 2018, at approximately 12:34 p.m., Quicken Loans sent Ms. Hyde another text message from its SMS short code soliciting their business.

29. The December 4, 2018, text message read as follows:

> Quicken Loans Rate Alert: Rates have dropped! See Today's Rates: http://m.qloans.co/GsaryGBE Reply HELP for help, STOP to end text

30. As Ms. Hyde had done many times before, Ms. Hyde replied in a text message with the word "STOP".

31. Because both of the Plaintiffs are alerted by her cellular devices, by auditory or visual means, whenever she receives a text message, the unsolicited text messages that Defendant transmitted to Plaintiffs' cellular device were invasive and intruded upon Plaintiffs' seclusion upon receipt. Plaintiffs

1 became distracted and aggravated as a result of receiving Defendant's unsolicited text messages.

32. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiffs' cellular telephone numbers and to the numbers of the members of the Class defined below occurred using an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

33. Defendant transmitted its text messages to the Plaintiffs' cellular telephone numbers and to the numbers of the members of the Classes defined below using an "automated telephone dialing system" because its text messages were sent from a telephone number used to message consumers *en masse*; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and to then dial such numbers, *en masse*, in an automated fashion and without human intervention.

34. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiffs and all other unnamed Class members in an automated fashion and without human intervention, with hardware and software that received and stored lists of telephone numbers to be dialed and which then dialed such numbers automatically.

35. The complained of SMS and/or MMS text messages sent by Defendant to the 9785 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the messages in order to advertise and market its mortgage-lending and other

1  lending goods and services, for the purpose of ultimately selling such goods and services to Plaintiffs and other Class members for commercial profit.

36. Neither Plaintiffs nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit Defendant to transmit text messages to the Plaintiffs' cellular telephone numbers or to any of the Class's telephone numbers using an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

37. "ATDS Class" Definition. Plaintiffs bring this civil class action on behalf of themselves individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1), (b)(2) and (b)(3). The "ATDS Class" which Plaintiffs seek to represent is comprised of and defined as follows:

> All persons within the United States who were sent any text message by Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system, within the four years prior to the filing of the Complaint through the date of trial.

38. "Failure to STOP Class" Definition. Additionally, Plaintiff brings this civil class action pursuant to Fed. R. Civ. P. 23 on behalf of herself individually and as a representative of the following class of persons (the "Failure to STOP Class") entitled to statutory damages under the federal TCPA:

> All persons within the United States who were sent any text message by Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system, after having previously responded "STOP" to one or more

such text message(s), within the four years prior to the filing of the Complaint through the date of trial.

39. The ATDS Class and Failure to STOP Class are referred to collectively herein at times as the "Classes."

40. Defendant, its employees, and agents are excluded from the Classes.

41. Plaintiffs reserve the right to modify the definition of the Classes (or add one or more subclasses) after further discovery.

42. Plaintiffs and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

43. This Class Action Complaint seeks injunctive relief and monetary damages.

44. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

45. Upon application by Plaintiffs' counsel for certification of the Classes, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

46. <u>Numerosity</u>. The number of persons within the Classes is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

47. <u>Typicality</u>. Plaintiffs were sent at least one text message from Defendant without providing their "prior express written consent" to be sent such message(s) from Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiffs are typical of the claims of the members of the Classes,

and Plaintiffs' interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiffs and all members of the Classes have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

48. <u>Adequacy</u>. As Class representative, Plaintiffs have no interests adverse to, or which conflict with, the interests of the absent members of the Classes, and is able to fairly and adequately represent and protect the interests of such a Classes. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

49. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiffs' counsel are experienced in handling complex class action claims, in particular claims brought under the TCPA and other consumer protection statutes.

50. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Classes defined above and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

   a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiffs' and Class members' cellular telephones;

b) Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised; and

d) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

51. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class

members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

52. Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

53. Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIM FOR RELIEF
**Violation of the TCPA, 47 U.S.C. § 227(b)(3) & 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the ATDS Class and**
**Failure to STOP Class Members Against Defendant)**

54. Plaintiffs incorporate by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

55. The foregoing acts and omissions constitute violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(1).

56. As a result of Defendant's violations of the TCPA, Plaintiffs and all ATDS Class and Failure to STOP Class members are entitled to, and do seek,

injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3).

57. As a result of Defendant's violations of the TCPA, Plaintiffs and all ATDS Class and Failure to STOP Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

58. Plaintiffs and the ATDS Class and Failure to STOP Class members also seek an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment in favor of themselves and the Classes as follows:

A. Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiffs and each member of the ATDS Class and Failure to STOP Class for each of Defendant's violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

B. Injunctive relief prohibiting such violations of the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

D. An award of attorneys' fees and costs to counsel for Plaintiffs and the Classes; and

E. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Classes proposed herein and any Subclasses the Court deems appropriate, finding that Plaintiffs are a proper representative of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes.

F. Any other relief the Court may deem just and proper.

# **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Classes, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: January 17, 2020          Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Jason A. Ibey
      Jason A. Ibey

Jason A. Ibey, Esq. (SBN 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Nicholas Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HEDIN HALL LLP**
Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801

**HEDIN HALL LLP**
David W. Hall (SBN 274921)
dhall@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and Putative Classes*