**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Nicholas R. Barthel, Esq. (SBN:319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HEDIN HALL LLP**
Frank S. Hedin (SBN 291289)
E-mail: fhedin@hedinhall.com
David W. Hall (SBN 274921)
E-mail: dhall@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **AMANDA HILL; and GAYLE HYDE, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**QUICKEN LOANS INC.,**<br><br>**Defendant.** | **Case No.:** 5:19-cv-00163-FMO-SP<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**Date:** March 12, 2019<br>**Time:** 10:00 am<br>**Room:** 6D<br>**Judge:** Hon. Fernando M. Olguin |

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

I.   INTRODUCTION .......................................................................... 1

II.  LEGAL STANDARD ...................................................................... 3

III. THE TEXT MESSAGES WERE SENT VIA AN AUTOMATIC
     TELEPHONE DIALING SYSTEM ................................................... 4

     A. Plaintiffs' ATDS Allegations Suffice Under Controlling
        Precedent ............................................................................ 4

     B. Plaintiffs' Detailed Factual Allegations Support A Plausible
        Inference of Use of An ATDS ................................................ 5

     C. Quicken Relies On Overruled and Out-of-Circuit ...................... 9

     D. Plaintiffs Do Not Allege Mere Labels and Conclusions ............ 12

IV.  THE COURT PROPERLY EXERCISES PERSONAL
     JURISDICTION OVER PLAINTIFF HYDE'S CLAIMS ..................... 15

     A. In A Class Action, Personal Jurisdiction Over One Named
        Plaintiff Is Sufficient ......................................................... 15

     B. Defendant's Reliance On *Bristol-Myers* Is Misplaced ................ 15

     C. Plaintiffs' Claims Arise Out of a Common Nucleus
        of Operative Facts Sufficient To Exercise Pendent Jurisdiction . 16

V.   CONCLUSION ........................................................................... 21

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*Abe v. Hyundai Motor America, Inc.,*
   2019 WL 6647938 (C.D. Cal. 2019) ...................................................... 10, 14

*ACA Int'l v. Fed. Commc'ns Comm'n,*
   885 F.3d 687 (D.C. Cir. 2018)........................................................................ 4

*Action Embroidery Co. v. Atl. Embroidery, Inc.,*
   368 F.3d 1174 (9th Cir. 2004) ................................................... 16, 17, 18, 21

*Aikens v. Synchrony Fin. d/b/a Synchrony Bank,*
   2015 WL 5818911 (E.D. Mich. July 31, 2015) ......................................... 11

*Allen v. ConAgra Foods, Inc.,*
   2018 WL 6460451 (N.D. Cal. 2018) ........................................................... 15

*Alvarez v. Hill,*
   518 F.3d 1152 (9th Cir. 2008) ...................................................................... 17

*Armstrong v. Investor's Bus. Daily, Inc.,*
   No. CV 18-2134-MWF (JPRx)
   2018 U.S. Dist. LEXIS 216246 (C.D. Cal. Dec. 21, 2018) ................... 10, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 3

*Baranski v. NCO Fin. Sys.,*
   2014 U.S. Dist. LEXIS 37880 (E.D.N.Y. Mar. 21, 2014).......................... 14

*Bates v. United Parcel Serv., Inc.,*
   511 F.3d 974 (9th Cir. 2007) ....................................................................... 15

*Bee, Denning, Inc. v. Capital Alliance Group,*
   310 F.R.D. 614 (S.D. Cal. 2015) ................................................................ 19

*Bodie v. Lyft,*
   No. 3:16-cv-02558-L-NLS,
   2019 U.S. Dist. LEXIS 9800 (S.D.Cal. Jan. 15, 2019) ·······················11

*Bodie v. Lyft*,
No. 3:16-cv-02558-L-NLS,
2019 WL 4918043 (S.D. Cal. 2019 Oct. 4, 2019) ....................................... 11

*Blakely v. United States*,
276 F.3d 853 (6th Cir. 2002) ....................................................................... 19

*Brickman v. Facebook, Inc.*,
2017 WL 1508719 (N.D. Cal. 2017) ...................................................... 13-14

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017) ......................................................................... *passim*

*Channell v. Citicorp Nat'l Svcs., Inc.*,
89 F.3d 379 (7th Cir. 1996) ........................................................................ 19

*City of Almaty v. Khrapunov*,
2018 WL 6074544 (C.D. Cal. 2018) ........................................................... 20

*Duguid v. Facebook, Inc.*,
926 F.3d 1146 (9th Cir. 2019) .................................................................... 13

*Engle v. Unified Life Ins. Co., Inc.*,
2014 WL 12508347 (S.D. Cal. 2014) .......................................................... 12

*Erickson v. Nebraska Machinery Company*,
2015 WL 4089849 (N.D. Cal. 2015) ........................................................... 10

*Ewing v. Encor Solar, LLC*,
No. 18-CV-2247-CAB-MDD,
2019 U.S. Dist. LEXIS 10270 (S.D. Cal. Jan. 22, 2019) .............................. 9

*Fishman v. Subway Franchisee Advertising Fund Trust, Ltd.*,
2019 WL 6135030 (C.D. Cal. 2019) ............................................................. 9

*Flores v. Adir Int'l, LLC*,
685 F.App'x 533 (9th Cir. 2017) ................................................................ 13

*Hale v. Natera, Inc.*,
2019 WL 4059851 (N.D. Cal. 2019) ....................................................... 9, 10

*In re Jiffy Lube Int'l, Inc.*,
   847 F.Supp.2d 1253 (S.D. Cal. 2012) ........................................ 13

*In re Packaged Seafood Products Antitrust Litig.*,
   338 F. Supp. 3d 1118 (S.D. Cal. 2018) ...................................... 19

*Johnson v. City of Shelby*,
   574 U.S. 10 (2014) ........................................................................ 17

*Johnson v. Comodo Group*,
   2020 WL 525898 (D. N.J. 2020) ................................................ 9

*Jones v. FMA Alliance, Ltd.*,
   978 F.Supp.2d 84 (D. Mass. 2013) ............................................ 14

*Kazemi v. Payless Shoesource Inc.*,
   2010 WL 963225 (N.D. Cal. 2010) ............................................ 10

*Keifer v. Hosopo Corporation*,
   No. 3:18-CV-1353-CAB-KSC,
   2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) ........................ 5, 9

*King v. Bumble Trading, Inc.*,
   2020 WL 663741 (N.D. Cal. 2020) ............................................ 18

*Kramer v. Autobytel, Inc.*,
   759 F.Supp.2d 1165 (N.D. Cal. 2010) ...................................... 10

*Lacey v. Maricopa County*,
   693 F.3d 896 (9th Cir. 2012) ........................................................ 3

*Lamkin v. Portfolio Recovery Assocs., LLC*,
   2019 U.S. Dist. LEXIS 165820 (E.D. Cal. 2019) ...................... 9

*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*,
   869 F.3d 795 (9th Cir. 2017) ........................................................ 4

*Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*,
   2019 WL 4888693 (N.D. Cal. 2019) .......................................... 20

*Musenge v. SmartWay of the Carolinas, LLC*,
   2018 U.S. Dist. LEXIS 158044 (W.D.N.C. Sep. 17, 2018) ........ 14

*Pacleb v. Cops Monitoring*,
    2014 WL 3101426 (C.D. Cal. 2014) ........................................................ 11

*Pascal v. Concentra, Inc.*,
    2019 WL 3934936 (N.D. Cal. 2019) ........................................................ 9

*Prime Healthcare Centinela, LLC v. Kimberly–Clark Corp.*,
    2016 WL 7177532 (C.D. Cal. 2016) .................................................. 19-20

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041(9th Cir. 2018) ................................................... *passim*

*Musenge v. SmartWay of the Carolinas*, LLC,
    2018 U.S. Dist. LEXIS 158044 (W.D.N.C. Sep. 17, 2018) .................... 14

*N.L. by mother Lemos v. Credit One Bank, N.A.*,
    No. 2:17-CV-01512-JAM-DB,
    2018 WL 5880796 (E.D. Cal. Nov. 8, 2018).................................... 5

*Ranza v. Nike, Inc.*,
    793 F.3d 1059, 1068 (9th Cir. 2015) .................................................. 3

*Reichman v. Poshmark, Inc.*,
    267 F. Supp. 3d 1278 (S.D. Cal. 2017) ........................................... 11

*Rhinehart v. Diversified Cent., Inc.*,
    2018 U.S. Dist. LEXIS 5141 (N.D. Ala. Jan. 11, 2018)............................ 14

*Robbins v. Coca-Cola-Company*,
    No. 13-CV-132 - IEG (NLS),
    2013 U.S. Dist. LEXIS 72725 (S.D. Cal. May 22, 2013) ............................ 3

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ........................................................ 4

*Sloan v. General Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018)............................................ 16, 17, 18

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ....................................................... 15

*Swamy v. Title Source, Inc.*,
   2017 U.S. Dist. LEXIS 186535 (N.D. Cal. 2017) ........................................ 16

*Thomas v. Dun & Bradstreet Credibility Corp.*,
   100 F. Supp. 3d 937 (C.D. Cal. 2015) ........................................... 11

*Tuck v. Portfolio Recovery Associates, LLC*,
   2019 WL 5212392 (S.D. Cal. 2019) ........................................ 10, 11

*Vacarro v. CVS Pharmacy, Inc.*,
   2013 WL 3776927 (S.D. Cal. 2013) ........................................... 12

*Whitaker v. Milwaukee County, Wisc.*,
   772 F. 3d 802 (7th Cir. 2014) .............................................. 17

**STATUTES**

47 U.S.C. § 227(b)(1) ....................................................... 4

**RULES**

Fed. R. Civ. P. 12(b)(2) ..................................................... 3

Fed. R. Civ. P. 12(b)(6) ..................................................... 3

Plaintiffs Amanda Hill and Gayle Hyde submit this response in opposition to the Motion to Dismiss ("Motion") the Second Amended Complaint ("SAC") filed by Defendant Quicken Loans Inc. ("Quicken"). ECF No. 79.

## I.    INTRODUCTION

Quicken is a subprime mortgage lender.  To push its subprime loans on unsuspecting consumers, Quicken surreptitiously compiles "leads" through a network of click-bait websites, then bombards those "leads" with automated advertising text messages – all without anyone's prior express written consent and thus is clear violation of the Telephone Consumer Protection Act ("TCPA"). That is exactly what happened to both Plaintiffs, and thus they commenced this putative class action on behalf all other consumers who received this same sort of unsolicited text spam from Quicken. Although these facts plainly state a claim under the TCPA, Quicken now moves to dismiss the action outright on two grounds.  Neither withstands scrutiny.

First, Quicken contends that Plaintiffs fail to allege enough detail regarding the automated telephone dialing system ("ATDS") used to send the text messages. This is completely unfounded.  Plaintiffs' allegations detail the technology used by Quicken to send the text messages at issue and, moreover, place that technology squarely within the definition of ATDS recently articulated by the Ninth Circuit in its controlling decision in *Marks v. Crunch San Diego, LLC* 904 F.3d 1041 (9th Cir. 2018).    That Quicken relies almost entirely on out-of-circuit and pre-*Marks* precedent speaks volumes.  Plaintiffs also allege hallmark facts from which courts routinely infer the use of an ATDS.  Lest there be any doubt, Quicken and its affiliates admit to sending these advertising "SMS" messages via "automated . . . means."   On this, we take Quicken at its word.

Second, Quicken attempts to dismiss Plaintiff Hyde's individual claims for a supposed lack of personal jurisdiction.  This too is unfounded.  In class actions like this, as long as the Court exercises jurisdiction over at least one named plaintiff,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

jurisdiction is satisfied for all putative class members (named or absent).  Quicken
concedes jurisdiction as to Plaintiff Hill, and thus jurisdiction is satisfied for all class
members (including Plaintiff Hyde). Still, Plaintiff Hyde's claims also plainly arise
out the very same nucleus of facts and circumstances as Plaintiff Hill's, and thus the
Court also properly exercises pendent personal jurisdiction over Plaintiff Hyde's
individual claims.

With no legitimate answer to these well-settled bases for jurisdiction, Quicken
resorts to misstatement of law.  Quicken contends the Court should ignore pendent
personal jurisdiction because Plaintiffs' initial complaint did not specifically identify
"this new jurisdictional theory."  But as the Supreme Court and Ninth Circuit have
repeated admonished, complaints need only allege facts, not spell out legal theories
supported by those facts. And, in any event, the operative complaint does indeed
specifically allege pendent personal jurisdiction.  Quicken then contends that
pendent personal jurisdiction applies "only when a single plaintiff has multiple
claims."  Not so. The Ninth Circuit and numerous district court within disagree:
pendent personal jurisdiction turns on the connection between the claims and a
common nucleus of facts, not the claims and any particular plaintiff. Here, Plaintiff
Hyde's claims arise out of the very same Quicken text spam operation as Plaintiff
Hill's, thus the Court properly exercises jurisdiction over both.

Nor is it Plaintiffs who are forum-shopping.  From the outset, Quicken has
tried every trick in the book to avoid this Court and the Ninth Circuit's controlling
*Marks* jurisprudence – motions to stay, transfer, dismiss, compel arbitration, and so
on.  All to no avail.  This is a putative class action, and thus whether or not Plaintiff
Hyde remains as a named plaintiff, she will still remain a member of the class and
thus her claims will still be litigated in this action before this Court.  Other than for
its own forum-shopping and war-of-attrition tact, it is anyone's guess why Quicken
continues to press this pointless relief.  It only fosters waste and delay.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Plaintiffs' allegations more than suffice to support both a plausible inference that the text messages were sent via an ATDS and that this Court's properly exercises personal jurisdiction over Plaintiff Hyde's claims. Thus, Quicken's Motion should be denied in its entirety.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion must be denied if the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Robbins v. Coca-Cola Company*, 2013 WL 2252646, at *1 (S.D. Cal. 2013). It "does not require [courts] to flyspeck complaints looking for any gap in the facts." *Lacey v. Maricopa County,* 693 F.3d 896, 924 (9th Cir. 2012). Nor is "[t]he standard . . . that plaintiff's explanation must be true or even probable." *Starr v. Baca,* 652 F.3d 1202, 1216–17 (9th Cir. 2011). It "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the allegations." *Id.* "If the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief, dismissal must be denied." *Robbins,* 2013 WL 2252646, at *1.

A similar standard applies under Rule 12(b)(2). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015). Plaintiffs' "uncontroverted allegations must be taken as true," and inferences arising therefrom "must be resolved in plaintiff's favor." *Id.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## III.   THE TEXT MESSAGES WERE SENT VIA AN AUTOMATIC TELEPHONE DIALING SYSTEM

To state a TCPA claim, Plaintiffs must allege facts sufficient to raise a plausible inference that Quicken (or its agent) called their cellular telephones using an ATDS.  47 U.S.C. § 227(b)(1); *Los Angeles Lakers, Inc. v. Fed. Ins. Co.,* 869 F.3d 795, 804 (9th Cir. 2017).  Quicken challenges only the ATDS element.  Because Plaintiffs' allegations more than suffice to raise a plausible inference that an ATDS was used, Quicken's motion should be denied.

### A.   Plaintiffs' ATDS Allegations Suffice Under Controlling Precedent

Plaintiffs allege in detail, pursuant to the Ninth Circuit's controlling decision in *Marks*, that an ATDS was used to transmit the unsolicited SMS text messages to Plaintiffs and the class. An ATDS is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The definition of an ATDS had been in flux. In March 2018, the D.C. Circuit overturned the FCC's prior definition of ATDS. *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018). Consequently, "only the statutory definition of ATDS as set forth by Congress in 1991 remain[ed]." *Marks*, 904 F.3d at 1041.  Then, in September 2018, the Ninth Circuit in *Marks* interpreted "automatic telephone dialing system" to mean "equipment which has the capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers." *Marks,* 904 F.3d at 1052. Therefore, here in the Ninth Circuit, "a device that has the capacity to store phone numbers and dial them automatically would qualify as an ATDS, even if it did not create or develop the numbers dialed on its own." *N.L. by mother Lemos v. Credit One Bank, N.A.*, 2018 WL 5880796, at *2 (E.D. Cal. 2018); *Keifer v. Hosopo Corporation*, 2018 WL 5295011, at *4 (S.D. Cal. 2018).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="margin-left: auto; writing-mode: vertical;">KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626</div>

**B.      Plaintiffs' Detailed Factual Allegations Support A Plausible Inference of Use of An ATDS**

The Second Amended Complaint alleges, *inter alia*, the following facts:

For over at least the past year, continuing through the present, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS or MMS text messages to the 9785 Number without Ms. Hill's prior express written consent, an example of which is depicted in the screenshot below, which was extracted from Ms. Hill's cellular device:



Ms. Hill has on several occasions attempted to put a stop to Defendant's invasive text messages by responding "STOP," to no avail. For instance, over a week before receiving the text messages depicted in the screenshot above, Ms. Hill had texted "STOP" in an attempt to end the onslaught of Defendant's digital junk mail, as shown in the screenshot below, also extracted from Ms. Hill's cellular device:

Despite these clear instructions to STOP, Defendant is nonetheless undeterred. Its texts to the 9785 Number persist. The TCPA was enacted to end this sort of contumacious behavior.

***

The source of the unsolicited text messages that Defendant transmitted to the 9785 Number was 26293, which is a telephone number leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing program.

At no time did Ms. Hyde text AMAZE to the short code 262-93, or consent to receive text messages in any other way.

On or about November 26, 2018, at approximately 4:34 p.m., Quicken Loans sent Ms. Hyde a marketing text message to her cellular telephone ending in "8955", from the short code 262-93. The November 26, 2018, text message read:

> Quicken Loans: Time's running out on our Biggest Deal of the Year! Lock your rate now. http://m.qloans.co/N2CRyGuU Reply HELP for help, STOP to end text

Ms. Hyde had received several marketing text messages identical to the one above for the past two months. Each time that Ms. Hyde received this text in the past, she responded with "Stop."

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

However, such requests went unheeded, as Ms. Hyde received another text message on November 26, 2018.

Having no other option, on November 26, 2018, Ms. Hyde yet again responded to the text message with "Stop".

Similar to Ms. Hyde's other attempts, Quicken Loans almost immediately responded with:

> QLTextAlerts: You are unsubscribed & will no longer receive messages from us. Reply HELP for help. Msg&Data Rates May Apply. 1-800-863-4332

Despite this clear revocation of consent (if consent had existed in the first instance) and Quicken Loans acknowledgment of the revocation, on December 4, 2018, at approximately 12:34 p.m., Quicken Loans sent Ms. Hyde another text message from its SMS short code soliciting their business.

The December 4, 2018, text message read as follows:

> Quicken Loans Rate Alert: Rates have dropped! See Today's Rates: http://m.qloans.co/GsaryGBE Reply HELP for help, STOP to end text

As Ms. Hyde had done many times before, Ms. Hyde replied in a text message with the word "STOP".

All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiffs' cellular telephone numbers and to the numbers of the members of the Class defined below occurred using an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

Defendant transmitted its text messages to the Plaintiffs' cellular telephone numbers and to the numbers of the members of the Classes defined below using an "automated telephone dialing system" because its text messages were sent from a telephone number used to message consumers *en masse*; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without

human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and to then dial such numbers, *en masse*, in an automated fashion and without human intervention.

And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiffs and all other unnamed Class members in an automated fashion and without human intervention, with hardware and software that received and stored lists of telephone numbers to be dialed and which then dialed such numbers automatically.

The complained of SMS and/or MMS text messages sent by Defendant to the 9785 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the messages in order to advertise and market its mortgage-lending and other lending goods and services, for the purpose of ultimately selling such goods and services to Plaintiffs and other Class members for commercial profit.

Neither Plaintiffs nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit Defendant to transmit text messages to the Plaintiffs' cellular telephone numbers or to any of the Class's telephone numbers using an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

(SAC, ¶¶ 32-33.)   Furthermore, at all relevant times, Quicken and its claimed affiliates have publicly admitted that they engage in "automated calling" and send these sorts of advertising "SMS" text messages via "automated or prerecorded means." *See* ECF No. 29-6, page 18 of 18; and ECF No. 29-9, p. 3 of 8.

By alleging that "the hardware and software used by Defendant to send [text messages to Plaintiff and proposed Class members] have the capacity to . . . receive and store lists of telephone numbers, and to dial such numbers" (*Id.* ¶ 33), the SAC places Defendant's dialing technology squarely within the definition of ATDS set forth in the Ninth Circuit's controlling decision in *Marks. See Marks,* 904 F.3d at

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1053 (holding that the term "automatic dialing system" means, inter alia, "equipment which has the capacity . . . to store numbers to be called . . . and to dial such numbers"). Factual allegations far less specific have repeatedly been held, post-*Marks*, to adequately demonstrate the use of an ATDS by district courts of the Ninth Circuit. *E.g., Fishman v. Subway Franchisee Advertising Fund Trust, Ltd.,* 2019 WL 6135030, at *8 (C.D. Cal. 2019); *Keifer*, 2018 WL 5295011, at *4; *Hale v. Natera, Inc.* 2019 WL 4059851, at *2 (N.D. Cal. 2019); *Pascal v. Concentra, Inc*., 2019 WL 3934936, at *3 (N.D. Cal. 2019); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *7 (S.D. Cal. 2019) (S.D. Cal. Jan. 22, 2019).[1]

## C.    Quicken Relies on Overruled and Out-of-Circuit Caselaw

Relying on inapposite and largely overruled legal authority, Defendant nevertheless insists that the SAC fails to plead use of an ATDS and then cites several cherry-picked decisions where pre-*Marks* or out-of-circuit courts found certain allegations insufficient, standing alone, to adequately allege the use of an ATDS. ECF No. 79-1 at 14-16. Nearly all of these decisions were either decided before *Marks* or outside the Ninth Circuit (and thus under inapposite precedent) or both, and thus are irrelevant in this post-*Marks* world. Here, within the Ninth Circuit, any device with the capacity to store phone numbers and to dial them automatically qualifies as an ATDS. *Marks*, 904 F.3d at 1053.

Still, even if any of Quicken's abrogated decisions had any applicability post-*Marks*, they would still be inapposite because in this case Plaintiffs allege a host of additional, telltale ATDS-related facts. Plaintiffs allege the generic, template-based content of the text messages themselves, "formatted in SMS short code licensed to [Quicken or its agents], scripted in an impersonal manner and sent en masse." *Hale*,

---

[1] Indeed, these undisputed facts would suffice even at summary judgment. *See, e.g., Lamkin v. Portfolio Recovery Assocs., LLC*, 2019 U.S. Dist. LEXIS 165820, at *9 (E.D. Cal. 2019); *Johnson v. Comodo Group*, 2020 WL 525898, at *5-6 (D. N.J. 2020).

2019 WL 4059851, at *2; *Kazemi v. Payless Shoesource Inc.*, 2010 WL 963225, at *3 (N.D. Cal. 2010). Also, that the text messages "contained pro forma instructional commands for confirming or opting-out of further messages, thus indicating the use of an autodialer." *Abe v. Hyundai Motor America, Inc.*, 2019 WL 6647938, at *5 (C.D. Cal. 2019) ("inclusion of automated instructions [is] clear indicia of Defendant's use of an 'automated telephone dialing system' in the transmission of the message."); *Hale*, 2019 WL 4059851, at *2 (same). Further, that each of them had had no prior interaction with, and thus "had no reason to be in contact with," Quicken. *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010); *Hale*, 2019 WL 4059851, at *3 (non-customers' receipt of "identical" template messages indicated ATDS).

Plaintiffs, moreover, allege the technology's features and that Quicken and its affiliates refer to that technology as an ATDS that engages in "automated calling" and further have admitted (publicly, and in submission to this Court) to sending these "SMS" text messages "through automated or prerecorded means." *See* ECF Nos. 29-6 at 18; 29-9 at 3.[2]  That Quicken (and its claimed affiliates) publicly admit to these messages being sent by "automated . . . means" suffices to supports a plausible inference that they were indeed. *See Abe*, 2019 WL 6647938, at *5 (that defendant's website "asks for consent to send messages using an automatic telephone dialing system" supports "plausible claim . . . [of] an ATDS").

These and Plaintiffs' other allegations distinguish Quicken's exceedingly few post-*Marks* authorities. *Cf.* ECF No. 79-1 at 6-8 (citing *Bodie v. Lyft, Inc.* (*Bodie I*), 2019 WL 258050 (S.D. Cal. Jan. 16, 2019), *Armstrong v. Investor's Business Daily, Inc.*, 2018 WL 6787049 (C.D. Cal. 2018), and *Tuck v. Portfolio Recovery Associates,*

---

[2] *See Erickson v. Nebraska Machinery Company*, 2015 WL 4089849, at *2 n.1 (N.D. Cal. 2015) (taking judicial notice of similar website content as "facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," such as the "Internet Archive's Wayback Machine").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*LLC*, 2019 WL 5212392 (S.D. Cal. 2019). Defendant conspicuously omits that the same court in *Bodie I* subsequently upheld ATDS allegations not nearly as robust as those Plaintiffs allege here. *See Bodie v. Lyft, Inc*. ("*Bodie II*"), 2019 WL 4918043, at *3 (S.D. Cal. 2019). Quicken also omits that the court in *Armstrong* specifically listed the fact – missing there, but present here - that a text recipient might be requested to respond to the text with "Stop" as an example sufficient to support a plausible inference that an ATDS was used. *See* 2018 WL 6787049, at *6. *Tuck* is even further off the mark. There, an unrepresented, *pro se* plaintiff failed to allege "any facts pertaining to the conduct of any specific" defendant, which the court contrasted with facts – present here - like "the phone number" and "the content of the calls," which do "support an inference that the calls were placed with an ATDS." 2019 WL 5212392 (S.D. Cal. 2019).

Quickens' reliance on *Aikens* is misplaced. ECF No. 79-1 at 14. That court opined that it is reasonable to expect plaintiffs to allege the timing and content of the communications. Plaintiffs here have done that and more. *See supra*. Even under stricter pre-*Marks* standards, district courts routinely upheld far weaker allegations than Plaintiffs allege here. *E.g., Pacleb v. Cops Monitoring*, 2014 WL 3101426, at *4 (C.D. Cal. 2014) ("Plaintiff alleges that the defendant called him using an ATDS . . . Whether defendant actually did so is better adjudicated after the evidentiary record has been developed."); *Thomas v. Dun & Bradstreet Credibility Corp*., 100 F. Supp. 3d 937, 945-46 (C.D. Cal. 2015) (noting "difficulty a TCPA plaintiff faces in knowing the type of calling system used without the benefit of discovery."); *Reichman v. Poshmark, Inc*., 267 F.Supp.3d 1278 (S.D. Cal. 2017) ("a plaintiff need not allege specific facts to support an allegation that a defendant used an ATDS," at the pleading stage "it would be unreasonable to require Plaintiff, without the benefit of discovery, to describe the technical details of Defendant's alleged ATDS.").

### D.    Plaintiffs Do Not Allege Mere Labels and Conclusions

Ignoring the ever-growing post-*Marks* consensus, as well as the bulk of Plaintiffs' allegations, Quicken rests the remainder of its ATDS argument on three plainly erroneous premises. First, Quicken attempts to write-off Plaintiffs' factual allegations as mere "legal conclusions" that "parrot the statutory ATDS definition." ECF No. 79-1 at 13-14. Not true. While mere "labels and conclusions or a formulaic recitation of the elements of a claim will not do," *Iqbal*, 556 U.S. at 678, "[i]t does not follow that factual allegations that borrow or echo statutory language are necessarily legal conclusions." *Vacarro v. CVS Pharmacy, Inc.*, 2013 WL 3776927, at *2 (S.D. Cal. 2013). "Factual allegations do not cease to be factual even if they quote a statute's language." *Id.* "For instance, allegation of a telephone call remains factual even though the word 'call' is found in the TCPA." *Id.*; *Engle v. Unified Life Ins. Co., Inc.*, 2014 WL 12508347, at *3 (S.D. Cal. 2014) ("Allegations do not become any less factual by quoting a statute . . . The fact that the words 'artificial or prerecorded voice' are contained within the TCPA does not render Plaintiff's factual allegations inadequate.").

Here, Plaintiffs allege that the equipment used send the text messages had the capacity to store numbers. That is an allegation of fact. Plaintiff further alleges that that equipment had the capacity to dial stored numbers. That is another allegation of fact. That the words "store" and "capacity" happen to appear in the text of TCPA does not change the factual nature of these allegations. They remain alleged facts, to be accepted as true at this stage, that will ultimately prove true or false at a later evidentiary stage, and which cannot be disregarded on Quicken's self-serving hunch alone. Certainly not here, where Plaintiffs allege a host of additional facts that do not track any statutory language in TCPA. *See supra*.

Second, Quicken contends that Plaintiffs only allege "six specific text messages, none of which contained the same content," and thus, by Quicken's read, that "the SAC is devoid of a single factual allegation supporting the assertion" that

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

the text messages were sent "*en masse*."  ECF No. 79-1 at 14. Not true, and no matter.  Plaintiffs allege numerous supporting facts, including the multitude of automated text messages themselves, that they were sent to multiple parties, and that they were via SMS technology specifically designed for mass messaging.  Even under strict pre-*Marks* standards, these facts suffice.  *See, e.g., In re Jiffy Lube Int'l, Inc.*, 847 F.Supp.2d 1253, 1260 (S.D. Cal. 2012) ("Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage.").

Plaintiffs also allege the generic content of the text messages, which plainly reflects form templates designed for mass automated text campaigns and thus indicative of an ATDS.  *Cf.  Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (content reflecting use of automated templates supports inference of ATDS); *Abe*, 2019 WL 6647938, at *5 (through template content, ATDS "may automate 'even the aspects of the messages that appear personalized").

Moreover, even if the Court ignored all these facts and instead infer that text messages were not sent *en masse* but rather via direct targeting, it would not matter. As the Ninth Circuit has repeatedly explained, direct targeting is not inconsistent with use of an ATDS.  *See Flores v. Adir International, LLC*, 685 Fed. Appx. 533 (9th Cir. 2017) (reversing district court for erroneously dismissing TCPA claims on grounds that "allegations suggest[ed] direct targeting . . . inconsistent with . . . ATDS"; explaining that "on a motion to dismiss, a district court must construe the pleadings in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the plaintiff," and "it is reasonable to infer that equipment [] used has the capacity [of ATDS] even if it was not presently being used for that purpose."); *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *3 (N.D. Cal. 2017) (explaining that "while several courts in this Circuit ha[d] dismissed TCPA

claims on the basis of . . . direct targeting inconsistent with [use of ATDS]" the Ninth Circuit has since "rejected this reasoning" and instead found "use of an ATDS to be plausible even where . . . allegations suggested direct targeting.").

Third, Quicken disparages Plaintiffs' counsel for alleging similarly detailed ATDS-related facts in other TCPA cases. ECF No. 79-1 at 15-16 ("repeated by their counsel from TCPA case to TCPA case"). Of course, that similarity merely reflects that Plaintiffs here have retained experienced TCPA counsel, well-versed in how to effectively plead the ATDS element in accord with the Ninth Circuit's controlling standard in *Marks*. Indeed, though Quicken fails to mention it, those courts have consistently upheld similar allegations pled by Plaintiffs' counsel. *See, e.g.*, *Fishman,* 2019 WL 6135030, at *8; *Abe*, 2019 WL 6647938, at *5.

Quicken tellingly relies on out-of-circuit cases not subject to the Ninth Circuit's controlling *Marks* decision. *Cf.* ECF no. 79-1 at 14-16. Even these inapposite, out-of-circuit cases only further demonstrate that here Plaintiffs' allegations more than suffice to raise an inference of ATDS use. *Cf. Baranski v. NCO Fin. Sys.*, 2014 U.S. Dist. LEXIS 37880, at *17 (E.D.N.Y. Mar. 21, 2014) ("the use of an ATDS can be plausibly inferred from allegations regarding . . . 'the generic content of the message he received.'"); *Musenge v. SmartWay of the Carolinas*, LLC, 2018 U.S. Dist. LEXIS 158044, at *7 (W.D.N.C. Sep. 17, 2018) ("Simply alleging the use of an ATDS system and supporting that allegation with observations of the nature of the calls or text messages would suffice."); *Rhinehart v. Diversified Cent., Inc*., 2018 U.S. Dist. LEXIS 5141, at *21 (N.D. Ala. Jan. 11, 2018) (same); *Jones v. FMA Alliance, Ltd*., 978 F.Supp.2d 84, 86-87 (D. Mass. 2013) ("indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages [suffice] to raise an inference that an ATDS was used.").

1    In sum, as Plaintiffs' factual allegations more than suffice to raise a plausible

2    inference that an ATDS was used, Quicken's motion on such ground should be

3    denied.

4    **IV.    THE    COURT    PROPERLY    EXERCISES    PERSONAL**

5    **JURISDICTION OVER PLAINTIFF HYDE'S CLAIMS**

6        In attempting to dismiss Plaintiff Hyde's individual claims from this putative

7    class action for a supposed lack of personal jurisdiction, Quicken demonstrates

8    fundamental misunderstanding of the legal concepts at issue.

9        **A.    In A Class Action, Personal Jurisdiction Over One Named**

10            **Plaintiff Is Sufficient**

11        In class actions like this, as long as the Court exercises jurisdiction over at

12    least one named plaintiff, jurisdiction is satisfied for all putative class members.

13    *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (in "class

14    action" jurisdictional requirements "satisfied if at least one named plaintiff meets

15    the requirements"); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir.

16    2011) (jurisdiction in class actions "keys on the representative party, not all class

17    members"; thus, "[t]he inquiry is whether ***any*** named plaintiff has demonstrated"

18    each requirement, and jurisdiction is "satisfied if at least one named plaintiff meets

19    the requirements").    As it must, Quicken concedes that this Court does properly

20    exercise specific personal jurisdiction over the claims of Plaintiff Hill. Accordingly,

21    jurisdiction is satisfied for all putative class members, including Plaintiff Hyde. *Id*.

22        **B.    Defendant's Reliance On *Bristol-Myers* Is Misplaced**

23        *Bristol-Myers* is not to the contrary. Cf. ECF No. 79-1 at 6, 9.  It was a mass

24    tort action, not a class action. Thus, as the vast majority of courts nationwide have

25    explicitly held, it has no application in class actions like this.  *See, e.g.*, *Allen v.*

26    *ConAgra Foods, Inc.*, 2018 WL 6460451, at *5 (N.D. Cal. 2018) (holding *Bristol-*

27    *Myers* does not apply to class action, and thus court properly exercised "personal

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

jurisdiction over the claims by the nonresident named plaintiffs and the nonresident absent class members"); *Curran v. Bayer Healthcare LLC,* 2019 WL 398685, at *3 (N.D. Ill. 2019) (contrary to a handful of outlier courts, "[m]ost courts to address the issue nationwide have concluded that *Bristol-Myers* does *not* apply to class actions."); *Swamy v. Title Source, Inc.,* 2017 U.S. Dist. LEXIS 186535, at *5 (N.D. Cal. 2017) ("*Bristol-Myers* did not address class [] actions."). Even those courts to apply *Bristol-Myers* in a measured extent to class actions, have done so only as to diversity actions, not federal-question actions like this. *Cf. Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *4 (N.D. Cal. 2017). Because this is a federal-question class action, not a state law mass tort, *Bristol-Myers* is inapposite.

These principles are not only dispositive here, but they underscore the misdirection and futility of the relief Quicken seeks. Even were Quicken's meritless motion granted, and Plaintiff Hyde's individual claims ostensibly "dismissed," Plaintiff Hyde would nonetheless remain a putative class member and thus her same claims would still go forward against Quicken in this case before this very Court. *See Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 860 (N.D. Cal. 2018) (rejecting *Bristol-Myers* as inapt and futile in context of class actions because, even if dismissed, "the Court may well have jurisdiction over absent class members (including the named out-of-state plaintiffs) who are non-forum residents in any event").

### C. Plaintiffs' Claims Arise Out of a Common Nucleus of Operative Facts Sufficient To Exercise Pendent Jurisdiction

The Court also properly exercises pendent personal jurisdiction because Plaintiff Hyde's claims arise directly out the very same nucleus of facts and circumstances as Plaintiff Hill's. *See Action Embroidery Co. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("a court may assert pendent personal jurisdiction over a defendant with respect to a *claim* for which there is no

independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a *claim* in the same suit over which the court does have personal jurisdiction"); *Sloan*, 287 F. Supp. 3d at 860 (finding pendent personal jurisdiction over "out-of-state" named class representatives because their federal claims arose out of "common nucleus of operative facts" as California resident named plaintiffs) (applying *Action Embroidery*).

Although Quicken strains to concoct factual distinctions, ECF No. 79-1 at 10-11, it is beyond dispute that Plaintiff Hyde's claims arise out of the very same Quicken text spam operation as Plaintiff Hill's claims, as well as those of every other putative class member. Thus, the Court may exercise pendent jurisdiction over Hyde's individual claims. *Sloan*, 287 F. Supp. 3d at 860.

Ducking any real analysis of the foregoing, Quicken's instead proffers several egregious misstatements of law. First, Quicken contends Plaintiff Hyde should be dismissed because pendent personal jurisdiction is a "new jurisdictional theory" not pled in the original complaint. ECF No. 79-1 at 8. Not true. To the contrary, it is black-letter law that a complaint need only allege facts, it need not specify any particular legal theories. *See, e.g., Johnson v. City of Shelby*, 574 U.S. 10 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for an imperfect statement of the legal theory."); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (plaintiff need only plead facts, not "causes of action, statutes, or legal theories."); *Whitaker v. Milwaukee County, Wisc.*, 772 F. 3d 802, 808 (7th Cir. 2014) ("it is factual allegations, not legal theories, that must be pleaded in a complaint"). From outset, Plaintiffs have alleged the same sort of unsolicited text messages received from the very same Quicken text spam operation. Whatever label Quicken prefers, that well-pled nucleus of fact suffices to supports jurisdiction here.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

And, in any event, the operative complaint does explicitly invoke pendent personal jurisdiction.  ECF No. 73 at ¶ 4.b.[3]

Second, Quicken erroneously pronounces that "pendent jurisdiction applies only when a *single* plaintiff has multiple claims."  ECF No. 79-1 at 9-10.  Again, not true.  As the Ninth Circuit has explained, pendent personal jurisdiction turns on the connection between claims that "arise[] out of a common nucleus of operative facts," not between those claims and any particular plaintiff.  *See Action Embroidery*, 368 F.3d at 1180; *Sloan*, 287 F. Supp. 3d at 860 ("the Ninth Circuit *did not* limit its holding in *Action Embroidery* to situations involving the same parties. Rather, it focused on whether the new *claims* arose out of the same nucleus of operative facts.") (emphasis added); *Allen*, 2018 WL 6460451, at *5 (N.D. Cal. 2018) (explaining that, under Ninth Circuit jurisprudence, pendent personal jurisdiction "focuse[s] on the similarities between the claims, rather than the identity of the parties asserting them.").

Accordingly, and contrary to Quicken's misstatement of law, courts within the Ninth Circuit have indeed "applied *Action Embroidery* to find pendent jurisdiction over named out-of-state plaintiffs in a putative nationwide class action where those plaintiffs asserted the same claims as in-state plaintiffs."  *King v.*

_____

[3] Nor does invoking pendent personal jurisdiction somehow violate the Court's order granting leave to file the SAC.  *Cf.* ECF No. 79-1 at 8.  Plaintiff Hyde was granted leave to amend in support specific jurisdiction, ECF No. 54, and pendent personal jurisdiction is a form of specific jurisdiction.  It has always been clear that Plaintiffs were alleging nearly identical TCPA claims. But only <u>after</u> the Court afforded, and Plaintiffs served, limited personal jurisdictional discovery, did Quicken disclose for the first time that the text messages to Ms. Hyde were sent from Michigan (Dkt. No. 79-5, p. 7, Interrogatory No. 6), and that Quicken obtained Hyde's phone number from LendingTree, LLC rather than LowerMyBill.com (Dkt. No. 79-5, p. 3, Interrogatory No. 1). Quicken initial responded with blanket objections, and then chose to hold back disclosure of this information until <u>after</u> the Court ordered personal jurisdiction discovery (on October 17, 2019, Dkt. No. 54).  Quicken's self-inflicted (and wasteful and untoward) litigation strategy is no basis for dismissal.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Bumble Trading, Inc*., 2020 WL 663741, at *5 (N.D. Cal. 2020) (citing *Sloan*, 287 F. Supp. 3d at 861-62); *see also Allen,* 2018 WL 6460451, at *8 (in class action, finding "pendent personal jurisdiction over out-of-state named plaintiffs' claims" because they "arose from the same nucleus of operative facts as claims by in-state plaintiffs"); *In re Packaged Seafood Products Antitrust Litig*., 338 F. Supp. 3d 1118, 1173 (S.D. Cal. 2018) (same).

Third, Quicken contends any slight factual difference renders Plaintiff Hyde's essentially identical TCPA claims too distinct. ECF No. 79-1 at 10-11. This case alleges that Quicken operates a network of clickbait websites, each generating surreptitious "leads" to which Quicken and its affiliates blast unsolicited text spam marketing subprime loans. Plaintiffs Hyde and Hill both received text spam from Quicken generated by this overarching Quicken text spam marketing operation. Which Quicken-affiliated clickbait website they happened to visit does not change the identical nature of their claims or the common nucleus of facts from which their identical claims arose. Nor does the state in which they happened to have received Quicken's unsolicited text spam, nor the "different times" they received that Quicken text spam, nor any of the other minutiae by which Quicken strains to distinguish Plaintiffs' fundamentally identical TCPA claims. What matters is that Quicken sent the same sort of marketing text spam messages to both Plaintiffs via the same autodialer using the same SMS code, all in a coordinated effort to lure Plaintiffs (and all class members) into Quicken's predatory subprime loans. *See, e.g., Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 626 (S.D. Cal. 2015) (that automated calls to more than 30,000 persons were traceable to the defendant "demonstrates a common nucleus of operative facts binding together members of the automated call class.").[4]

---

[4] While Plaintiffs' TCPA claims are virtually identical, that is not required. *See Channell v. Citicorp Nat'l Svcs., Inc*., 89 F.3d 379, 385 (7th Cir. 1996) (for pendent jurisdiction, even "loose factual connection between the claims" would

Quicken's principal authorities on this issue are plainly inapposite. None were federal-question-only class actions. ECF No. 79-1 at 9, 11 (citing *Prime Healthcare Centinela, LLC v. Kimberly–Clark Corp.*, 2016 WL 7177532, at *2 (C.D. Cal. 2016) (not a class action, not federal-question claims); *City of Almaty v. Khrapunov*, 2018 WL 6074544 (C.D. Cal. 2018) (same); *Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*, 2019 WL 4888693, at * 23 (N.D. Cal. 2019) (involved state (and federal) claims; only refused pendent jurisdiction as to defendant to which no named plaintiff could assert personal jurisdiction; in contrast, as to "defendant subject to the Court's personal jurisdiction," the court acknowledged that "pendent personal jurisdiction could provide a basis for exercising jurisdiction over [nonresident] Plaintiffs' claims").

Finally, hoping to sway this Court's discretion, Quicken accuses Plaintiffs of forum-shopping.  Not only untrue, but Quicken's disparagement echoes the pot calling the kettle black.  From the outset, it has been Quicken pulling out every trick in the book to avoid this Court and the Ninth Circuit *Marks* precedent that controls. Before *Marks* was final, Quicken first moved to dismiss, holding out hope for a reversal of *Marks* through rehearing or *certiorari* petition. (ECF No. 14). Hedging its bet, Quicken also moved under the first-to-file rule to stay this case in favor of proceedings in two out-of-circuit federal courts unbounded by Ninth Circuit precedent. (ECF No. 15.) After both *Marks* settled (extinguishing any hope of reversal) and Plaintiffs coordinated all class claims before this Court (mooting Quicken's forum-shopping motion to stay), Quicken then abruptly changes tact and moved to compel Plaintiff Hill to arbitration (ECF No. 29).  Whatever the futility, whatever the waste, Quicken will try anything to avoid this Court and *Marks*.

suffice); *Blakely v. United States*, 276 F.3d 853, 862 (6th Cir. 2002) (same). Plaintiffs have alleged far more than a "loose factual connection;" the core facts of are identical. *See supra.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

While telling on the merits, Quicken's self-inflicted litigation strategy cannot warrant abstaining jurisdiction here.  This action is a quintessential example of efficiencies served by pendent jurisdiction.  It is a class action, and thus Plaintiff Hyde's claims will go forward here whether she remains as named plaintiff or not. *See Sloan*, 287 F. Supp. 3d at 861.  And as such, exercising jurisdiction over her claims will impose, if anything "only a *de minimis* burden" on Quicken, who will defend the identical classwide claims here (including Plaintiff Hyde whether named or not) regardless.  *Id*.

In contrast, even were Quicken's motion granted, it would only lead to "piecemeal litigation," forcing Quicken to "defend itself in several different courts on nearly identical issues," with those "disparate proceedings" imposing duplicative discovery and briefing and risking "conflict with proceedings in this case."  *Id*. at 862. All of these factors weigh "in favor" of applying pendent jurisdiction here. *Id*.; *see also Action Embroidery*, 368 F.3d at 1181 (application of pendent jurisdiction warranted where it serves "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties.").[5]

Because personal jurisdiction is satisfied, Quicken's motion should be denied on that ground as well.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Quicken's Motion in its entirety.

---

[5] Defendant omits that the *Winters* matter mentioned by Defendant in footnote 4 of its Motion to Dismiss was amended to omit putative class claims involving text messages, which means there could be no overlap of putative class claims here. Amended Complaint, *Winters v. Quicken Loans Inc*., No. 2:20-cv-00112-MTL, (D. Ariz.), Dkt. No. 7.

Dated:  February 20, 2020                    Respectfully submitted,

                                       **KAZEROUNI LAW GROUP, APC**

                                       */s/ Abbas Kazerounian*
                                       Abbas Kazerounian
                                       *Counsel for Plaintiffs and Putative Classes*

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
*Counsel for Plaintiff and Putative Classes*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626